







**STRIPE ACTIVITY LOG**

| Account | Email | Date | Message |
|---|---|---|---|
| FBA.support | steven@fba.support | 1/5/2020 | Hi Bratislav, We're reaching out to let you know that one or more refunds issued to your customers have been pending for greater than 100 days due to insufficient funds in your Stripe account. |
| FBA.support | steven@fba.support | 1/8/2020 | Hi Bratislav, Unfortunately, we are reaching out with some bad news. After reviewing your information and website, we believe your business presents a level of risk for customer disputes that we will be unable to support. Specifically, your overall dispute rate of 10.6% exceeds the industry standard threshold of 1%. |
| Sales.Support | steven@sales.support | 8/6/2020 | Karina: Okay! I'm afraid we're not able to offer you a higher ACH processing limit at the moment, as it looks there is a high dispute rate. We'd be happy to reevaluate an increase request for your account in the future, so don't hesitate to reach back out down the line! If there's anything else I can help out with in the meantime. (07:59:22 PM) steven roz (steven@sales.support): OK |
| Sales.Support | steven@sales.support | 10/5/2020 | Hi Amanda, we noticed that your Stripe account for sales.support has been experiencing an unusually high level of disputes from customers.  Currently, 1.7% of charges on your account have been disputed.  It generally takes about a month after the date of the charge before a customer submits a chargeback, so this rate will likely continue to climb. To comply with credit card network rules, we can't work with any business that has more than 1% of charges (by volume or count) disputed by customers on an ongoing basis, but we'd love to keep your business and so are reaching out to provide some information and tools to help drive down this dispute rate. |
| Sales.Support | steven@sales.support | 11/24/2020 | Hi Amanda, we are reaching out because your Stripe account for sales.support has been experiencing an unusually high level of disputes from customers.  Currently 2% of charges on your account have been disputed.  It generally takes about a month after the date of the charge before a customer submits a dispute, sot his rate will likely continue to climb.  A majority of your disputes are from customers claiming that they did not receive their service, or that the service provided was of unacceptable quality.  To avoid these disputes in the future, we recommend following best practices. |
| Sales.Support | steven@sales.support | 12/31/2020 | Hi Amanda, one or more refunds issued to your customers have been pending for greater than 14 days due to insufficient funds in your Stripe account.  Refunds that are pending for greater than 120 days will automatically fail. |
| Sales.Support | steven@sales.support | 1/5/2021 | Hi Amanda,we hate to follow up with more bad news.  Unfortunately, because of the elevated dispute risk here, your account balance on reserve will be extended for an additional 30 days.  During this time, the reserved funds will help cover any disputes or refunds on your account. |
| Sales.Support | steven@sales.support | 1/16/2021 | Hi Amanda, one or more refunds issued to your customers have been pending for greater than 30 days due to insufficient funds in your Stripe account.  Refunds that are pending for greater than 120 days will automatically fail. |

**STRIPE ACTIVITY LOG**

| Account | Email | Date | Message |
|---|---|---|---|
| Sales.Support | steven@sales.support | 2/3/2021 | Hi Amanda, We're reaching out to let you know that, after conducting a review of your business, we've found that it presents a higher level of risk than we are able to work with at this time.  We're sorry- we know this isn't what you want to hear |
| Sales.Support | sent to Wells Fargo | 2/10/2021 | Dear Wells Fargo, Stripe has terminated the merchant Sales.Sup (same ID#) and has added them to the MATCH list.  Business Legal Name- FBASUPPORT LLC; URL sales.support, opened 11/20/2019 and terminated 2/8/2021; principal name- Amanda Rozenfeld; products and services- "We help Amazon sellers grow their sales"; reason terminated- Excessive Chargebacks |
| Sales.Support | steven@sales.support | 4/6/2021 | Hi Amanda,  One or more refunds issued to your customers have been pending for greater than 100 days due to insufficient funds in your Stripe account. Refunds that are pending for greater than 120 days will automatically fail. |
| Sales.Support | steven@sales.support | 4/7/2021 | Hi Amanda, Your Stripe account, sales.support, currently has a negative balance |
| Sales.Support | steven@sales.support | 4/20/2021 | To Steven: I am Rip Banik at Stripe, and I understand that you and FBASUPPORT LLC ("Sales Support") have been unresponsive to numerous correspondence from Stripe in its attempt at resolving Sales Support's negative balance and the outstanding debt owed on Sales Support's Stripe account.  This letter serves as our final attempt to resolve this issue without having to explore legal avenues.  Under Stripe Services Agreement, Sales Support is solely responsible for losses associated with its account, including chargebacks.  In addition, if Sales Support fails to repay Stripe for the losses associated with its account, it will be responsible for all of Stripe's collection costs, including attorneys' fees and costs of arbitration. As of April 20, 2021, Sales Support owes Stripe $214,448.60 for losses incurred as a result of chargebacks that Stripe has already paid.  Sales Support will also be responsible for any future losses that Stripe may incur after April 20, 2021.  In addition, Sales Support has thus far prevented Stripe from exercising its contractual right to recover such funds by debiting the bank account associated with Sales Support's stripe account, as each of Stripe's attempts at auto debiting Sales Support's bank account has failed.  If we do not hear back from you by April 30, 2021, we will assume that Sales Support would prefer that we pursue all legal measures available to us to collect the amounts owed to Stripe. |
| Daily Distro | sina@dailydistro.com; annamarie@fba.support; steve@dailydistro.com | 11/24/2020 | Hi Amanda, we are reaching out because your Stripe account for sales.support has been experiencing an unusually high level of disputes from customers.  Currently 1.2% of charges on your account have been disputed.  It generally takes about a month after the date of the charge before a customer submits a dispute, so this rate will likely continue to climb. A majority of your disputes are from customers claiming that you continued to charge them after a subscription was canceled.  To avoid these disputes in teh future, we strongly recommend that you consider implementing at least one of the following changes. |

**STRIPE ACTIVITY LOG**

| Account | Email | Date | Message |
|---|---|---|---|
| Daily Distro | sina@dailydistro.com; annamarie@fba.support; steve@dailydistro.com | 12/29/2020 | Hi Amanda, We're reaching out to let you know that, after conducting a review of your business, we've found that it presents a higher level of risk than we are able to work with at this time.  We're sorry- we know this isn't what you want to hear |

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| VALIANT CONSULTANTS INC. | : | |
|      Plaintiff, | : | Civil Action No.: 2:21-cv-12047 |
| | : | |
| | : | |
| | : | |
|      v. | : | |
| | : | |
| | : | |
| FBA SUPPORT LLC AND BRATISLAV | : | |
| ROZENFELD, | : | |
|      Defendants. | : | |
| | : | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, by and through its undersigned counsel, files this Complaint against Defendants FBA Support LLC ("**FBA**") and Bratislav Rozenfeld a/k/a Steven Rozenfeld ("**Rozenfeld**") (collectively, the "**Defendants**") as follows:

## PRELIMINARY STATEMENT

1.     This is a civil action to recover damages, including consequential damages and punitive damages, for fraudulent inducement to enter into a contract, breach of contract, fraudulent misrepresentation, breach of implied covenant of good faith and fair dealing, piercing the corporate veil, unjust enrichment and violation of the New Jersey Unfair Trade Practices Act.

2.     Plaintiff brings this action based, in part, upon FBA's failure to fulfill its obligations under an agreement with Plaintiff which has caused considerable financial damage to Plaintiff, caused irreparable damage to Plaintiff's reputation and goodwill as well as caused loss of current and future business.

3.      Rozenfeld made representations to Plaintiff in order to induce Plaintiff to enter into an agreement with FBA and, in such agreement, FBA promised to provide certain services to Plaintiff and failed to do so.  Instead of doing what FBA promised to do, FBA caused tremendous problems and financial damage to Plaintiff.  Instead of seeking to remedy such problems, Defendants continued to fail Plaintiff at every turn, provided Plaintiff with lies and excuses to delay Plaintiff's enforcement of its rights and for both FBA and Rozenfeld to benefit from continuing payments by Plaintiff, misrepresent FBA's performance of agreements obligations, all of which, in turn, caused Plaintiff to continue to work with Defendants until the relationship became so bad, and Defendants' conduct so egregious, that Plaintiff was forced to end its relationship with certain clients causing even further damage to Plaintiff and irreparable damage to Plaintiff's good name and reputation.

4.      As set forth fully below, Defendants fraudulently induced Plaintiff to enter into the agreement and Plaintiff did so based on false representations by Defendants of FBA's expertise, performance capacity, warehousing ability, capabilities to provide certain services for various programs offered by Amazon.com, Inc., and ability to provide the services under the agreement. Defendants made these misrepresentations to induce Plaintiff to enter into the agreement. Plaintiff reasonably relied on these misrepresentations, which caused injury and continues to cause injury to Plaintiff.

## THE PARTIES

5.      Plaintiff is a Florida corporation with a principal place of business in Miami, Florida.

6.      Defendant Bratislav Rozenfeld is the founder, sole member and sole manager of FBA Support LLC, as well as the Brand Manager, Digital Strategist, Driving Brand

2

Awareness and Amazon Ecommerce Specialist thereof.  Rozenfeld is domiciled in Edgewater, New Jersey, and is a citizen of the State of New Jersey.

7.     Defendant FBA Support LLC is a New York limited liability company with its principal place of business at 7001 Anpesil Drive, Suite M1, North Bergen, New Jersey 07047. Rozenfeld is the sole member of FBA Support LLC. It is subject to service of process at 3616A 28th St., Long Island City, New York, 11106.

## JURISDICTION AND VENUE

8.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between the parties, as the Plaintiff is a citizen of the state of Florida and the Defendants are citizens of the state of New Jersey, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

9.     The venue of this matter is appropriate in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district and the underlying agreements provide for venue in this district.

## FACTUAL ALLEGATIONS

10.    Plaintiff provides services to business clients operating Amazon stores, including services relating to such clients' drop-shipping and wholesale models. Plaintiff has provided services to more than 600 business clients operating Amazon stores.

11.    In or about September 2019, Plaintiff sought to expand its business and, in that regard, sought to delegate to a professional, account-management contractor certain of Plaintiff's duties and obligations to its clients.

12.    In its search, Plaintiff sought a professional, competent, trustworthy, capable contractor having prior experience working with Amazon stores, particularly with the

Attachment CC                    PX20                    001318

volume of orders generated by Plaintiff's clients, as such contractor would be undertaking duties and obligations Plaintiff had to its clients and their Amazon stores.

13.     In 2019, Plaintiff, Rozenfeld and FBA exchanged written and verbal communications concerning FBA's providing the services needed by the Plaintiff, including, for example, building and managing teams, establishing and maintaining vendor and supplier relationships, sourcing relevant products, managing product sales, researching product options and cost data, managing invoicing, purchasing and logistic systems and providing inventory management and storage.

14.     During the negotiation of an agreement between Plaintiff and FBA in 2019, each Defendant made various misrepresentations of material fact concerning their ability to provide such services to and for Plaintiff, including that (i) Defendants have existing relationships with sources to supply products for sale on Amazon, including with Nike, Adidas, Fischer Price, Sony, Samsung, Disney, Colgate and Johnson & Johnson; (ii) Defendants owned a warehouse in which inventory could be stored and from which inventory could be processed, labeled and shipped for, among other things, Amazon fulfillment; (iii) Defendants had the information technology infrastructure to provide business, product, supply-chain and inventory management services; (iv) Defendants had provided services similar to those requested by the Plaintiff for other individuals or entities that were selling or had sold products on Amazon, including sourcing suppliers, finding high-margin and trending products for sale on Amazon, managing Amazon stores and their invoicing and purchasing systems, and at the volumes of orders generated by Plaintiff's clients; (v) Defendants had "hundreds" of employees to provide professional and competent services and communications to Plaintiff and its clients; (vi) Defendants had "decades" of experience providing services to individuals or entities selling on Amazon; and (vii) Defendants are "Amazon

4

Ecommerce Specialists," which Defendants specifically represented in response to a Plaintiff inquiry of whether Defendants had provided services similar to those requested by the Plaintiff for other individuals or entities that were selling or had sold products on Amazon, including sourcing suppliers, finding high-margin and trending products for sale on Amazon, managing Amazon stores and their invoicing and purchasing systems, and at the volumes of orders generated by Plaintiff's clients.

15.    Defendant Rozenfeld further promoted himself to Plaintiff as being able to deliver Amazon e-commerce services, building and managing high-powered teams, establishing and maintaining vendor relationships, sourcing relevant products, managing product sales, researching product options and cost data, managing invoicing, purchasing and logistic systems and providing inventory management and storage.

16.    As between Plaintiff and Defendants, the Defendants had unique or peculiar knowledge with respect to their representations, each of which was false when Defendants made them. In response to Plaintiff's requests for verification of Defendants' representations, the Defendants would reaffirm, reinforce and otherwise restate their representations. At that time of making such representations, the Defendants knew or should have known of the falsity of their representations, and Plaintiff had no reason to believe any such representations were false, as Defendants appeared credible, sophisticated and competent in their delivery of the now-uncovered blatant instances of fraud.

17.    Justifiably and reasonably relying on the promises and representations made by Defendants, on October 10, 2019, Plaintiff entered into a certain Partnership Agreement (the "**Agreement**") with FBA whereby FBA would build wholesale accounts for Plaintiff's clients in accordance with the Agreement.

**Attachment CC**              **PX20**                    **001320**

18.    Specifically, under the Agreement, Defendants accepted the duty and obligation to provide the following services:

a.    Contacting suppliers;

b.    Securing suppliers;

c.    Building relationships with supplier;

d.    Finding products;

e.    Management of products listed in each account;

f.    Conducting product research to ensure Plaintiff only sells good products with good profit margins;

g.    Sending Plaintiff the invoice to pay for products;

h.    Providing software that will handle creating shipment information + FNSKU;

i.    Packing and shipping products that arrive in FBA's warehouse to Amazon on behalf of Plaintiff;

j.    Setting up the repricer for Plaintiff with the rules to win the buy Box;

k.    Update a Google Sheet or have a reporting platform for Plaintiff to be able to see monthly progress for each store; and

l.    Helping Plaintiff to get ungated for brands or categories (if required by Plaintiff).

Also, FBA had the duty and obligation to provide all accounting services, including the payment of invoices, that twelve (12) months was the "maximum period" by which certain account would generate one-hundred thousand dollars of sales with a twenty-five percent profit margin, that each Plaintiff account would have 300-500 product listed therein, and that FBA would start working with five account per week or twenty accounts per month (together with subparagraphs (a)-(l), the "**Services**").

6

19.     Immediately after signing the Agreement and thereafter, FBA failed to provide and could not provide the Services. It turns out that neither Defendant had the supplier relationships as promised and represented.

20.     Nor did FBA have the infrastructure, inventory-management know-how or knowledge base to receive, manage and inventory products and then label and package them for fulfillment by Amazon. FBA lacked the business know-how or the infrastructure to provide the promised services, and it failed to provide the required service. As a result, Plaintiff's business suffered, along with the business of Plaintiff's clients.

21.     Specifically, FBA failed to, and could not, properly manage or track inventory for which orders were placed and paid. FBA failed to source relevant products. Nor did FBA manage or research products, let alone perform accounting, invoicing and purchasing systems.

22.     FBA lost over $400,000 worth of inventory that was ordered and paid and delivered to FBA.

23.     To sell certain products on Amazon, FBA was required to secure approval from Amazon prior to listing and selling such products on Amazon. Instead of doing so, FBA ordered such products without prior approval causing further issues, complaints and damages, and certain products remain ungated, which precluded their sale on Amazon.

24.     FBA failed to reorder products as necessary resulting in inventory mismanagement.

25.     FBA failed to send products to Amazon for fulfillment.

26.     FBA failed to update Amazon stores with accurate product listings and inventory management.

**Attachment CC**                    **PX20**                    **001322**

27.     FBA failed to, and could not,  properly track and manage product returns.

28.     FBA did not have the number of employees that were represented, which resulted in delays and other order fulfillment and inventory management issues.

29.     FBA had never managed the volume of orders generated by Plaintiff's clients.

30.     FBA failed to render any services that would cause any account to generate one-hundred thousand dollars of sales with a twenty-five percent profit margin within a "maximum period" of twelve (12) months.

31.     FBA failed to provide 300-500 products for each Plaintiff account.

32.     As a direct and proximate result of FBA's breaches of the Agreement, Plaintiff has directly suffered substantial damages in excess of $6,500,000 arising from, among other things, lost revenue, lost income, lost profits, reimbursements, refunds and payments to clients and FBA.

33.     In order to mitigate the damage caused by Defendants, Plaintiff was forced to move a substantial number of clients to a new account manager and refund a substantial amount of fees to cover the costs of the inventory lost by FBA.

34.     Defendants negligently managed Plaintiff's accounts, the products t and caused restrictions and suspension on certain of Plaintiff's accounts by, among other things, failing to ungate products, utilizing products that were either not genuine or whose descriptions or other indicia of origin or sponsorship were inaccurate, false or misleading, failing to comply with applicable terms of services for Plaintiff's accounts,

35.     Defendants are frauds and engaged in a classic bait-and-switch.   FBA represented, and Defendant Rozenfeld represented FBA and himself, as experts in the field having

**Attachment CC**                    **PX20**                    **001323**

the necessary relationships and background needed to fulfill their obligations under the Agreement, however, as it quickly became clear, Defendants had none of the expertise as promised. Defendants failed Plaintiff at the outset.

36.    These failures and constant lies, have caused monetary damages to Plaintiff and otherwise impaired its goodwill and reputation.  These problems could have been prevented ha Defendants actually possessed the knowledge and expertise they promised and assured Plaintiffs they had.

### CAUSE OF ACTION

### COUNT ONE
### (Breach of Contract)

37.    Plaintiff realleges each and every fact in the preceding Paragraphs of the Complaint as if they were fully set forth herein.

38.    FBA is subject to the obligations and requirements contained in the Agreement.

39.    Specifically, FBA was contracted to provide services in accordance with the Agreement.

40.    Defendants failure to provide the services and has breached the Agreement.

41.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered, and continues to suffer, substantial damages and is entitled to an award of damages, costs and interest in an amount of not less than $6,500,000.

### COUNT TWO
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

42.    Plaintiff realleges each and every fact in the preceding Paragraphs of the Complaint as if they were fully set forth herein.

**Attachment CC**                    **PX20**                    **001324**

43.     The Agreement is a contractual agreement which contains an implied covenant of good faith and fair dealing, requiring FBA to deal honestly and in good faith with Plaintiff, and FBA breached such covenants.

44.     As a direct and proximate result of FBA's wrongful conduct, Plaintiff has suffered, and continues to suffer, substantial damages and is entitled to an award of damages in an amount of not less than $6,500,000, costs, interest, punitive damages, treble damages and attorneys' fees.

## COUNT THREE
### (Fraudulent Inducement)

45.      Plaintiff realleges each and every fact in the preceding Paragraphs of the Complaint as if they were fully set forth herein.

46.     As stated above, Defendants individually and collectively made misrepresentations of material fact to Plaintiff.

47.     Defendants individually and collectively made these misrepresentations of material fact with the intention of inducing Plaintiff's reliance on them.

48.     Plaintiff reasonably relied on Defendants' individual and collective misrepresentation of these material facts.

49.     Plaintiff's reliance on these misrepresentations of material fact by Defendants, cause injury to Plaintiff.

50.     By virtue of the relationship clearly set forth herein, FBA and Rozenfeld are alter egos and therefore jointly and severally liable for the misrepresentations made on behalf of their alter ego.

51.     Defendants conduct is egregious in nature and was directed at Plaintiff.

10

52.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered, and continues to suffer, substantial damages and is entitled to an award of damages in an amount of not less than $6,500,000, costs, interest, punitive damages, treble damages and attorneys' fees.

### COUNT FOUR
### (Fraudulent Misrepresentation)

53.     Plaintiff realleges each and every fact in the preceding Paragraphs of the Complaint as if they were fully set forth herein.

54.     Defendants made false misrepresentations of fact to Plaintiffs.

55.     Defendants knew or should have known that the representations were false.

56.     Defendants made the representations to induce action by Plaintiff to enter into the Agreement with Defendants.

57.     In reliance of Defendants' representations, Plaintiff acted to its detriment.

58.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered, and continues to suffer, substantial damages and is entitled to an award of damages in an amount of not less than $6,500,000, costs, interest, punitive damages, treble damages and attorneys' fees.

### COUNT FIVE
### (Unjust Enrichment)

59.     Plaintiff realleges each and every fact in the preceding Paragraphs of the Complaint as if they were fully set forth herein.

60.     Plaintiff made payments in excess of $2,000,000 to Defendant Rozenfeld and FBA.

61.     Defendants accepted and retained Plaintiff's payments.

**Attachment CC**                **PX20**                **001326**

62.     Defendants have been unjustly enriched at the expense of Plaintiff in an amount of not less than $6,500,000.

63.     Equity and good conscience require restitution and payment in full of all money paid to them.

## COUNT SIX
### (Piercing the Corporate Veil)

64.     Plaintiff realleges each and every fact in the preceding Paragraphs of the Complaint as if they were fully set forth herein.

65.     Defendant Rozenfeld is the sole member of FBA and has day-to-day involvement in the business of FBA.

66.     FBA does not adhere to corporate formalities. Upon information and belief, he has not executed a written limited liability company agreement with FBA.

67.     Upon information and belief, FBA is grossly undercapitalized and upon receipt of any payment from Plaintiff, Defendant Rozenfeld would distribute FBA's cash assets to himself so as to leave FBA without sufficient assets to operate its business.

68.     Upon information and belief, Defendant Rozenfeld used FBA for the purpose of committing the above-mentioned fraud on Plaintiff.

69.     Upon information and belief, Defendant Rozenfeld comingles his assets with the assets of FBA. He uses FBA assets to fund his personal expenses.

70.     At all times relevant to this action, Defendant Rozenfeld had complete domination and control over FBA and this control was used by Rozenfeld to commit the fraud against Plaintiff and such fraud caused injury to Plaintiff.

71.     As a direct and proximate result of Rozenfeld's wrongful conduct, Plaintiff has suffered, and continues to suffer, substantial damages and is entitled to an award of damages

Attachment CC                    PX20                    001327

in an amount of not less than $6,500,000, costs, interest, punitive damages, treble damages and attorneys' fees

## COUNT SEVEN
### (Violation of New Jersey Unfair Trade Practices Act)

72.     Plaintiff realleges each and every fact in the preceding Paragraphs of the Complaint as if they were fully set forth herein.

73.     Defendants violated New Jersey's Unfair Trade Practices Act by engaging in unconscionable commercial practices, deception, fraud, false pretenses, false promise, misrepresentation, or the concealment, suppression or omission of any material facts with the intent that other rely thereon, in each instance offending the established public policy and acts that are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers and Plaintiff.

74.     Defendants abandoned their contractual obligations to Plaintiff, misled Plaintiff, made intentional and fraudulent misrepresentations to Plaintiff, and unjustly enriched themselves to the detriment of Plaintiff.

75.     Plaintiff has suffered an adverse effect as a result of unfair trade practices by Defendants as alleged herein.

76.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered, and continues to suffer, substantial damages and is entitled to an award of damages in an amount of not less than $6,500,000, costs, interest, punitive damages, treble damages and attorneys' fees.

**Attachment CC**                    **PX20**                    **001328**

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment awarding it the following relief against the Defendants: rescission, monetary damages, punitive damages, treble damages, incidental damages, costs of suit, interest, attorneys' fees.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiff demands trial by jury in this action of all issues so triable.

Dated: June 2, 2021                    Respectfully submitted,
      Trumbull, CT

                         PLAINTIFF
                         VALIANT CONSULTANTS INC.

               By:   /s/ Richard Gora
                      Richard Gora
                      (203) 424-8021
                      rich@goralaw.com
                      **Gora LLC**
                      2 Corporate Dr., Suite 210
                      Trumbull, CT 06611

                      **ATTORNEYS FOR THE PLAINTIFF**

FILED: NEW YORK COUNTY CLERK 03/04/2024 05:30 PM

NYSCEF DOC. NO. 61

INDEX NO. 155078/2020

RECEIVED NYSCEF: 03/04/2024

**PLAINTIFF**
Exhibit "7"

FILED: NEW YORK COUNTY CLERK 03/04/2024 05:30 PM

NYSCEF DOC. NO. 61

INDEX NO. 155078/2020

RECEIVED NYSCEF: 03/04/2024



Wraith & Co                                                           4173
        06/27/2018        ACD Distribution, LLC
                                      PIF, INV 0001005583                    764.18

1000 SIGNATURE (5480)          PIF, INV 0001005583                    764.18

**Attachment CC**                    **PX20**                        **001331**

FILED: NEW YORK COUNTY CLERK 03/04/2024 05:30 PM

NYSCEF DOC. NO. 61

INDEX NO. 155078/2020

RECEIVED NYSCEF: 03/04/2024



Wraith & Co                                                                4174
        06/27/2018        ACD Distribution, LLC
                                    PIF, INV 0001005626                    305.80


1000 SIGNATURE (5480)          PIF, INV 0001005626                         305.80

**Attachment CC**                  **PX20**                              **001332**

FILED: NEW YORK COUNTY CLERK 03/04/2024 05:30 PM

NYSCEF DOC. NO. 61

INDEX NO. 155078/2020

RECEIVED NYSCEF: 03/04/2024



Wraith & Co                                                                    4177

06/27/2018        **ACD Distribution, LLC**

                                    PIF, INV  0001012750                        817.92


1000 SIGNATURE (5480)              PIF, INV  0001012750                        817.92

**Attachment CC**                    **PX20**                                    **001333**

FILED: NEW YORK COUNTY CLERK 03/04/2024 05:30 PM
NYSCEF DOC. NO. 61

INDEX NO. 155078/2020
RECEIVED NYSCEF: 03/04/2024



Wraith & Co                                                                4178
06/27/2018        ACD Distribution, LLC
                              PIF, INV 0001012764                          69.98

1000 SIGNATURE (5480)         PIF, INV 0001012764                          69.98

FILED: NEW YORK COUNTY CLERK 03/04/2024 05:30 PM

NYSCEF DOC. NO. 61

INDEX NO. 155078/2020

RECEIVED NYSCEF: 03/04/2024



| Wraith & Co | | | 4179 |
|---|---|---|---|
| 06/27/2018 | ACD Distribution, LLC | | |
| | | PIF, INV 0001012819 | 1,085.00 |

| 1000 SIGNATURE (5480) | PIF, INV 0001012819 | 1,085.00 |
|---|---|---|

**Attachment CC**         **PX20**         **001335**

FILED: NEW YORK COUNTY CLERK 03/02/2021 04:21 PM
NYSCEF DOC. SUPREME COURT OF THE STATE OF NEW YORK

INDEX NO. 155078/2020
RECEIVED NYSCEF: 03/02/2021

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------X

SELLERS FUNDING CORP.

                              Plaintiff,

                vs

CLOSTER GREEN CORP.
DBA WRAITH & CO
BRATISLAV ROZENFELD

                             Defendants,

------------------------------------------------------------X

Index No.: 155078/2020

**VERIFICATION BY CORPORATE DEFENDANT**

1. BRATISLAV ROZENFELD as agent of CLOSTER GREN CORP. d/b/a WRAITH & CO, deposes and says: I am a defendant in the instant matter.

2. I have read the foregoing MOTION TO DISMISS, and know the contents thereof.

3. The same are true to my knowledge, except as to matters therein stated to be alleged on information and belief and as to those matters I believe them to be true.

4. To the best of my knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the presentation of these papers or the contentions therein are not frivolous.

5. I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements is willfully false, I am subject to punishment.

                                             _____
                                             BRATISLAV ROZENFELD as
                                             agent of CLOSTER GREN CORP.
                                             d/b/a WRAITH & CO

Subscribed and sworn to before me

this 2 day of _____, 2021.

_____
Notary Public

DAVID HASCUP
NOTARY PUBLIC
State of New Jersey
My Commission Expires
January 19, 2022

FILED: NEW YORK COUNTY CLERK 03/02/2021 04:21 PM

INDEX NO. 155078/2020

NYSCEF DOC. SUPREME COURT OF THE STATE OF NEW YORK          RECEIVED NYSCEF: 03/02/2021
COUNTY OF NASSAU

-------------------------------------------------------------------X          Index No.: 613163/2020

FOX CAPITAL GROUP, INC.

                              Plaintiff,

                                                              **VERIFICATION BY**
CLOSTER GREEN CORP,                                           **NON CORPORATE**
DBA WRAITH & CO                                               **DEFENDANT**
BRATISLAV ROZENFELD

                              Defendants,

-------------------------------------------------------------------X

1.  BRATISLAV ROZENFELD, deposes and says: I am a defendant in the instant matter,

2.  I have read the foregoing MOTION TO DISMISS, and know the contents thereof,

3.  The same are true to my knowledge, except as to matters therein stated to be alleged on

    information and belief and as to those matters I believe them to be true.

4.  To the best of my knowledge, information and belief, formed after an inquiry reasonable under

    the circumstances, the presentation of these papers or the contentions therein are not frivolous.

5.  I certify that the foregoing statements made by me are true. I am aware that if any of the

    foregoing statements is willfully false, I am subject to punishment.

                                                              _____
                                                              BRATISLAV ROZENFELD

Subscribed and sworn to before me

this 2nd day of March ___, 2021.

_____
Notary Public          DAVID HASCUP
                       NOTARY PUBLIC
                       State of New Jersey
                       My Commission Expires
                       January 19, 2022

FILED: NEW YORK COUNTY CLERK 03/04/2024 05:30 PM

NYSCEF DOC. NO. 59

INDEX NO. 155078/2020

RECEIVED NYSCEF: 03/04/2024

**PLAINTIFF**
Exhibit "5"

FILED: NEW YORK COUNTY CLERK 03/04/2024 05:30 PM
NYSCEF DOC. NO. 1398
INDEX NO. 155078/2020
RECEIVED NYSCEF: 03/04/2024

Case 2:24-cv-06635-JXN-LDW    Document 1-42    Filed 06/03/24    Page 29 of 95 PageID:
1398
DocuSign Envelope ID: 03B9B81D-22C5-4A15-AE94-854BFC11169B

Page 1 of 2



June 19, 2019

By E-mail and Overnight Courier

Closter Green Corp
3616 29th Street
Astoria, NY 11106

Attn.: Bratislav Rozenfeld

Re: Default Notice

Reference is made to the Future Receivables Purchase and Sale Agreement (the
"Agreement"), dated as of March 21, 2019, between Closter Green Corp. (the "Seller")
and SellersFunding Portfolio LLC (the "Buyer"), with Bratislav Rozenfeld, as Principals
(each a "Principal" and collectively the "Principals").

WHEREAS, the Buyer has **not received** the amounts set forth on the Collection Table
for the following dates specified in the Collection Table: (the "Missed Payments")

| Due Date | Type | Past Due Amount |
|----------|------|-----------------|
| 6/7/2019 | Principal and Interest | $16,666.67 |

WHEREAS, **the Seller has breached its obligations** under Section I entitled "Purchase
and Sale of Receivables" sub-section (C) "Performance Guarantees" and Section E sub-
section (iv) entitled "Full Recourse for All Other Events" of the Agreement.

WHEREAS, Account Validity and Performance Guarantee under the terms of the Exhibit
A, section II "Covenants" sub-section (A) entitled "Guarantor Covenants as to Payments"
and sub-sections (B) (iv) entitled "Certain Additional Representations and Covenants" set
forth in the Agreement, **the Principals will have personal liability for breaches by the
Seller of the representations and covenants set forth therein.**

In accordance with Sections V entitle "Events of Default" sub-section (B) entitled
"Remedies" of the Agreement, **the Buyer demands the payment by the Seller and the
Principals of all amounts due** under the Agreement including all Indemnified Amounts.
The total amount due and payable under the Agreement on the date hereof is **$150,868.32**
(the "Outstanding Balance").

*SellersFunding Corp., 45 N Broad St., Ridgewood, NJ 07450 Contact: Operations@SellersFunding.com or (201) 201-7540*

FILED: NEW YORK COUNTY CLERK 03/04/2024 05:30 PM
NYSCEF DOC. NO. Case 2:24-cv-06635-JXN-LDW    Document 1-42    Filed 06/03/24    Page 30 of 95 PageID:
DocuSign Envelope ID: 6589B81D-22C5-4A15-AE94-854BFC11169B
1399
INDEX NO. 155078/2020
RECEIVED NYSCEF: 03/04/2024

Page 2 of 2

In as far the Outstanding Balance is not paid in full, Buyer may, without further notice to Seller or the Principals, exercise any remedy available to it against Seller and/or the Principals under the Agreement or under applicable law.

This letter confirms that Buyer has not waived its rights with respect to the Specified Events of Default and hereby expressly reserves any and all rights, powers, privileges and remedies under the Agreement, any documents executed in connection therewith, applicable law or otherwise with respect to the any default under the Agreement (including a Specified Event of Default). The Buyer may elect to exercise any or all of its rights, at its sole option, at any time hereafter, without the necessity of further notice, demand or other action on the part of the Buyer.

Nothing contained in this letter or any failure or delay by Buyer in exercising any rights, powers, privileges and remedies under the Agreement, any other document executed in connection therewith, or applicable law with respect to any Specified Event of Default or any other default now existing or hereafter arising under the Agreement or any document executed in connection therewith shall be construed as a waiver or modification of such rights, powers, privileges and remedies. This letter is not, and shall not be deemed to be, a waiver of, or a consent to, any default, noncompliance, default (including, without limitation, the Specified Events of Default) now existing or hereafter arising under the Agreement or any other document executed in connection therewith. This letter shall not entitle the Seller or the Principals to any other or further notice or demand.

Respectfully yours,

SellersFunding Portfolio LLC

By: _____
Name: Ricardo Peró
Title: Chief Executive Officer

FILED: NEW YORK COUNTY CLERK 03/04/2024 05:30 PM    INDEX NO. 155078/2020

NYSCEF DOC. NO. 59    RECEIVED NYSCEF: 03/04/2024

| | |
|---|---|
| **From:** | Steven R |
| **To:** | Operations | SellersFunding |
| **Subject:** | Re: Reporting of Negative Information Notice |
| **Date:** | Friday, October 11, 2019 5:16:07 PM |

I noticed. You guys dont want to settle this?

On Wed, Oct 9, 2019 at 2:29 PM Operations | SellersFunding
<operations@sellersfunding.com> wrote:

Good Afternoon,

Negative Information Notice attached.

Thank you,

Operations Team



**Operations Team**

201-201-7535 / 201-201-7540
operations@sellersfunding.com
www.sellersfunding.com

**#1 Lending Platform
in the USA**

This e-mail (including any attachments) is intended solely for its authorized recipient(s), and may contain
confidential and/or legally privileged information. If you received this email in error, please notify the sender
immediately and delete it (including any attachments) from your system.

**Attachment CC**                    **PX20**                    **001341**

FILED: NEW YORK COUNTY CLERK 03/04/2024 05:30 PM

NYSCEF DOC. NO. 59

INDEX NO. 155078/2020

RECEIVED NYSCEF: 03/04/2024



October 9, 2019

Re:    Guarantor(s) of Revenue Advance No. SFP 000561
       Bratislav Rozenfeld
       429 Jefferson Ave
       Staten Island, NY 10306

Dear Mr. Rozenfeld,

Be informed that SellersFunding Corp. has reported to a credit service provider that the above referenced account to which you are a guarantor was sent to an external collection agency.

We further disclose that SellersFunding Corp has reported on the guarantor(s) to the credit service provider listed below. You have the right under the Fair Credit Reporting Act to know the information in your credit file at the credit report provider.

Experian
Experian National Consumer Assistance Center
P.O. Box 4500
Allen, TX 75013
1-800-397-3742
https://www.experian.com/help/

Yours truly,

SellersFunding Corp Operations

*SellersFunding Corp., 43 W 23 Street, Floor 2, New York, NY 10010, Telephone # (201) 201-7540*

FILED: NEW YORK COUNTY CLERK 03/04/2024 05:30 PM

NYSCEF DOC. NO. 55

INDEX NO. 155078/2020

RECEIVED NYSCEF: 03/04/2024

**PLAINTIFF**
**Exhibit "1"**

FILED: NEW YORK COUNTY CLERK 03/04/2024 05:30 PM
NYSCEF DOC. NO. 55
DocuSign Envelope ID: 066F25BC-DDD7-4BDD-8292-E4754592B1CC
INDEX NO. 155078/2020
RECEIVED NYSCEF: 03/04/2024



## **Sellers**Funding

### **Transaction Summary:**

| | |
|---|---|
| Effective Date: | 03/21/2019 |

Seller Information

| | |
|---|---|
| Seller: | CLOSTER GREEN CORP DBA WRAITH & CO |
| Seller D/B/A: | WRAITHCO |
| Entity Type: | CORP |
| | |
| Jurisdiction of Organization: | NY |
| Principal Place of Business: | 3616 29TH ST, ASTORIA, NY 11106-3206 |
| Amazon ID Number: | A2DVKAFYE38NFL |
| Principal(s)/Ownership Percentage: | BRATISLAV ROZENFELD, 75% |
| | |
| Collection Account: | Account Bank: SIGNATURE BANK |
| | Routing Number: ███████ |
| | Account Number: ███████5480 |

Transaction Details

| | |
|---|---|
| Purchase Price: | $186,000.00 |
| Specified Amount: | $200,000.00 |
| Specified Payment: | $16,666.67 |
| Marketplace: | Amazon.com, Inc. and its affiliates |
| First Payment Date: | 04/26/2019 |
| Terms: | 12 |
| Maturity Date: | 09/27/2019 |
| Payment Frequency[1]: | [ ] Weekly |
| (check one) | [X] Bi-Weekly |
| | [ ] Monthly |
| | |
| Discount Fee: | **$14,000.00** |
| Processing Fee: | $100.00 |
| Late Fee: | 5% of unpaid amount |

---

[1] To conform to payment frequency of Amazon marketplace account.

1

FILED: NEW YORK COUNTY CLERK 03/04/2024 05:30 PM

NYSCEF DOC. NO. 65

DocuSign Envelope ID: 655F25BC-DDD7-4BDD-8292-E4754592B1CC

INDEX NO. 155078/2020

RECEIVED NYSCEF: 03/04/2024



## RECEIVABLES PURCHASE AGREEMENT

THIS RECEIVABLES PURCHASE AGREEMENT, dated as of 03/21/2019 (as may be amended, amended and restated or otherwise modified from time to time, the "**Agreement**"), is entered into by and between SellersFunding Portfolio LLC, a Delaware limited liability company with offices at 45 North Broad Street, Suite 100, Ridgewood, NJ 07450 ("**Purchaser**") and CLOSTER GREEN CORP DBA WRAITH & CO, a NY CORP (the "**Seller**" and together with the Purchaser each a "**Party**" and collectively the "**Parties**"). Reference is hereby made to the Standard Terms and Conditions for Loans and Sales of Receivables (as may be amended from time to time, the "**Terms & Conditions**") a copy of which can be found at https://sellersfunding.com/terms-and-conditions which is hereby incorporated herein by reference as if fully set forth herein.

I.    **Purchase and Sale of Receivables**

(A)    <u>Purchase and Sale</u>. Subject to the terms and conditions contained herein, Purchaser agrees to purchase from Seller and Seller hereby agrees to sell to Purchaser, for $186,000.00 (the "**Purchase Price**"), $200,000.00 (the "**Specified Amount**") of Seller's future receivables either (i) due to Seller from Amazon.com, Inc. (the "**Marketplace**") or (ii) due from another online marketplace or a third party, in either case meeting the requirements set forth in <u>Section II(D)</u> of the Terms & Conditions (the "**Future Receivables**"). Seller will remit the Specified Amount of Future Receivables to Purchaser by paying to Purchaser $16,666.67 (the "**Specified Payment**") on each Payment Date (as defined below) until all Obligations (as defined below) have been indefeasibly paid to Purchaser including without limitation the Specified Amount of Future Receivables.  Any Specified Amount not paid when due shall be subject to a late fee of 5% of the unpaid amount (the "**Late Fee**"). Purchaser shall charge a discount fee (the "**Discount Fee**") of 7% of the Specified Amount which shall be due and payable on the date the conditions to Purchaser's purchase of the Future Receivables are satisfied or waived and the Purchaser's funds its payment of the Purchase Price (the "**Closing Date**"). Purchaser shall net the Discount Fee and Processing Fee out of the Purchase Price when funding the Purchase Price.

As used in this Agreement,

"**Business Day**" means a day other than a Saturday, Sunday or other day on which commercial banks in Delaware or New Jersey are authorized or required by law to close.

"**Conveyed Property**" shall mean, collectively, the Future Receivables together with all cash and non-cash proceeds and products thereof, whether in cash or in kind, all security and guarantees therefore, and all Supplier's rights arising from the Goods and Services delivered by Seller with respect thereto and represented thereby, and all books and records of Seller related thereto.

"**Credit Risk**" means with respect to any Future Receivables purchased by the Purchaser hereunder, the failure or inability of Purchaser to collect all or any part of such Future Receivable solely as a result of the occurrence of a Credit Event.

2

FILED: NEW YORK COUNTY CLERK 03/04/2024 05:30 PM

INDEX NO. 155078/2020

NYSCEF DOC. NO. 65    DocuSign Envelope ID: C65F25BC-DDD7-4BDD-8292-E4754592B1CC

RECEIVED NYSCEF: 03/04/2024



**Sellers**Funding

"**Credit Event**" means as to the Marketplace, any other online marketplace, any third party or any Future Receivable purchased by Purchaser hereunder, any of the following, (i) any case or proceeding with respect to the Marketplace, such other online marketplace or such third party, voluntary or involuntary, under Title 11 of the United States Code, as amended from time to time, or any similar federal or state law for the relief of debtors (the "**Bankruptcy Code**") or other similar law or any other similar proceedings seeking any stay, reorganization, arrangement, composition or readjustment of the obligations and/ or indebtedness of the Marketplace, such other online marketplace of such third party; (ii) any proceeding seeking the appointment of any trustee, receiver, liquidator, custodian or other insolvency official with similar powers with respect to the Marketplace, such other online marketplace or such third party or any material portion of their respective assets; (iii) any proceeding for liquidation, dissolution, or other winding up of the business of the Marketplace, such other online marketplace or such third party; (iv) any assignment for the benefit of creditors or any marshaling of the assets of the Marketplace, such other online marketplace or such third party; or (v) any other circumstance where a Marketplace, such other online marketplace or such third party is unable to pay all or any part of a Future Receivable.

"**Goods**" means goods as defined in the UCC.

"**Marketplace Agreement**" means the agreement between Seller and the Marketplace or another online marketplace relating to the sale of Goods or Services by Seller on the Marketplace or such other online marketplace.

"**Obligations**" shall mean all monetary and non-monetary obligations, indebtedness and liabilities of the Seller or any Guarantor (as defined below) to Purchaser under this Agreement and the other Transaction Documents (as defined below) including any fees due under the Transaction Documents, whether incurred before or after termination of this Transaction Documents, whether absolute or contingent, joint or several, matured or unmatured, direct or indirect, primary or secondary, liquidated or unliquidated, and whether arising directly or indirectly or acquired from others (whether outright, by assignment, unconditionally, or as collateral security from another, and including participations or interest obligations to others), including, without limitation, all indebtedness arising from chargebacks of Future Receivables, costs, expenses and attorneys' fees chargeable to Seller or any Guarantor under the Transaction Documents, and all of Seller's or any Guarantor's obligations to Purchaser as an indemnitor under the Transaction Documents. For the avoidance of doubt, Obligations shall in no event include credit losses incurred by Purchaser arising from Credit Risk (as defined below) assumed by Purchaser under the Transaction Documents.

"**Payment Cycle**" means the time period specified for payments from the Marketplace or other online marketplace in the Marketplace Agreement; provided that in no event shall the Payment Cycle be more than one month.

"**Payment Date**" shall mean one Business Day following the date Seller receives a payment during any Payment Cycle.

"**Services**" means services rendered or to be rendered by Seller.

3

INDEX NO. 155078/2020
RECEIVED NYSCEF: 03/04/2024

NYSCEF DOC. NO. 668 DocuSign Envelope ID: 658F25BC-DDD7-4BDD-8292-E4754592B1CC



"**Transaction Summary**" means the transaction summary set forth on the first page of this Agreement.

"**UCC**" shall mean the Uniform Commercial Code (or any successor statute) as adopted and in force from time to time in the State of Delaware or, when the laws of any other state govern the method or manner of the perfection or enforcement of any security interest in any of the Future Receivables or the Conveyed Property, the Uniform Commercial Code (or any successor statute) as adopted and in force from time to time in such state for purposes of the provisions hereof relating to such perfection or priority and for purposes of definitions relating to such provisions.

(B)     Specified Amount of Future Receivables/ Conveyed Property. Purchaser's purchase includes, together with the Specified Amount of Future Receivables, all the Conveyed Property (as defined below) related thereto including, without limitation, all cash and non-cash proceeds and products of the Specified Amount of Future Receivables as well as all of Seller's rights under the UCC arising from the Goods delivered and Services rendered by Seller.

(C)     Performance Guarantees. Seller's performance of its Obligations hereunder shall be (i) guaranteed by the Principals listed on the Transaction Summary (the "**Guarantors**") pursuant to the terms of Account Validity and Performance Guarantees in the form of Exhibit A (each a "**Performance Guarantee**" and collectively the "**Performance Guarantees**") and (ii) secured by the Future Receivables and other Conveyed Property which are being sold to Purchaser in a true sale on the Closing Date.

(D)     No (Credit) Recourse for Marketplace Financial Inability to Pay. Seller sells, assigns, transfers, conveys, and delivers each Future Receivable and other Conveyed Property and Purchaser buys each Future Receivable and other Conveyed Property from Seller under this Agreement *without* recourse, meaning that Purchaser accepts only the Credit Risk that Purchaser cannot collect the Future Receivable or other Conveyed Property from the Marketplace *solely* because the Marketplace, other marketplace or third party suffers a Credit Event; i.e., is financially unable to pay thereon.

(E)     Full Recourse for All Other Events. Without limitation of Section I(D), if: (i) any representation or warranty made by Seller to Purchaser with respect to any Future Receivable or other Conveyed Property is false or incorrect when made or deemed made, (ii) after the Closing Date, the outstanding principal balance of a Future Receivable is (a) reduced as a result of any defective or rejected or returned Goods or Services, any discount, credit or any adjustment or otherwise, for any reason, by Seller, or (b) reduced or cancelled as a result of a set-off in respect of any claim by any person or entity (whether such claim arises out of the same or a related transaction or an unrelated transaction), (iii) any Future Receivable or other Conveyed Property is not collected by Purchaser in full as a result of a dispute, or (iv) if any Future Receivable or other Conveyed Property is otherwise not collectible by Purchaser in full *other than* due *solely* to Credit Risk assumed by Purchaser hereunder, then Purchaser shall no longer have any Credit Risk thereon and Purchaser shall have full recourse to Seller and Guarantors thereon, including, without limitation, under Sections IV(L)(iii) and VI(C) hereof.  Seller agrees to notify Purchaser, in writing, immediately upon becoming aware of any dispute with respect to the Future Receivables or other Conveyed Property and to give Purchaser full details thereof.

FILED: NEW YORK COUNTY CLERK 03/04/2024 05:30 PM

INDEX NO. 155078/2020

NYSCEF DOC. NO. 56     CaseFileEnvelope ID: 566F25BC-DDD7-4BDD-8292-E4754592B1CC

RECEIVED NYSCEF: 03/04/2024



(F)     True Sale. The Parties intend to accomplish a "true sale" by Seller of the Specified Amount of the Future Receivables and the other Conveyed Property to Purchaser. As sole and absolute owner of the Specified Amount of the Future Receivables and other Conveyed Property, Purchaser shall have the right to collect and otherwise deal with such property as Purchaser deems fit, in its sole discretion. Without limitation thereof, Purchaser may sell, factor, pledge or settle any dispute with respect to Purchaser's ownership interest in the Specified Amount of Future Receivables and the other Conveyed Property as Purchaser deems fit, in its sole discretion.

II.     Conditions to Purchase of Receivables

(A)     Closing Conditions. The obligation of Purchaser to purchase the Specified Amount of Future Receivables and other Conveyed Property on the Closing Date is subject to satisfaction or waiver of the following conditions on or prior to five days of effective date:

1.     Seller shall have delivered this Agreement duly executed by Seller;

2.     The Guarantors shall have delivered the Performance Guarantees duly executed by the Guarantors;

3.     Seller shall have delivered a copy of bank statement of Seller relating to the Collection Account together with a voided check for the Collection Account;

4.     Each principal shall have delivered a copy of such Principal's driver's license;

5.     Seller shall have delivered all information necessary for Purchaser to file a UCC financing statement naming Seller as seller/debtor and Purchaser as purchaser/assignor to be filed in the NY Secretary of State in a form reasonably acceptable to the Purchaser; and

6.     Purchaser shall have received such other documents and certificates (including a Form W-9) as the Purchaser may reasonably request.

III. Representations and Warranties

Seller represents and warrants to Purchaser, on the date hereof and on the Closing Date, that the representations and warranties set forth in the Terms & Conditions are true and correct in all respects. The representations and warranties are all continuing in nature and survive the execution and delivery of this Agreement and the other Transaction Documents, the consummation of the transactions contemplated hereby and thereby and the termination of this Agreement and the other Transaction Documents.

IV. Certain Other Terms of Sale

(A)     No Assumption of Liabilities. By purchasing the Specified Amount Future Receivables and other Conveyed Property from Seller under this Agreement, without recourse, Purchaser does not assume any obligation of Seller to the Marketplace, any other marketplace or any other person in respect thereto.

5

INDEX NO. 155078/2020
RECEIVED NYSCEF: 03/04/2024

NYSCEF DOC. NO. 55    DocuSign Envelope ID: 6D8F25BC-DDD7-4BDD-8292-E4754592B1CC



SellersFunding

(B)    Rights As to Provision of Goods and Services. Purchaser shall have all the rights of an unpaid Seller or provider of the Goods and Services rendered by Seller to the Marketplace, other marketplace or third party, which gives rise to and creates the Future Receivables sold to Purchaser including, without limitation, rights of stoppage in transit, reclamation and replevin. Seller shall mark its books and records to show that it has sold the Specified Amount of Future Receivables to Purchaser in a manner satisfactory to Purchaser.

(C)    Notation of Lien on Receivables. Any invoices and other statements delivered by Seller to the Marketplace, other marketplace or third party evidencing any Future Receivables and all copies thereof shall clearly state that the Specified Amount of Future Receivables owed by the Marketplace, such other marketplace or such third party have been sold and assigned by Seller and are payable only into the Collection Account, provided, however, that Seller's failure to deliver such invoices as so marked shall not affect the sale and assignment of the Specified Amount of Future Receivables and other Conveyed Property to Purchaser under this Agreement.

(D)    Negative Pledge. During the Term of this Agreement Seller shall not sell, negotiate, pledge, assign or grant a security interest in any of its receivables including the Future Receivables to any Person other than Purchaser without Purchaser's prior written consent.

(D)    Electronic Signatures. Seller, by its signature below, further consents to: (1) use of electronic records, electronic signatures and electronic services for all purposes of this Agreement and the other Transaction Documents from time to time; and (2) periodic background and risk assessment checks of Seller performed by third party services providers, so Purchaser may assess Seller's ongoing creditworthiness and ability to perform in compliance with the terms herein.

(E)    Notation in the Purchaser's Books. Further evidence of the sale and assignment of the Specified Amount of Future Receivables to Purchaser under this Agreement is and shall be provided and displayed in the [SellersFunding System]. Such evidence shall be prima facie evidence of the transactions contemplated hereby.

(F)    Further Assurances. Seller agrees to execute such further documents and instruments as Purchaser may hereafter request, from time to time, as further confirmatory evidence of the sale of the Specified Amount of Future Receivables and other Conveyed Property by Seller to Purchaser under this Agreement.

(G)    True Sale/Security. The transfer, sale and assignment of Specified Amount of Future Receivables and other Conveyed Property to Purchaser under this Agreement shall constitute an absolute and irrevocable sale of such Future Receivables and the related Conveyed Property to Purchaser in a true sale and provide Purchaser with all right, title and interest in, and the full benefits of ownership of, the Specified Amount of Future Receivables, together with all other Conveyed Property related thereto. Seller relinquishes all right, title, interest and control over such Future Receivables and such Conveyed Property upon the sale of such Future Receivables to Purchaser under this Agreement. Seller represents and warrants to Purchaser that Purchaser shall hold a first-priority security interest in all such Future Receivables and Conveyed Property, as buyer and owner thereof. This Agreement is acknowledged to be a security agreement and, without limitation thereof, it is agreed that Purchaser shall take a first priority security interest thereunder under the UCC, as the buyer and owner, of all the Future Receivables and the other Conveyed Property sold to Purchaser hereunder, to the extent the Purchased

6



FILED: NEW YORK COUNTY CLERK 03/04/2024 05:30 PM
NYSCEF DOC. NO. 56    DocuSign Envelope ID: 566F25BC-DDD7-4BDD-8292-E4754592B1CC
INDEX NO. 155078/2020
RECEIVED NYSCEF: 03/04/2024



**Sellers**Funding

Receivables are not later charged-back, in whole or in part. Purchaser shall be authorized to file a UCC financing statement to perfect its interest in the Specified Amount of Future Receivables and other Conveyed Property.

(H)     Characterization of Advances. All payments made by Purchaser to Seller under this Agreement shall be treated as payments of Purchaser's contractual Purchase Price of the subject Future Receivables and not as loans by Purchaser to Seller, subject to Section IV(I) below.

(I)     Security. It is not the intention of Seller or Purchaser that the conveyance of the Specified Amount of Future Receivables and the other Conveyed Property by Seller to Purchaser hereunder be deemed to be a grant of a security interest in the Specified Amount of Future Receivables and Conveyed Property related thereto by Seller to Purchaser as collateral security to secure a debt or other obligation of Seller to Purchaser; rather, as aforesaid, the Parties both intend that Purchaser shall hold a security and ownership interest in the Specified Amount of Future Receivables and other Conveyed Property, both those sold on the date hereof and those later conveyed,  as the buyer and owner thereof, in a true-sale. However, in the event that, notwithstanding the intent of the Parties, any Future Receivable(s) are determined to be the property of Seller or its bankruptcy estate, by order of a court of competent jurisdiction final beyond appeal, then without derogation of the Parties' intention that the sale of the Specified Amount of Future Receivables and other Conveyed Property by Seller to Purchaser hereunder shall constitute a true sale thereof: (i) the transfers and conveyances by Seller provided for this under this Agreement shall be deemed to be a grant by Seller to Purchaser and its assigns as lender, of a security interest in and to all of Seller's right, title and interest in, to and under the all Future Receivables owing by the Marketplace, or such other marketplace or third party that is an obligor under the Future Receivables, to the Seller and in the proceeds thereof, both now existing and later arising, as collateral security to secure: (1) the rights of Purchaser hereunder, and (2) a loan by Purchaser to Seller in the Specified Amount, and (3) all other indebtedness and Obligations owed by Seller to Purchaser under this Agreement. Seller and Purchaser shall each take such actions as may be necessary so that the security and ownership interests granted to Purchaser herein shall at all times be a perfected security interest of first priority in favor of Purchaser under applicable law and will be maintained as such throughout the term of the Agreement.

(J)  Access to Marketplace Account. Seller agrees to immediately grant, or allow Purchaser to grant to itself authorization, permission, and access for Purchaser to Seller's account credentials within the Marketplace's system or the system of any other marketplace or third party that is an obligor with respect to the Future Receivables, by providing a login, password and role access. Seller also agrees that Purchaser may monitor and ensure that such access and payment information is not changed or altered in any way.

(K) Payment Direction to the Marketplace/ Payments from Collection Account. Seller shall direct and instruct the Marketplace and any other marketplace or third party which is an obligor with respect to the Future Receivables to remit payment for all Future Receivables owed by the Marketplace, such marketplace or such third party to the Collection Account and agrees that Seller shall not change such direction until all Obligations owed to Purchaser have been paid in full. Seller authorizes Purchaser to directly debit  the Specified Amount from the Collection Account on each Payment Date.  To the extent, Purchaser is unable to do for any reason, Seller shall pay such amount in immediately available funds on such Payment Date.

7

FILED: NEW YORK COUNTY CLERK 03/04/2024 05:30 PM

INDEX NO. 155078/2020

NYSCEF DOC. NO. 55
DocuSign Envelope ID: 55BF25BC-DDD7-4BDD-8292-E4754592B1CC

RECEIVED NYSCEF: 03/04/2024



Seller further authorizes Purchaser, following the occurrence of an Event of Default, to deal directly with the Marketplace, or any other online marketplace or third party that is the obligor under Future Receivables, in the place of Seller, regarding (i) all Future Receivables and all other Conveyed Property, as Purchaser's sole property, to the fullest extent allowable by law and (ii) as to any Future Receivables charged back by Purchaser to Seller, in which Purchaser shall retain a security interest thereon, as, solely after such chargeback, lender as to such accounts charged-back. Following the occurrence of an Event of Default hereunder, Seller agrees to immediately modify, or allow Purchaser to modify, its existing payment information with the Marketplace or any other marketplace or third party that is the obligor under Future Receivables to cause Purchaser to be paid directly for the Future Receivables through the Marketplace's or such other online marketplace's or third party's electronic or other payment systems. Seller also authorizes Purchaser to make any such notification to the Marketplace, such other online marketplace of such third party directly.

The Marketplace, such other online marketplace or such third party shall be entitled to rely upon this Agreement which Purchaser may send to it, in Purchaser's discretion, in sending payments directly to Purchaser following the occurrence of an Event of Default and may enforce these terms against Seller as applicable and plead them as a defense to any action brought by Seller regarding such payments. The Marketplace, such other online marketplace or such third party is an intended beneficiary of this Section IV(K).

(L)    Repurchasing of Receivables and Marketplace suspensions.

(i)    If amounts representing Future Receivables are held, carried over or paused by the Marketplace, any other online marketplace or a third party for any reason, including but not limited to suspensions, freezes or investigations, Purchaser shall assess a charge of 5% of such unpaid amount of Future Receivables in each new statement period (or prorated if for periods longer than the customary statement period) until the Future Receivables in question are collected or deemed collected.

(ii)    If a Seller account containing one or more Future Receivables is suspended or frozen by the Marketplace, any other online marketplace or any third party for any reason, Seller shall promptly notify Purchaser and cooperate and coordinate with Purchaser and Marketplace, other marketplace or any third party to return status of the affected account to one of good standing.

(iii)    Chargebacks and Adjustments for Marketplace Credits. In the event that the Marketplace, other online marketplace or third party does not, whether in whole or in part, pay a Future Receivable for any reason other than, solely, Credit Risk assumed by Purchaser hereunder, which reason may include, without limitation, non-payment by reason of a dispute or in the event that Seller breaches any representation or warranty to Purchaser with respect to a Future Receivable or because of the payment of a Future Receivable by Marketplace to any person other than Purchaser, Purchaser may, in its discretion, chargeback to Seller the subject Future Receivable (a "Chargeback"), thereby creating

8



INDEX NO. 155078/2020
NYSCEF DOC. NO. 55
DocuSign Envelope ID: 55F25BC-DDD7-4BDD-8292-E4754592B1CC
RECEIVED NYSCEF: 03/04/2024



**Sellers**Funding

indebtedness of Seller to Purchaser included in the Obligations, equal to the full uncollected amount of the Future Receivable so charged-back plus Purchaser's associated fees and charges thereon, and the subject Future Receivable shall then become a non-purchased receivable and the credit risk thereon shall then be that of Seller. A Chargeback shall not release Purchaser's security interest, now as lender, in the subject future Receivable so charged back until the Chargeback is fully paid and satisfied.

(iv)    Seller shall, without limitation of <u>Section VI(C)</u> below, be responsible to pay Purchaser for the amount of any credit taken by the Marketplace, other online marketplace or any third party against any Purchased Receivable by reason of a back charge, set-off, reduction, recoupment or similar adjustment asserted or effected by the Marketplace on the basis of (i) any claim of defective, rejected, returned merchandise or poor quality of Goods or Services, any cash discount or adjustment taken by the Seller, (ii) any other disputes or claims with respect to the quality, dollar amounts or quantity of the Future Receivables, or their terms or price, or otherwise concerning the Seller's delivery of Goods or Services giving rise to the subject Receivables; or (iii) any other claim by the Marketplace, other online marketplace or any third party against the Seller (whether out of the same or an unrelated transaction), within two (2) Business Days of such event occurring, and if Seller fails to do so such unpaid credit shall be included in the Obligations and immediately due and payable by Seller to Purchaser, provided further that Purchaser may also, in its discretion, chargeback the entire Future Receivable in question to Seller (in such event such Seller shall thereupon repurchase it for the price stated in the preceding paragraph of this Section).

For purposes of clarity, it is the intention of the parties that Purchaser bear the Credit Risk in connection with the purchase of the Specified Amount of Future Receivables purchased hereby.

(M)    Until all Obligations under the Transaction Documents have been indefeasibly paid in full, Seller shall comply with the covenants set forth in the Terms & Conditions.

**V.    Events of Default**

(A)    <u>Events of Default</u>. Upon the occurrence of an Event of Default as set forth in the Terms & Conditions, Purchaser shall have the right to exercise any and all of the rights and remedies at law or in equity or under the Transaction Documents including as set forth in Subclause (B) below.

(B)    <u>Remedies.</u>

Upon any such Event of Default, Purchaser shall have the right to immediately declare all Obligations to be immediately due and payable as well as to exercise all rights that Purchaser may have in respect of such Event of Default under the Transaction Documents, at law or in equity; provided that upon an Event of Default under any of Section (vi), (vii), (viii), (ix) or (x) of <u>Section IV(A)</u> of the Terms & Condition, all Obligations shall become immediately due and payable to Purchaser hereunder without further action by either party. Without limitation thereof, Purchaser shall be entitled to do any or all of the following: (i) suspend Purchaser's performance

FILED: NEW YORK COUNTY CLERK 03/04/2024 05:30 PM
NYSCEF DOC. NO. 55
DocuSign Envelope ID: 569F25BC-DDD7-4BDD-8292-E4754592B1CC

INDEX NO. 155078/2020
RECEIVED NYSCEF: 03/04/2024



under this Agreement or the other Transaction Documents and cease buying Future Receivables; (ii) terminate this Agreement or the other Transaction Documents; (iii) accelerate all of the Obligations and declare them to be immediately due and payable; (iv) set-off and/or recoup any Obligation due by Seller to Purchaser against any other assets of Seller held by Purchaser; (v) credit the indebtedness owed by Seller to Purchaser against the Purchase Price otherwise payable to the Seller with respect to the Future Receivables; (vi) notify the Marketplace to pay Purchaser directly, (vii) sell the Future Receivables and other Conveyed Property by public or private sale (Seller agrees that 10 days' advance notice of any such sale shall be reasonable); and (vii) exercise any and all other rights of Purchaser at law or in equity, and Purchaser shall have all the rights of a secured party under the UCC. All remedies of Purchaser shall be deemed to be concurrent and cumulative, and the exercise of any one remedy or alternative remedies, shall not deemed to release any other rights or remedies. Purchaser may further proceed against Seller or any Guarantors in such order as Purchaser deems fit. In no event shall Purchaser be compelled to waive or accept a proposed cure of any Event of Default. Purchaser shall apply the proceeds it may recover, upon exercise of any remedies, first to expenses incurred by Purchaser, then to the Obligations due and payable, in such order and manner as Purchaser may determine. For the avoidance of doubt, any such Event of Default shall not release Purchaser from its assumed Credit Risk on Future Receivables sold to Purchaser prior to that time.

VI.    **Miscellaneous**

(A) <u>Entire Agreement</u>. This Agreement and any amendments, waivers, consents or supplements hereto may be executed in counterparts (and by different parties hereto on different counterparts), each of which shall constitute an original, but all of which when taken together shall constitute a single contract. This Agreement together with the Terms & Conditions (incorporated by reference as if fully set forth herein) including the Arbitration Agreement contained therein and the other documents, agreements and instruments delivered to Purchaser in connection herewith or therewith or pursuant to the terms hereof or thereof (collectively, the "**Transaction Documents**") constitute the entire contract among the parties with respect to the subject matter hereof and supersede all previous agreements and understandings, oral or written, with respect to the subject matter hereof. This Agreement shall become effective when it shall have been executed by the parties hereto provided that the obligations of the Purchaser to purchase the Future Receivables is subject to satisfaction of the conditions set forth in <u>Section II</u>. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or in electronic ("pdf" or "tif") format shall be effective as delivery of a manually executed counterpart of this Agreement.

(B) <u>Arbitration</u>. Any disputes with respect to this Agreement or the other Transaction Documents shall be resolved in accordance with the Dispute Resolution Section of the Terms & Conditions.

(C) <u>Indemnity</u>.

1.    Seller shall, without limitation of <u>Section VI(C)(2)</u> below, be responsible to pay Purchaser for the amount of any credit taken by the Marketplace against any Future Receivable

10

FILED: NEW YORK COUNTY CLERK 03/04/2024 05:30 PM     INDEX NO. 155078/2020

NYSCEF DOC. NO. 66   DocuSign Envelope ID: 668F25BC-DDD7-4BDD-8292-E4754592B1CC     RECEIVED NYSCEF: 03/04/2024



by reason of a back charge, set-off, reduction, recoupment or similar adjustment asserted or effected by the Marketplace on the basis of (i) any claim of defective, rejected, returned merchandise or poor quality of Goods or Services, any cash discount or adjustment taken by the Seller, (ii) any other disputes or claims with respect to the quality, dollar amounts or quantity of the Future Receivables, or their terms or price, or otherwise concerning the Seller's delivery of Goods or Services giving rise to the subject Future Receivables; or (iii) any other claim by the Marketplace against the Seller (whether out of the same or an unrelated transaction), within two (2) Business Days of such event occurring, and if Seller fails to do so such unpaid credit shall be included in the Obligations and immediately due and payable by Seller to Purchaser, provided further that Purchaser may also, in its discretion, chargeback the entire Future Receivable in question to Seller (in such event such Seller shall thereupon repurchase it for the price stated in Section IV(L)(3) above).

2.      Seller agrees to indemnify, protect, defend and hold harmless Purchaser and its successors, assigns, directors, officers, members, agents, attorneys and employees (collectively, the "Indemnified Parties") from and against any and all losses, liabilities, claims, costs and expenses of any kind, including attorney's fees, caused by or arising from (i) all disputes or claims by the Marketplace, any other online marketplace or any other person or entity claiming an interest in the Future Receivables or other Conveyed Property in which Purchaser acquires an ownership interest under this Agreement, (ii) any breach of Seller's representation and warranties, duties or covenants under this Agreement; (iii) any claims against Purchaser by any federal, state, or local official or authority, or any other person, seeking the turnover by Purchaser of monies collected by Purchaser in connection with the transactions contemplated by the Transaction Documents, and (iv) all collection expenses and legal fees incurred by Purchaser with respect to any of the foregoing, or otherwise arising from Purchaser's administration or enforcement of this Agreement or the other Transaction Documents and Purchaser's rights hereunder or thereunder; *provided, however*, for purposes of clarity, that this indemnity shall in no event extend to credit losses incurred by Purchaser arising solely from Credit Risk assumed by Purchaser under this Agreement.  Seller's liabilities to Purchaser under this Section VI(C)(2) ("Indemnity Obligations") and that of any other person responsible for the Obligations under this Section, such as the Guarantors, shall constitute part of the Obligations and shall continue notwithstanding any termination of this Agreement.

(D)      Survival. All covenants, agreements, representations and warranties made by the Seller or any Guarantor in the Transaction Documents and in the certificates or other instruments delivered in connection with or pursuant to this Agreement or any other Transaction Document shall be considered to have been relied upon by the other Parties hereto and shall survive the execution and delivery of the Transaction Documents and the payment of the Purchase Price, regardless of any investigation made by any such other party or on its behalf and notwithstanding that the Purchaser may have notice or knowledge of any Event of Default or incorrect representation or warranty at the time any credit is extended hereunder, and shall continue in full force and effect as long as the Obligations under this Agreement are outstanding and unpaid. The provisions of Sections VI (B) and (C), and Sections VI(B), (E), (F), (G), (I), (L), (S) and (T) of the Terms and Conditions shall survive and remain in full force and effect regardless of the consummation of the transactions contemplated hereby or the termination of this Agreement or any provision hereof.

Please read all pages of this Agreement (including all other associated exhibits and schedules) carefully. The person signing below for the Seller represents that the Seller's signature below and

11

FILED: NEW YORK COUNTY CLERK 03/04/2024 05:30 PM
NYSCEF DOC. NO. 68
DocuSign Envelope ID: 608F25BC-DDD7-4BDD-8292-E4754592B1CC

INDEX NO. 155078/2020
RECEIVED NYSCEF: 03/04/2024



all its initials as aforesaid are duly authorized by all required corporate, limited liability company or partnership action and authority, as the case may be, and that its signature does not breach any contract or agreement by which it is bound.


IN WITNESS WHEREOF, Purchaser and Seller have duly executed this Agreement as of the date first above written.


PURCHASER:

SELLERSFUNDING PORTFOLIO LLC

BY SELLERSFUNDING CORP., its Manager

BY: _____
       Name: Ricardo Pero
       Title: CEO

SELLER:

CLOSTER GREEN CORP DBA WRAITH & CO

BY: _____
       Name: BRATISLAV ROZENFELD
       Title: CTO

BY: _____
       Name:
       Title:

BY: _____
       Name:
       Title:

12

FILED: NEW YORK COUNTY CLERK 03/04/2024 05:30 PM
NYSCEF DOC. NO. 55
DocuSign Envelope ID: 655F25BC-DDD7-4BDD-8292-E4754592B1CC

INDEX NO. 155078/2020
RECEIVED NYSCEF: 03/04/2024



## EXHIBIT A

### ACCOUNT VALIDITY AND PERFORMANCE GUARANTEE

This Account Validity And Performance Guarantee (the "Guarantee") is made as of 03/21/2019, between BRATISLAV ROZENFELD ("Guarantor") and SellersFunding Portfolio LLC, a Delaware limited liability company ("Purchaser").

WHEREAS,

A.    CLOSTER GREEN CORP DBA WRAITH & CO ("Seller") and Purchaser propose to enter into a Receivables Purchase Agreement, of even date herewith (the "Agreement"; capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Agreement) pursuant to which Purchaser shall, subject to the terms and conditions contained therein, purchase Future Receivables and other Conveyed Property from Seller;

B.    Guarantor is an equity holder of Seller;

C.    It is a condition precedent to Purchaser's purchase of Future Receivables and other Conveyed Property under the Agreement, that Guarantor give this Guarantee;

D.    Seller provides goods or services to Amazon.com, Inc. (the "Marketplace"); and

E.    To induce Purchaser to enter into the Agreement and to purchase Future Receivables and other Conveyed Property thereunder, and to make Purchase Price payments under the Agreement, Guarantor makes the covenants and warranties and undertakes the obligations set forth herein.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

I.    Guarantor Representations and Warranties

    A.    Truthful Statements. All the representations, warranties information and statements made to Purchaser under the Transaction Documents are and shall be complete and accurate in all material respects.

    B.    Payment Owed by Marketplace, Other Marketplaces or Third Parties. The Marketplace (or other online marketplace or third party which is an obligor under the Future Receivables) owes Seller the amounts reported by Seller to Purchaser pursuant to the Agreement and the Guarantor has no knowledge of any setoff or defense by the Marketplace (or such other online marketplace or third party) which would alter or reduce the amounts reported by Seller as due and owing.

    C.    No Affiliate Earnings. All of the earnings generated by Seller in the Marketplace (or any other online marketplace which is an obligor under the Future

13

FILED: NEW YORK COUNTY CLERK 03/04/2024 05:30 PM

INDEX NO. 155078/2020

NYSCEF DocuSign Envelope ID: 055F25BC-DDD7-4BDD-8292-E4754592B1CC

RECEIVED NYSCEF: 03/04/2024



Receivables) are and will be generated from third parties, and not by any affiliates.

D.    No Prepayments. Neither Seller nor any affiliates have received payment from the Marketplace (or any other online marketplace or third party) on any of the Future Receivables or other Conveyed Property offered for sale to Purchaser. Seller shall cause the Marketplace (or such other online marketplace or third party) to make all payments only to Collection Account and shall promptly notify Purchaser of any attempt to pay proceeds of Future Receivables or any other Conveyed Property to any other accounts or persons.

E.    No Current Or Historical Tax Liens. Neither Seller nor Guarantor, nor any of their respective assets is, or during the term of the Agreement will be, subject to any tax lien, whether or not current.

F.    Factoring Arrangements or Liens. The Future Receivables and other Conveyed Property offered for sale to Purchaser by Seller under the Agreement are not subject to any liens or security interests, including but not limited to, tax liens or liens or security interests held by any factoring companies or merchant cash advance financiers. If any lien is created during the term of the Agreement, Seller will immediately report such lien to Purchaser and take such steps as Seller shall require to remove such lien.

G.    Marketplace Compliance. There is no existing default by Seller under the Marketplace terms and conditions (or the terms and conditions of any other marketplace or third party that is an obligor under Future Receivables) or otherwise to the terms governing sales on Amazon.com (or such other marketplace or third party). The Marketplace (or such other online marketplace or third party) has not alleged any defect in Seller's performance of its duties to the Marketplace (or such online marketplace or third party) which may impair rights of Purchaser arising pursuant to the Transaction Documents. The Seller shall immediately notify Purchaser of any such allegations and take such steps as Purchaser may require to cure such defect.

II.    Covenants.

A.    Guarantor Covenants as to Payments.

(i)    Guarantor:
        (a)    will cause Seller to require the Marketplace (or any other online marketplace or third party that is an obligor under Future Receivables) to pay directly to the Collection Account all amounts which the Marketplace (or such other online marketplace or third party) owes Seller on any Future Receivables or other Conveyed Property;
        (b)    will prevent and prohibit Seller from altering payment information (including but not limited to bank information, physical address, name, etc.) that would divert payments on

14



NYSCEF DOC. NO. 55    RECEIVED NYSCEF: 03/04/2024



Future Receivables or other Conveyed Property away from Collection Account or the Purchaser,

(c)    will prevent the login and password information delivered to Purchaser by Seller from being modified, or impair, frustrate or delay Purchaser's access to Marketplace reporting (or that of any other online marketplace or third party)

(d)    will cause Seller to grant Purchaser reasonable and effective access to each account at the Marketplace (or that of any other online marketplace or third party) that contains or will contain Future Receivables or other Conveyed Property;

(e)    will require and cause Seller to hold in trust for Purchaser and to immediately pay, within three (3) Business Days, Purchaser for any funds paid to Seller by the Marketplace (or of any other online marketplace or third party) when such funds should have been sent directly to the Collection Account in accordance with the terms hereof, and

(f)    individually, personally guarantees the performance of the Obligations and duties incurred and owed by Seller to Purchaser under the Agreement, including all subsequent renewals, extensions, continuations, modifications, and amendments thereof, without deduction by reason of set-off, defense or counterclaim by any person or by reason of loss of contribution from any co-guarantor and agrees to be bound, jointly, primarily and severally, for the performance, payment and the delivery thereof for all duties and Obligations of the Seller to Purchaser under the Agreement, whether now existing or hereafter acquired. The undersigned shall be liable for such Obligations and indebtedness irrespective of the genuineness, validity, enforceability or regularity thereof or any instrument evidencing the same or the existence or extent of any collateral therefor. The undersigned waives notice of acceptance hereof and all notices and demand to which the undersigned be entitled, including, without limitation, notice of adverse changes in the Seller's financial condition, all demands of payment or, and notice of nonpayment, protest and dishonor to the undersigned, or the Seller, and the undersigned waives all suretyship defenses. The undersigned further waives notice of and consents to any arrangements or agreements between Purchaser and Seller or anyone else, including, without limitation, agreements and arrangements for payment extension, subordination, composition, release or discharge of indebtedness, in whole or in part, or the release of any other guarantor, or of surrender of security or compromise, by part payment or otherwise.

(B) Certain Additional Representations and Covenants

(i)    <u>Disputes or Offsets</u>. For each Future Receivable offered for sale to Purchaser by Seller pursuant to the Agreement, Guarantor represents, warrants

15

**Attachment CC**        **PX20**        **001358**

INDEX NO. 155078/2020
RECEIVED NYSCEF: 03/04/2024

NYSCEF DOC. NO. 65
DocuSign Envelope ID: 68BF25BC-DDD7-4BDD-8292-E4754592B1CC



and covenants to Purchaser that there has been no pre-payment, payment dispute, clawback, unreported offset or contra accounting item, or an actual or purported terms of service violation, from the Marketplace (or any other online marketplace or third party that is an obligor with respect thereto). Furthermore, Guarantor agrees to immediately report to Purchaser the existence of any of the foregoing if they arise at any point during the term of the Agreement.

(ii)    No Prior Marketplace-Related Disputes. Guarantor represents that neither Seller nor any of its affiliates has ever had a payment dispute, clawback, or an actual or purported terms of service violation from the Marketplace (or any other online marketplace or third party that is a obligor with respect thereto) or its affiliates and that Seller is in compliance with the Marketplace terms of service and those of any other marketplace or third party that is an obligor with respect to the Future Receivables.

(iii)    Use of Proceeds: All proceeds received from Purchaser arising from the Future Receivables and other Conveyed Property sold by Seller to Purchaser under the Agreement will be used by Seller solely for business and commercial purposes and such proceeds will not be distributed nor paid out by Seller in the form of a dividend without the express written consent of Purchaser.

(iv)    Continuing Guarantee. Guarantor agrees that this personal guarantee is one of payment, to the extent attributable to monetary Obligations owed by Seller to Purchaser under the Transaction Documents, and that this Guarantee further extends to and is a guarantee of performance of the non-monetary covenants and duties owed to Purchaser by Seller under the Transaction Documents. This personal guarantee is a continuing guarantee and will remain in effect until written notice or an election to terminate is given by Purchaser to Guarantor.

No Guarantee of Credit Losses - For the avoidance of doubt, nothing herein guarantees to Purchaser its recovery of any credit losses incurred by Purchaser arising from Credit Risk assumed by Purchaser under the Agreement nor Purchaser's costs to collect Future Receivables bought at Purchaser's Credit Risk and not charged back.

I HAVE READ, UNDERSTAND AND AGREE TO THE ABOVE COVENANTS, GUARANTEES, REPRESENTATIONS AND WARRANTIES, AND UNDERSTAND EACH IS A MATERIAL INDUCEMENT UPON WHICH PURCHASER RELIES AND WITHOUT WHICH PURCHASER WOULD NOT AGREE TO ENTER INTO THE RECEIVABLES PURCHASE AGREEMENT OR THE OTHER TRANSACTION DOCUMENTS.

III.    Miscellaneous

A.    Indemnity. Guarantor indemnifies, defends and holds Purchaser and its directors, officers, employees and agents (the "Indemnified Parties"), harmless from and against any damage, harm or expense, including consequential damages and attorneys'

16

FILED: NEW YORK COUNTY CLERK 03/04/2024 05:30 PM

NYSCEF DOC. NO. 55
DocuSign Envelope ID: 66BF25BC-DDD7-4BDD-8292-E4754592B1CC

INDEX NO. 155078/2020
RECEIVED NYSCEF: 03/04/2024



fees, incurred by Purchaser as a result of Guarantor's breach of this Guarantee. Guarantor also specifically indemnifies, defends and hold the Indemnified Parties harmless from and against any refusal by the Marketplace (or any other online marketplace or third party that is a obligor with respect to any Future Receivables) to fully pay Purchaser all amounts due to Purchaser in respect of the Future Receivables or other Conveyed Property sold pursuant to the Agreement or due hereunder as a result of breach of any of the covenants, representations and warranties made by Seller or by Guarantor in the Transaction Documents, provided, however, for the avoidance of doubt, this indemnity shall not extend to nor cover any credit losses of Purchaser arising from Credit Risk assumed by Purchaser under the Agreement, to wit, if a Purchased Receivable sold to Purchaser cannot be collected by Purchaser due solely to the financial inability to pay off the Marketplace obligated thereon, and it shall not cover Purchaser's costs to collect Purchased Receivables not charged-back.

B.      Choice of Law.    This Guarantee shall be solely interpreted under the laws of the State of Delaware as applied to agreements performed wholly within the State of Delaware. Notwithstanding the foregoing, Purchaser shall have the right to bring any action or proceeding against Guarantor in such other courts and jurisdictions, as Purchaser reasonably deems appropriate to enforce its rights hereunder.

C.      Arbitration. Any Disputes with respect to this Agreement or the other Transaction Documents shall be resolved in accordance with the Dispute Resolution Section of the Terms & Conditions.

D.      Assignment. Guarantor may not assign or transfer this Guarantee and any attempted transfer or assignment by Guarantor shall be void, absent Purchaser's prior written consent.

E.      Electronic Signature. This Guarantee may be signed electronically. Guarantor and Purchaser accept the use of electronic signatures and storage.

F.      Background Checks:    Guarantor consents to background and credit checks conducted by Purchaser or its third parties, shortly before, contemporaneously with, and/or periodically following execution of this Guarantee, to help Purchaser assess Guarantor's ongoing creditworthiness and ability to comply with the terms herein.

G.      Books and Records: Purchaser's books and records showing the account between Seller or Guarantor, as applicable, and Purchaser shall be admissible in evidence in any action or proceeding brought on this Guarantee and shall be binding on the undersigned for the purpose of establishing the items set forth therein and shall constitute prima facie proof thereof.

H.      No subrogation. Notwithstanding any payment or payments to Purchaser by the undersigned, or any setoff or application of funds of the undersigned by Purchaser, the undersigned shall not be entitled to be subrogated to Purchaser's rights against the Seller or any against any collateral or guarantee or right of offset Purchaser may hold for payment of the Obligations guaranteed herein, nor shall the undersigned seek or be entitled to any reimbursement or contribution from the Seller, until all amounts owing to Purchaser by the Seller under the Agreement have been paid in full and the Agreement

17



FILED: NEW YORK COUNTY CLERK 03/04/2024 05:30 PM
NYSCEF DOC. NO. 66   DocuSign Envelope ID: 658F25BC-DDD7-4BDD-8292-E4754592B1CC

INDEX NO. 155078/2020
RECEIVED NYSCEF: 03/04/2024



**Sellers**Funding

has been terminated. All present and future debts of the Seller to the undersigned are waived and postponed in favor of, and subordinated to the payment of, all Obligations of the Seller to Purchaser.

H. <u>Seller or Co-Guarantor Bankruptcy</u>. If the Seller or any co-guarantor shall at any time go bankrupt or become insolvent, or if any insolvency proceeding or reorganization shall be commenced against any of them, any and all Obligations of the Guarantor to Purchaser under this Guarantee shall, at Purchaser's option, be accelerated and become due and payable, immediately, without prior notice.

J. <u>Assignments</u>. This Guarantee shall inure to the successors and assigns of Purchaser and shall also be binding upon all successors of the undersigned, subject to <u>paragraph III(D)</u> above.

K. <u>Voidable Payments</u>. If any payments Purchaser receives under this Guaranty on account of liabilities and Obligations guaranteed are subsequently invalidated, declared to be fraudulent, preferential, set-aside or are otherwise required to be repaid by Purchaser under any bankruptcy or other law, then, to the extent of any sum not retained by Purchaser, the undersigned's Obligations to Purchaser hereunder shall be reinstated and this Guarantee shall remain in effect.

L. <u>Headings</u>. The headings in this Agreement are for reference only.

M. <u>Entire Agreement</u>. This Guarantee, along with the Agreement, the Terms & Conditions and the other Transaction Documents, sets forth the entire understanding of the parties with respect to the subject matter hereof. Neither party has been induced to enter into this Guarantee by virtue of, and is not relying upon, any representations or warranties not set forth in this Guarantee, any terms or other communication preceding the execution of this Guarantee, or any prior course of dealing between the parties, including, without limitation, any statements concerning the financial condition of the Seller. This Guarantee may not be modified or terminated orally.

18



NYSCEF DOC. NO. 55

DocuSign Envelope ID: 6C8F25BC-DDD7-4BDD-8292-E4754592B1CC

INDEX NO. 155078/2020

RECEIVED NYSCEF: 03/04/2024



IN WITNESS WHEREOF, Guarantor has executed this Guaranty as of the day and year first above written.

GUARANTOR:

BY: _____

Name: BRATISLAV ROZENFELD

Title: CTO

BY: _____

Name:

Title:

BY: _____

Name:

Title:

ACKNOWLEDGED AND AGREED:

SELLERSFUNDING PORTFOLIO LLC

BY SELLERSFUNDING CORP., its Manager

BY: _____

Name: Ricardo Pero

Title: CEO

19

BER-DC-000934-20   01/16/2020 8:16:37 AM   Pg 1 of 7 Trans ID: SCP2020120959

# HEITNER & BREITSTEIN P.C.

| | | CARY R. STERNBACK |
|---|---|---|
| NEW JERSEY | NEW YORK | EUGENE M. BANTA |
| 28 N. Main St. | 26 Court St., Ste 304 | YELENA C. TSYRLIN |
| Marlboro, NJ 07746 | Brooklyn, NY 11242 | |
| 732-780-5900 | 800-221-6567 | |
| Fax: 732-780-1637 | Web: nycnjlaw.com | |

January 14, 2020

BERGEN COUNTY SPECIAL CIVIL PART
10 Main Street
Hackensack, NJ 07601

> **Re: ALLIANCE ENTERTAINMENT, LLC**
> **Vs: CLOSTER GREEN CORP, dba Wraith & Co &**
> **BRATISLAV L. ROZENFELD aka Steven Rozenfeld as personal**
> **guarantor**
> **H & B FILE No.: J17-3538**
> **Docket #**

Dear Sir/Madam:

Enclosed please find a complaint in the above matter.  Please serve it upon the defendant(s) in the usual manner with the summons you will prepare.

Please debit our attorney collateral account #140681 for the appropriate amount.

The defendant(s) CLOSTER GREEN CORP, dba Wraith & Co & BRATISLAV L. ROZENFELD aka Steven Rozenfeld as personal guarantor may be served at ███████████ ████ Edgewater NJ ██████.

Very truly yours,

**HEITNER & BREITSTEIN**

By:   Cary Sternback, Esq.

CS/mgl

REMITTANCE & CORRESPONDENCE ADDRESS   P.O. BOX 270, WICKATUNK, NJ 07765

**Attachment CC**          **PX20**          **001363**

HEITNER & BREITSTEIN PC
Cary Sternback, Esq. 052671992
Mail Address: PO Box 270, Wickatunk, NJ 07765
Street Address: 28 N. Main St., Marlboro, NJ 07746
Attorneys for Plaintiff(s)  732-780-5900
*******************************************

ALLIANCE ENTERTAINMENT, LLC
                                        Plaintiff

                    -against-

CLOSTER GREEN CORP. dba Wraith & Co &
BRATISLAV L. ROZENFELD    aka Steven
Rozenfeld as personal guarantor
                                        Defendant
*******************************************

SUPERIOR COURT OF NEW JERSEY

BERGEN COUNTY

SPECIAL CIVIL PART

Docket #

C O M P L A I N T

H & B File # J17-3538

Plaintiff(s), ALLIANCE ENTERTAINMENT, LLC with offices at 1401 NW 136th Ave., Ste. 100, Sunrise, FL, 33323, by way of Complaint says:

### FIRST COUNT

1. There is due from the Defendant(s), the sum of $9,391.69 on a certain book account. (Exhibits attached)  Payment has been demanded and has not been made.

### SECOND COUNT

1. Plaintiff(s) sue(s) the Defendant(s) for goods sold and delivered and/or services rendered by the Plaintiff(s) to the Defendant(s) upon the promise by the Defendant(s) to pay the agreed amount. Payment has been demanded and has not been made.

### THIRD COUNT

1. The Plaintiff(s) sue(s) the Defendant(s) for the reasonable value of goods sold and delivered, and/or services rendered by the Plaintiff(s) to the Defendant(s) upon the promise of the Defendant(s) to pay a reasonable price for the same.  Payment has been demanded and has not been made.

### FOURTH COUNT

1. Defendant(s) being indebted to the Plaintiff(s) in the sum of $9,391.69, upon an account stated between them, did promise to pay the Plaintiff(s) said sum upon demand.

### FIFTH COUNT

1.       That by a certain written agreement, a true copy of which is annexed hereto, the individual(s) named above did personally guarantee the obligations of the company named above and/or agreed to be jointly and severally liable for the debt, and has failed to make payment although demands have been made.

## SIXTH COUNT

1.     That by a certain written agreement, a true copy of which is annexed hereto, the Defendant(s) agreed to pay Plaintiff's attorney fees and collection expenses if collection efforts or litigation had to be used to obtain payment.

## SEVENTH COUNT

1.     That by a certain written instrument, a true copy of which is annexed hereto, the Defendant(s) did agree to pay interest at a rate of 18% on all past due balances.

WHEREFORE, judgment is demanded in the sum of $9,391.60, together with contractual attorney fees of $1,408.75, for a total of $10,800.35 plus interest at 18% per annum and costs of suit.

January 14, 2020

BY:_____
     Cary Sternback
     Attorney for Plaintiff

## CERTIFICATION PURSUANT TO R.4:5-1

The matter in controversy is not the subject of any other action pending in any Court or of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated. There are no other parties who should be joined in the action.

## CERTIFICATION PURSUANT TO R.1:38-7

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

January 14, 2020

BY:_____
     Cary Sternback
     Attorney for Plaintiff

## R. 4:25-4. DESIGNATION OF TRIAL COUNSEL

Plaintiff hereby designates Eugene M. Banta #019961991 as trial counsel.

January 14, 2020

BY:_____
     Cary Sternback
     Attorney for Plaintiff

**ALLIANCE** | CREDIT APPLICATION

## customer information

39768

Account Number (Credit Dept. Use Only) (proprietorships only)

Telephone Number: ___ 345-218-5738 ___

CLOSTER GREEN CORP. _____ Wraith & Co ___

Legal Name of Company (hereinafter "The Applicant") _____ Any DBA/TradeName

3516 29th Street ___ Astoria ___ USA ___ NY ___ 11106

Actual Physical Street Address/MainOffice ___ City ___ County ___ State ___ Zip

Mailing Address (if different) _____

Person to Contact Regarding Billing ___ Telephone # ___ Fax #

Branislav Rozenfeld ___ 345-218-5738 ___ N/A

Address for Billing _____

Type of Business: ☐ Corporation   ☐ LLC   ☐ LP   Other: _____

Date of Formation:  08 / 30 / 2015 ___

Is Company Not-For-Profit?  ☐ Yes   ☐ No   State of Formation: New York

Social Security #: ___ Federal Tax ID #: ___

Dun & Bradstreet #: ___ State Tax Certificate #: ___

Charter # or Corporate Origin ___

Tax Exempt _____

How long in business?: __ 2 years __  Annual Gross Sales (most recent taxable year): $ ___ 40 million

Do you own or rent your store?:  ☐ Own  ☐ Rent   Number of stores (if more than one, attach list of addresses): ___

Street Address of Store(s) (if more than one, please attach list): __ N/A

Square Footage Per Store: __ N/A __  Is store single standing or in a complex/strip mall?: ___ N/A

Is property owned by applicant?:  ☐ Yes  ☐ No   Leased?:  ☐ Yes  ☐ No

Date lease expires: ___ / ___ / ___

Are fixtures and equipment owned by applicant?:  ☐ Yes  ☐ No   Lien?:  ☐ Yes  ☐ No

Lien Amount $ ___

Liens Held ___ City: ___ State: ___

Landlord (if more than one, please attach list):

Name: ___ Address: ___

City: ___ State: ___ Zip: ___

Telephone #: ___ Fax #: ___

## officers partners or owners

1. Name: Branislav Rozenfeld ___ Corporate Title: CTO

Home Address: 3516 29th Street ___ City: Astoria ___ State: NY ___ Zip: 11106

Home Phone #: 345-218-5738 ___ Social Security #: ___ Drivers License #: ___

2. Name: ___ Corporate Title: ___

Home Address: ___ City: ___ State: ___ Zip: ___

Home Phone #: ___ Social Security #: ___ Drivers License #: ___

(If more officers/partners/owners, please attach list)

Rev. 10/15 ___ ALLIANCE ENTERTAINMENT 1401 Northwest 136th Avenue, Suite 500, Sunrise, FL 33323 | 1

---

**ALLIANCE** | CREDIT APPLICATION

If an Exporter, list primary countries of export: __ Mexico and China

Do you currently or have you previously held an account with an Alliance Entertainment company?:  ☐ Yes  ☐ No

(If more than three, please attach list):

Alliance company name: ___ Acct #: ___

Alliance company name: ___ Acct #: ___

Alliance company name: ___ Acct #: ___

Your average accounts payable aging?: ___

Are financial statements available?:  ☐ Yes  ☐ No   (Required for credit requests over $50,000)

Does applicant have any unsatisfied judgements?:  ☐ Yes  ☐ No

If yes, please explain (attach additional sheets if necessary): ___

Has applicant ever filed for bankruptcy?:  ☐ Yes  ☐ No

If yes, please explain (attach additional sheets if necessary): ___

Terms requested: __ Yes

Anticipated Monthly Purchases: $ __ $50,000

Will you and/or your company execute a purchase money security agreement secured by a UCC-1 filing?:  ☐ Yes  ☐ No

A Personal Guarantee?:  ☐ Yes  ☐ No

## credit references

List all banks at which applicant has an account. List all accounts at each bank:

1. Bank: ___ Phone #: ___ Fax #: 8405804250

Branch Address: ___ City: Brooklyn ___ State: NY ___ Zip: 11209

Checking Acct #: ___ Savings Acct #: ___

Bank Officer: __ Ken ___ certifying

2. Bank: ___ Phone #: ___ Fax #: ___

Branch Address: ___ City: ___ State: ___ Zip: ___

Checking Acct #: ___ Savings Acct #: ___

Bank Officer: ___

3. List All Authorized Signatories:

Name: __ Branislav Rozenfeld ___

Name: ___

Name: ___

Rev. 10/15 ___ ALLIANCE ENTERTAINMENT 1401 Northwest 136th Avenue, Suite 500, Sunrise, FL 33323 | 2

BER-DC-000934-20   01/16/2020 8:16:37 AM  Pg 6 of 7 Trans ID: SCP2020120959

**ALLIANCE** | CREDIT APPLICATION

**trade references**

List companies with which you currently conduct business and which can provide credit references regarding acceptance of your checks and extension of credit to you (include music suppliers).

1. Name: Koi Ray            Phone #: 800-228-7709 ext 3028  Fax #:  561-969-3722
   Address: 152-35 10th Avenue
   City: Whitestone          State:  New York       Zip:   11357
   Account #: 44773

3. Name: Ezbendant          Phone #: 800-888-8080 Ext 2223/Fax #:      N/A
   Address: 100 Liberty way
   City: Cranbury            State: New Jersey      Zip: 08512-3623
   Account #: 867543-002

5. Name: RJ Matthews        Phone #:  800-881-2459  Fax #:  330-830-2762
   Address: 2780 Richville Dr                                      N/A
   City: Massillon           State:   Ohio          Zip:  44846
   Account #:

4. Name:                    Phone #:                Fax #:
   Address:
   City:                    State:                  Zip:
   Account #:

5. Name:                    Phone #:                Fax #:
   Address:
   City:                    State:                  Zip:
   Account #:

Rev. 10/16          ALLIANCE ENTERTAINMENT, 1401 Northwest 136th Avenue, Suite 100, Sunrise, FL 33323  |  3

---

**ALLIANCE** | CREDIT APPLICATION

**certificate and authorization for release of credit information**

Applicant Company Name:     CLOSTER GREEN CORP. DBA: Wraith & Co
                            (Legal Name and All Trade Names and DBA's)

Address: 3016 29th Street
City:  Astoria     State:  New York    Zip:   11106    Telephone #:  345-218-5738

1. The undersigned hereby certifies on behalf of the applicant that the foregoing statements in this credit application are true and complete and are made for the purpose of determining the applicant's eligibility for credit.

2. The undersigned agrees on behalf of the applicant that (Alliance Entertainment and its subsidiaries, affiliates and divisions) is authorized to make all inquiries it deems necessary or appropriate to verify the accuracy of the statements made herein and to determine the applicant's credit worthiness, including, but not limited to, procuring credit information from credit reporting agencies, banks and other financial institutions, references, merchants, landlords and other extenders of credit. Further, the undersigned hereby agrees on behalf of the applicant to authorize the release of information from such entities.

3. A service or finance charge of 1½% per month will be assessed on all past due accounts. Any amount past due thirty (30) days or more may, at the option of Alliance Entertainment and its subsidiaries, affiliates and divisions, be referred to a collection agency and/or an attorney for collection. The applicant agrees to be responsible for all costs and expenses incurred from the collection agencies and/or attorneys.

4. The undersigned hereby certifies that he/she is authorized to sign for and to incur debt on behalf of the applicant.

Name of Business/Applicant:      CLOSTER GREEN CORP. DBA: Wraith & Co
                                 (Legal Name and All Trade Names and DBA's)

Signature: [signature]     Title:  CTO     Date:  02 / 23 / 2018

Rev. 10/10          ALLIANCE ENTERTAINMENT, 1401 Northwest 136th Avenue, Suite 100, Sunrise, FL 33323  |  4



## ALLIANCE | CREDIT APPLICATION

**personal guaranty**

I, the undersigned ("Guarantor"), unconditionally and personally guarantee prompt and full payments when due, and upon demand in writing from Alliance Entertainment and its subsidiaries, affiliates and divisions, of the principal and interest on any sums due and payable by the applicant, including any and all other charges and/or fees resulting from any debt incurred based on any credit extended to applicant hereunder for purchases of product. This is a guaranty of payment and not of collection. The obligations of the Guarantor under this Personal Guaranty are absolute and unconditional and, without limiting the generality of the foregoing, shall not be released, discharged, or otherwise affected by any extension, renewal, settlement, assignment, compromise, waiver, consent, discharge or release by the applicant. This Personal Guaranty is a continuing one and all liabilities to which it applies or may apply under the terms here of shall be conclusively presumed to have been incurred in reliance hereon. This Personal Guaranty shall remain in full force and effect until all guaranteed obligations have been fully and finally performed, at which point it will expire. PRESENTMENT, PROTEST AND NOTICE ARE HEREBY WAIVED. Guarantor represents and warrants that it has the power and authority to execute, deliver, and perform this Personal Guaranty and that no condition exists that would prevent performance hereunder. This Personal Guaranty and the rights and obligations of the applicant and the Guarantor hereunder shall be construed in accordance with and governed by the laws of the State of Florida without regard to its conflict of laws provisions.

This Personal Guaranty shall be effective as of __02__ / __23__ / __2016__

Guarantor:

Signature

Bratislav Rozenfeld
Print Name

Rev: 10/10    ALLIANCE ENTERTAINMENT 3405 Northwest 130th Avenue, Suite 300, Sunrise, FL 33323

---

## ALLIANCE | CREDIT APPLICATION

**terms and conditions**

The Undersigned, individually and as authorized Agent for the Applicant, agrees that any credit extended shall be subject to the following terms and conditions, which shall remain in full force and effect until cancelled by the undersigned or the Applicant by a letter to the company by certified mail, return receipt requested:

1. The law of the State of Florida shall be applicable to all disputes arising under this Credit Application or as a result of any extension of credit by Company to the Applicant.

2. The undersigned and the Applicant agree to remit payment for any credit extended of Company principal place of business, and it shall be conclusively presumed that the failure to perform any such obligation shall give jurisdiction to the courts of the State of Florida. Further, should a dispute arise as a result of the extension of credit, then venue shall be at Broward County.

3. All future fees which remain unpaid for a period of thirty (30) days shall be subject to a finance charge of 1½% per month (18% per year) or the maximum allowed by law, whichever is less.

4. In the event that Company must retain the services of an attorney to effect the collection of any monies owed, then the undersigned and the Applicant agree to pay all costs of such attorney, including reasonable attorney's fees, whether suit is brought or not.

5. The Applicant agrees that any employee of Applicant signing any delivery document permitted by Company shall be deemed full authorized on behalf of the Applicant.

6. The undersigned and the Applicant hereby waive the right to trial by jury in any litigation arising from the extension of credit pursuant to this Application for credit. Further the undersigned and applicant waive all immediate and exemption rights specifically rights under Florida Statute 222.11 (2) (b)(i).

7. Title to all goods furnished to the Applicant pursuant hereto shall remain in Company until such goods are paid in full. Company may repossess any of said goods if not paid for as provided herein. All payments are Applicant's amount shall be applied to the oldest unpaid charges appearing upon Company books with reference to Applicant's account.

8. The undersigned agrees to keep the information contained in this Application current and to immediately notify Company of all changes.

9. Credit privileges may be revoked for failure to pay the balance due when required, and may also be revoked for changes in excess of credit limit. Charges in excess of credit limit allowed by Company shall not change these Terms and Conditions.

10. Company may accept non payment, partial payments, or any check or money order marked as being payment in full or as being settlement or full or part payment without losing any rights hereunder or under law. Acceptance of such payments shall not change these Terms and Conditions in any way.

11. Other than any Alliance invoice or other executive document or agreement between the parties, these Terms and Conditions represent the entire agreement between the parties, and all parties agree to be bound by these formerand conditions. No modification, addition to, or waiver hereof shall be effective unless agreed to in writing by Company.

12. If the financial responsibility of Customer becomes impaired or is deemed unsatisfactory by Company for any reason, or if Customer is in default hereunder, Customer shall provide satisfactory security or advance cash payment on delivery, and delivery may be withheld until such security or payment is received. In the event of Customer's bankruptcy, insolvency or assignment for the benefit of creditors, or Customer's default in payment of any indebtedness to Company, all of Customer's outstanding indebtedness to Company.

13. Sales of all special order goods or merchandise are final. Company may authorize the return of stock goods in its sole discretion, subject to a return charge.

14. Customer agrees that Company will not be bound to any form or condition of any document that is part of Customer's purchase order or buying process.

15. Customer authorizes Company to furnish information about Customer's account to credit reporting agencies and other persons who may lawfully receive information.

16. The agent individually and not in a Corporate or representative capacity, shall be responsible for payment of all NSF checks, including all fees and costs related thereto.

I HEREBY AGREE TO BE PERSONALLY LIABLE FOR ALL DEBTS INCURRED
BY THE APPLICANT PURSUANT TO THIS CREDIT APPLICATION.

Sign As Authorized Agent & Individually        Bratislav Rozenfeld        __02__ / __23__ / __2016__
                                               Print Name                      Date

Rev: 10/10    ALLIANCE ENTERTAINMENT 3405 Northwest 130th Avenue, Suite 300, Sunrise, FL 33323

|  Court's Address and Phone Number:<br>BERGEN Special Civil Part<br>10 MAIN STREET, ROOM 427<br>HACKENSACK, NJ 07601-0000<br>201-221-0700 | **Superior Court of New Jersey**<br>**Law Division, Special Civil Part**<br>**BERGEN** County<br>Docket No: **BER-DC-000934-20**<br>**Civil Action**<br>CONTRACT DISPUTE |
|---|---|

<table>
<tr><td colspan="2" align="center"><h2>YOU ARE BEING SUED!</h2></td></tr>
<tr>
<td><b><u>Person or Business Suing You (<i>Plaintiff</i>)</u></b><br>ALLIANCE ENTERTAINMENT,  LLC<br>See Page 3 for additional Plaintiff list<br><br><b><u>Plaintiff's Attorney Information</u></b><br>CARY R STERNBACK<br>HEITNER & BREITSTEIN PC<br>28 NORTH MAIN ST<br>MARLBORO, NJ 07746-0000<br>732-780-5900</td>
<td><b><u>Person or Business Being Sued (<i>Defendant</i>)</u></b><br>CLOSTER GREEN CORP. DB Wraith & Co<br>See Page 3 for additional Defendant list<br><br><b>The Person or Business Suing You Claims You Owe the Following:</b><br><br>Demand Amount    $10800.35<br>Filing Fee    $80.00<br>Service Fee    $14.00<br>Attorney's Fees    <u>$202.83</u><br><b>TOTAL    $11097.18</b></td>
</tr>
</table>

**FOR JUDICIARY USE ONLY**

In the attached complaint, the person or business suing you briefly tells the court his or her version of the facts of the case and how much money he or she claims you owe. **If you do not answer the complaint, you may lose the case automatically and the court may give the plaintiff what the plaintiff is asking for, plus interest and court costs. You have 35 days from the date of service to file your answer or a signed agreement.** If a judgment is entered against you, a Special Civil Part Officer may seize your money, wages or personal property to pay all or part of the judgment. The judgment is valid for 20 years.

**IF YOU DISAGREE WITH THE PLAINTIFF'S CLAIMS, A WRITTEN ANSWER OR SIGNED AGREEMENT MUST BE RECEIVED BY THE COURT ABOVE, ON OR BEFORE 02/28/2020, OR THE COURT MAY RULE AGAINST YOU. IF YOU DISAGREE WITH THE PLAINTIFF, YOU MUST DO ONE OR BOTH OF THE FOLLOWING:**

1. ***Answer the complaint.*** An answer form that will explain how to respond to the complaint is available at any of the New Jersey Special Civil Part Offices or on the Judiciary's Internet site njcourts.gov under the section for Forms. If you decide to file an answer to the complaint made against you:
   - Fill out the Answer form AND pay the applicable filing fee by check or money order payable to: ***Treasurer, State of New Jersey***. Include **BER-DC-000934-20** (your Docket Number) on the check.
   - Mail or hand deliver the completed Answer form and the check or money order to the court's address listed above.
   - Hand deliver or send by regular mail a copy of the completed Answer form to the plaintiff's attorney. If the plaintiff does not have an attorney, send your completed answer form to the plaintiff by regular and certified mail. This MUST be done at the same time you file your Answer with the court on or before **02/28/2020**.

2. ***Resolve the dispute.*** Contact the plaintiff's attorney, or contact the plaintiff if the plaintiff does not have an attorney, to resolve this dispute. The plaintiff may agree to accept payment arrangements. If you reach an agreement, mail or hand deliver the **SIGNED** agreement to the court's address listed above on or before **02/28/2020**.

**Please Note - You may wish to get an attorney to represent you.** If you cannot afford to pay for an attorney, free legal advice may be available by contacting Legal Services at 201-487-2166. If you can afford to pay an attorney but do not know one, you may call the Lawyer Referral Services of your local County Bar Association at 201-488-0044. Notify the court now if you need an interpreter or an accommodation for a disability for any future court appearance.

/s/ Michelle M. Smith

Clerk of the Superior Court



| Dirección y teléfono del tribunal Parte Civil Especial de BERGEN 10 MAIN STREET, ROOM 427 HACKENSACK, NJ 07601-0000 201-221-0700 | **El Tribunal Superior de Nueva Jersey** **División de Derecho, Parte Civil Especial** Condado de **BERGEN** Número del expediente **BER-DC-000934-20** **Demanda de Acción Civil** **NOTIFICACIÓN DE DEMANDA** **CONTRACT DISPUTE** |
|---|---|

## ¡LE ESTÁN DEMANDANDO!

| **Persona o entidad comercial que le está demandando (_el demandante_)** ALLIANCE ENTERTAINMENT, LLC See Page 3 for additional Plaintiff list **Información sobre el abogado del demandante** CARY R STERNBACK HEITNER & BREITSTEIN PC 28 NORTH MAIN ST MARLBORO, NJ 07746-0000 732-780-5900 | **Persona o comercial ser demandada (_el demandado_)** CLOSTER GREEN CORP. DB Wraith & Co See Page 3 for additional Defendant list **La persona o comercial que le está demandando afirma que usted le debe lo siguiente:** |
|---|---|

| | |
|---|---|
| Cantidad a la vista | $10800.35 |
| Tasa judicial | $80.00 |
| Cargo del emplazamiento | $14.00 |
| Honorarios del abogado | $202.83 |
| **TOTAL** | **$11097.18** |

### PARA USO EXCLUSIVO DEL PODER JUDICIAL

En la demanda adjunta la persona o entidad comercial que le está demandando le informa brevemente al juez su versión de los hechos de la causa y la suma de dinero que afirma que usted le debe. **Si usted no responde a la demanda puede perder la causa automáticamente y el juez puede dar al demandante lo que está pidiendo más intereses y los costos legales. Usted tiene 35 días a partir de la fecha del emplazamiento para presentar su respuesta o un acuerdo firmado.** Si se dicta un fallo en su contra, un Oficial de la Parte Civil Especial puede embargar su dinero, sueldo o sus bienes muebles (personales) para pagar todo el fallo o una parte del mismo. El fallo es válido por 20 años.

**SI USTED NO ESTÁ DE ACUERDO CON LAS ALEGACIONES DEL DEMANDANTE, EL TRIBUNAL TIENE QUE RECIBIR UNA RESPUESTA POR ESCRITO O UN ACUERDO FIRMADO PARA EL 02/28/2020 O ANTES DE ESA FECHA, O EL JUEZ PUEDE EMITIR UN FALLO EN SU CONTRA. SI USTED <u>NO ESTÁ DE ACUERDO</u> CON EL DEMANDANTE, DEBE HACER <u>UNA</u> DE LAS SIGUIENTES COSAS <u>O LAS DOS</u>:**

1. *Responder a la demanda*. Un formulario de respuesta que le explicará cómo responder a la demanda está disponible en cualquiera de las Oficinas de la Parte Civil Especial de Nueva Jersey o en el sitio Internet del Poder Judicial njcourts.gov bajo la sección de formularios (Forms). Si usted decide presentar una respuesta a la demanda que se hizo en su contra:
   - Llene el formulario de Respuesta Y pague la tasa judicial de presentación que corresponda mediante un cheque o giro bancario o postal acreditable al: "*Treasurer, State of New Jersey*" (Tesorero del Estado de Nueva Jersey). Incluya **BER-DC-000934-20** (el número de su expediente) en el cheque.
   - Envíe por correo el formulario de Repuesta llenado y el cheque o giro bancario o postal a la dirección del tribunal que figura más arriba, o entréguelos personalmente en dicha dirección.
   - Entregue personalmente o envíe por correo común una copia del formulario de Repuesta llenado al abogado del demandante. Si el demandante no tiene abogado, envíe su formulario de respuesta llenado al demandante por correo común y por correo certificado. Esto SE TIENE que hacer al mismo tiempo que presente su Respuesta al tribunal a más tardar el **02/28/2020**.

2. *Resolver la disputa*. Comuníquese con el abogado del demandante, o con el demandante si éste no tiene abogado, para resolver esta disputa. El demandante puede estar de acuerdo con aceptar arreglos de pago. **Si llegara a un acuerdo, envíe por correo o entregar personalmente el acuerdo FIRMADO** a la dirección del tribunal que figura más arriba, o entréguelo personalmente en dicha dirección a más tardar el **02/28/2020**.

**Nota – Puede que usted quiera conseguir que un abogado para que lo represente.** Si usted no puede pagar a un abogado, podría obtener consejos legales gratuitos si se comunica con Legal Services (Servicios Legales) llamando al 201-487-2166. Si usted puede pagar a un abogado, pero no conoce a ninguno, puede llamar al Lawyer Referral Services (Servicios de Recomendación de Abogados) del Colegio de Abogados (Bar Association) de su condado local al 201-488-0044. Notifique al tribunal ahora si usted necesita un intérprete o un arreglo por una discapacidad para cualquier comparecencia futura en el tribunal.

/s/ **Michelle M. Smith**

Subsecretario(a) del Tribunal Superior

BER-DC-000934-20   01/16/2020 8:16:37 AM  Pg 3 of 3 Trans ID: SCP2020120959

| | |
|---|---|
| Court's Address and Phone Number:<br>BERGEN Special Civil Part<br>10 MAIN STREET, ROOM 427<br>HACKENSACK, NJ 07601-0000<br><br>201-221-0700 | **Superior Court of New Jersey**<br>**Law Division, Special Civil Part**<br>**BERGEN**  County<br>Docket No: **BER-DC-000934-20**<br>**Civil Action**<br>**SUMMONS**<br>**CONTRACT DISPUTE** |
| **Additional Plaintiffs/demandantes adicionales** | **Additional Defendants/demandados adicionales**<br>BRATISLAV L ROZENFELD AK Steven Rozenfeld as personal guarantor |

**Attachment CC**                    **PX20**                    **001371**

ALLIANCE ENTERTAINME, PLAINTIFF

            - VS -

BRATISLAV L. ROZENFELD, DEFENDANT

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION-SPECIAL CIVIL PART

ON (CONTRACT)

DOCKET NO.   : BER DC-000934-20
JUDGMENT NO. : BER VJ-002759-20

****** STATEMENT FOR DOCKETING ******

CREDITORS ATTORNEY:

    CARY R. STERNBACK
    HEITNER & BREITSTEIN PC
    28 NORTH MAIN ST
    MARLBORO  NJ  07746

---

JUDGMENT IN THE ABOVE ENTITLED CAUSE WAS ENTERED IN THE BERGEN COUNTY SPECIAL CIVIL PART
IN FAVOR OF:                              |AGAINST:
    ALLIANCE ENTERTAINMENT, LLC           | BRATISLAV L. ROZENFELD
                                          |   AK PERSONAL G. STEVEN ROZENFELD AS
                                          | CLOSTER GREEN CORP.
                                          |   DB WRAITH & CO

| | | | |
|---|---|---|---|
| AN EXECUTION WAS ISSUED ON | / / | JUDGMENT DATE | 02/28/2020 |
| AND WAS RETURNED ON | / / | JUDGMENT AMOUNT(*) | $14,767.07 |
| MONIES RECEIVED BY SCP OFFICER | $.00 | POSTJUDGMENT COSTS | $41.00 |
| TOTAL CREDITS | $.00 | POSTJUDGMENT INTEREST | $.00 |
| | | POSTJUDGMENT CREDITS | $.00 |
| | | TOTAL AMOUNT DUE | $14,808.07 |

(*)INCL COURT COSTS & STATUTORY ATTY FEES)

DATE: 12/14/2020          /S/ Michelle M. Smith
      SEAL          MICHELLE  M. SMITH, CLERK OF THE SUPERIOR COURT

===

I, THE UNDERSIGNED, AM (ATTORNEY FOR) THE ABOVE     TOTAL JUDGMENT DUE  $  14,808.07
NAMED PLAINTIFF, CERTIFY THAT AT THE PRESENT TIME     DOCKETING FEE       $      35.00
THERE IS DUE UPON THE ABOVE MENTIONED JUDGMENT,       ADDITIONAL COSTS    $_____
WHICH IS ABOUT TO BE DOCKETED IN THE SUPERIOR         **NEW CREDITS       $_____
COURT OF NEW JERSEY, AS HEREIN SET FORTH.  THE TOTAL   NEW INTEREST        $_____
JUDGMENT DUE INCLUDES THE 35.00 DOCKETING FEE.        TOTAL JUDGMENT DUE  $_____
                                           (BEING A SUM NOT LESS THAN $35.00)

   I CERTIFY THAT THE FOREGOING STATEMENTS MADE BY ME ARE TRUE. I AM AWARE THAT IF ANY OF THE
FOREGOING STATEMENTS MADE BY ME ARE WILLFULLY FALSE, I AM SUBJECT TO PUNISHMENT.

DATE:_____                   _____
**SUBSEQUENT TO LAST EXECUTION, OR JUDGMENT IF NO EXECUTIONS WERE ISSUED

**Attachment CC**　　　　　**PX20**　　　　　**001372**

Filing # 183300493 E-Filed 10/05/2023 11:14:01 AM

IN THE CIRCUIT COURT OF THE 11th JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL

CASE NO.

BA ENTERPRISE LLC, a Florida limited liability company,

      Plaintiff,

v.

PASSIVE SCALING, INC., a New Jersey corporation and STEVEN ROZENFELD a/k/a BRATISLAV ROZENFELD, an Individual,

      Defendant(s)

_____/

## COMPLAINT

    Plaintiff, BA ENTERPRISES, LLC hereby files this Complaint against Defendants, PASSIVE SCALING INC. and STEVEN ROZENFELD and states:

### JURISDICTION, VENUE AND THE PARTIES

    1.    This is an action for damages in excess of $50,000.00, excluding interest, costs and attorneys' fees.

    2.    Venue is proper in this Court pursuant to terms of the contract executed between the parties setting jurisdiction and venue in Miami-Dade County, Florida. A copy of the Contract is attached hereto as Exhibit "A".

**Attachment CC**        **PX20**        **001373**

3.     Plaintiff is Florida corporation with its principal place of business located in Miami-Dade County, Florida.

4.     Defendant, Passive Scaling Inc., is a New Jersey corporation doing business in Florida, therefore, subject to the jurisdiction and venue of this Court.

5.     Defendant, Steven Rozenfeld is ani individual and the owner of Defendant, Passive Scaling Inc. and otherwise sui juris..

6.     All conditions precedent to the filing of this action have occurred, are deemed waived, excused, or are otherwise satisfied.

7.     Plaintiff has retained Daniel Wagner – The Law Firm ("Law Firm"), to represent it in the prosecution of this action, and has obligated to pay such attorneys their reasonable fees and expenses.

## BACKGROUND ALLEGATIONS

8.     Plaintiff and Defendant entered into an E-Commerce Consulting Agreement dated August 31, 2021.

9.     Defendant had certain obligations which it failed to perform.

10.    Plaintiff has been damaged due to the failure and/or refusal of Defendant to perform under the terms of the Contract.

## COUNT I
## BREACH OF CONTRACT
## (AGAINST PASSIVE SCALING INC.)

Plaintiff incorporates and re-alleges paragraphs 1 through 10 of this Complaint as though fully set forth herein.

11.  Plaintiff and Defendant, entered into a contract.

12.  Defendant, breached the Contract by failing to pay Plaintiff the refund pursuant to the terms of the Contract.

13.  As a result of Defendant's breach of the Contract, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff demands judgment in its favor for damages in the amount of $35,298.00 plus liquidated damages pursuant to the Contract and any other damages incurred and awardable together with pre-judgment interest, attorney fees, costs, and such other relief deemed just and proper.

### COUNT II
### FRAUDULENT MISREPRESENTATION/ INDUCEMENT
### (AGAINST PASSIVE SCALING & STEVEN ROZENFELD)

Plaintiff incorporates and re-alleges paragraphs 1 through 10 of this Complaint as though fully set forth herein.

14.  Defendants made a false statement concerning a material fact when it reaffirmed its ability to perform under Contract, that it has the requisite knowledge and experience to construct and maintain an e-commerce store on the relevant platform.

15.  Based upon Defendant's subsequent actions, Defendants knew this representation to be false.

16.  Defendants intended that the representation induce the Plaintiff to act upon it and enter into the Contract.

17.    Plaintiff changed his position substantially by acting in reliance on Defendants' fraudulent misrepresentation of the material fact that Defendant, Steven Rozenfeld and Defendant, Passive Scaling, had the ability, knowledge and experience to do as contracted for.

18.    Plaintiff sustained damages by acting in reliance on the representations when Plaintiff paid for the services under the Contract.

19.    Therefore, Defendant's misrepresentation induced the Plaintiff to act and it has been damaged.

**WHEREFORE**, Plaintiff demands judgment in its favor for damages in the amount of $35,298.00 plus liquidated damages pursuant to the Contract and any other damages incurred and awardable together with pre-judgment interest, attorney fees, costs, and such other relief deemed just and proper.

### COUNT III
### UNJUST ENRICHMENT & PROMISSORY ESTOPPEL & EQUITABLE ESTOPPEL
### (AGAINST PASSIVE SCALING INC.)

Plaintiff incorporates and re-alleges paragraphs 1 through 10 of this Complaint as though fully set forth herein.

20.    Plaintiff conferred a benefit onto Defendant by paying under the Contract for services that Defendant failed and refused to provide, to wit, the refund.

21.    Defendant voluntarily accepted and retained the financial benefit conferred onto it without furnishing the bargained for services to completion.

22.    The circumstances render Defendant's retention of Plaintiff's payment inequitable.

23.    Defendant induced Plaintiff to contract with Defendant, however, Defendant was unable or refuses to furnish the deliverables under the Contract.

24.    Plaintiff suffered a detriment caused by reliance on the misrepresentation and has been damaged.

**WHEREFORE,** Plaintiff demands judgment in its favor for damages in the amount of $35,298 plus liquidated damages pursuant to the Contract and any other damages incurred and awardable together with pre-judgment interest, attorney fees, costs, and such other relief deemed just and proper.

## COUNT IV – CONVERSION

## (AGAINST PASSIVE SCALING INC.)

Plaintiff incorporates and re-alleges paragraphs 1 through 10 of this Complaint as though fully set forth herein.

25.    Defendant knowingly accepted payment under the Contract for the services pursuant to the Contract.

26.    Defendant failed to perform under the Contract and pursuant to the terms of same, owes Plaintiff a refund and damages.

**Attachment CC**          **PX20**          **001377**

27.    By retaining the funds, Defendants converted Plaintiff's funds for their own use and benefit, thereby depriving its rightful owner from its use, possession, and enjoyment.

28.    Plaintiff has requested return of its payment pursuant to the Contract, however, Defendants have refused to pay same.

**WHEREFORE**, Plaintiff demands judgment in its favor for damages in the amount of $35,298 plus liquidated damages pursuant to the Contract and any other damages incurred and awardable together with pre-judgment interest, attorney fees, costs, and such other relief deemed just and proper.

## COUNT V
### VIOLATION OF FLORIDA UNFAIR AND DECEPTIVE PRACTICES ACT 501.205
### (AGAINST PASSIVE SCALING INC. AND STEVEN ROZENFELD)

Plaintiff incorporates and re-alleges paragraphs 1 through 10 of this Complaint as though fully set forth herein.

29.    Defendants knowingly with intent to deceive, have a business practice of advertising, publishing and marketing its business by stating "[w]e like to keep things transparent and ethical.  Our company has **strong moral leadership**."

30.    Defendants claims to have been founded in 2014, yet, upon information and belief, not incorporated until February 8, 2021, an outright lie.

31.    A cursory review of their online presence reflects a pattern of misleading the public to enter into contracts and then breach same.

32. Defendants hold themselves out as expert in the industry, yet do not comply with the terms of their own contracts.

33. Defendants engaged in unfair and deceptive practices in trade or commerce by failing to deliver the refund upon contractual request pursuant to the terms therein and by misleading the Plaintiff into entering into the contract.

34. Defendants further have engaged in unfair and deceptive practices in trade or commerce by holding themselves out to be particularly skilled and capable of rendering the services sought by Plaintiff.

35. Defendants improper actions caused Plaintiff's damage and Plaintiff has been damaged.

**WHEREFORE**, Plaintiff demands judgment in its favor for damages pursuant to the Florida Unfair and Deceptive Practices Act, including the maximum civil penalty of $10,000 per violation and any other damages incurred and awardable together with pre-judgment interest, attorney fees, costs, and such other relief deemed just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Daniel Wagner – The Law Firm.
*Attorneys for Plaintiff*
20807 Biscayne Blvd., Suite  201
Aventura, FL 33180
Telephone: (305)919 - 7788
daniel@danielwagnerlaw.com


/s/ Daniel Wagner, Esq.


Daniel Wagner, Esq.
FL BAR NO. 29788





WELCOME TO

PASSIVE SCALING

# Proposal for E-Commerce Consulting

Written by Pauly Long for Brian Adams



# Ecommerce consulting contract Amazon Walmart 35k Bundle

**Initial Consulting Fee "Store Infrastructure Fee" - this goes directly towards warehousing expenses, full time employees & benefits, consulting expertise, web build & store build, product selection, & initial inventory:**
**Price $35,000**

**Management Fee - $199 or 30% Minimum management for Amazon Marketplace and 40% Minimum management for Walmart Marketpalce.**
**Price $199 ~ Monthly $199 ~ Total Price $199**

**Software Fee - Fee paid directly to software provider:**
**Price $99 ~ Monthly $99 ~ Total Price $99**

**Minimum Working Capital - $15,000 This is the minimum requirement of available credit or capital to cover inventory & wholesale price of drop shipped items. Amazon/Walmart pay every two weeks, and this money covers orders until the scheduled store payout.**

**Recommended credit available for expedited scaling process is $15,000.**

**Total one time fee: $35,298**

This E-Commerce Consulting Agreement ("Agreement"), is dated as of August 31st, 2021, by and between PASSIVE SCALING INC, a New Jersey Corporation company, whose address is 223 Veterans Blvd., Carlstadt, NJ 07020 (hereinafter "Consultant"), and , BA Enterprise LLC whose address is (hereinafter "Client").

WHEREAS, Client desires to engage Consultant's services, as an independent contractor, upon the terms and conditions herein set forth; and

WHEREAS, Consultant desires to render consulting services to Client upon the terms and conditions herein set forth;NOW, THEREFORE, Consultant and Client (together, the "Parties"), for $10.00 and other good and valuable consideration, the receipt and sufficiency are hereby mutually acknowledged, agree to the following terms and conditions whereby Consultant shall consult Client in connection with an e-commerce store on the Amazon FBA platform (the "Store"):CONSULTANT'S SERVICES - Consultant agrees to perform the following services ("Services"):Maintain Client's Store, including configuring the Amazon FBA storefront and configuring the

source, select, and list products for the Client's Store.Respond to customers' phone and email inquiries in support of Client's Store and shall exercise good faith efforts to resolve customer inquiries, handle product returns, and manage billing matters.Maintain oversight of Client's Store and its financial performance; however, Consultant shall have no obligation to, and does not intend to, provide financial advice to Client concerning the operation of Client's Store (Client shall confer with its professional financial advisors concerning all financial inquiries).

# CLIENT RESPONSIBILITIES.

Client understands there is a period that will delay the commencement and commercial operations of the Store, including, without limitation, a 1 to 4 month configuration period (and perhaps longer, depending on the circumstances specific to each proposed Store) where Client must complete certain obligations. Until Client satisfies all contractual and legal requirements for the creation and operation of Client's Store, Consultant cannot commence providing the Services as set forth in Section 1 of this Agreement.Within the first eight (8) months of this Agreement, Client will use best efforts to obtain, and maintain for the duration of this Agreement, a credit card issued through a United States federally insured banking institution with a minimum credit limit of fifteen thousand ($15,000.00) dollars USD. In no event shall Consultant be responsible for payment of any kind and any other obligation under Client's credit card, all of which credit card obligations shall be solely that of Client. Furthermore, unless Consultant provides written consent: (i) at no time shall Client Pause its Store, allow for a Suspension, or place its Walmart account or Store in Vacation Mode, such terms being defined or referenced on the Walmart website or in other written materials made available to Client; and (ii) Client shall not allow its Store to remain shut down for more than ninety (90) days during the term of this Agreement.(B) Within thirty (30) days from the commencement of this Agreement, Client shall provide Consultant with only necessary information for the purpose of Consultant carrying out its obligations under this Agreement. Client shall use its best efforts to assist Consultant in obtaining all information deemed necessary by Consultant to implement Consultant's Services.COMPENSATION. In consideration for this Agreement, Client shall pay Consultant a one-time consulting fee of thirty five thousand two hundred and ninety eight dollars ($35,298.00) USD (the "Fee"), via wire transfer or ACH to Consultant's bank account within 72 hours of execution of this Agreement. Except as expressly permitted under Section 10, the Fee is non-refundable.Client shall also thereafter, beginning in the month following the month in which the Fee is paid, pay Consultant one hundred ninety nine ($199.00) USD per month (the "Maintenance Fee"), or thirty percent (30%) of the Net Profit from Client's Walmart Store per month (the "Ongoing

Amazon Store per month or whichever is greater plus an additional ninety nine dollars ($99) software fee paid directly to the software provider. Client shall not be responsible for payment of the Ongoing Commission or the Maintenance Fee if, other than E-Commerce Consulting Agreement due to breach of this Agreement by Client, there is no activity in Client's Store for said month (or a portion thereof, where such portion exceeds 15 days). Consultant shall invoice Client monthly, and Client has seventy-two (72) hours to remit payment. TERM – This Agreement shall commence on the last date of execution by both parties and shall continue in effect for a period of one (1) year (the "Initial Term") thereafter. Upon completion of the Initial Term, the Agreement shall automatically extend on a month-to-month basis (the "Option Term") until written notice is provided by either party, to the other party, in accordance with Section 5.TERMINATION – Client may terminate this Agreement at any time by providing written notice to Consultant. Consultant may terminate this Agreement, at any time, for cause, with fourteen (14) days written notice to Client. Consultant may terminate the Option Term, without cause, at any time. For this Section, "cause" shall include, but not be limited to: (1) any act or omission by Client, which interferes with the operation of the Store or Consultant's ability to render Services, in Consultant's sole discretion; or (2) Client's breach or threatened breach of any term in this Agreement. If Client breaches any term under this Agreement, independent of any actions Walmart may take from time to time, Consultant may Pause Client's Store, which, Consultant may only reactivate, in Consultant's sole discretion.NON-DISPARAGEMENT – During this Agreement and for one (1) year thereafter, the Parties mutually agree that any issues or problems that either party has regarding the other with respect to this Agreement, shall be discussed with the other party in a professional and private manner. The Parties hereby mutually agree not to disparage, insult, or fabricate information regarding the other party in any online or offline forum or any other forum whatsoever, including but not limited to social media channels, regardless of whether such comments or information would not constitute libel or slander, and regardless of whether such comments could be deemed factually true.SALES / USE TAX – Consultant does not provide tax reporting or tax management services of any kind. Client is responsible for determining if Client is responsible for collecting and remitting sales or use tax under any applicable state or local law, regulation, or ordinance.INTELLECTUAL PROPERTY – Client understands that Client's Store is a service hosted on the Walmart platform and not a distinct or severable product or service that can be ported, removed or installed in or on a different place or platform. Accordingly, Consultant does not hold itself out to have any rights, endorsements, relations, or affiliation with Walmart, or any of Walmart's copyright, trademark, trade dress, trade secret, or any other intellectual property right that Walmart may hold (the "Intellectual Property Rights"). Further, Consultant cannot, and does not, grant or convey to Client

Consultant holds no legal or equitable rights in Client's Store.RESTRICTED ACTIVITIES – Client acknowledges that during the Term of this Agreement Client will have access to Consultant's Confidential Information which, if disclosed, could assist in competition against Consultant by third parties. Client recognizes the highly competitive nature of Consultant's business, services, and its trade secrets, and that Consultant conducts its business electronically, through e-commerce, and throughout the United States. Therefore, Client agrees that the following restrictions on Client's activities are necessary to protect the good will, Confidential Information, and other legitimate business interests of Consultant, which restrictions are fair and supported by adequate consideration: shareholders, employees, Non-Competition, agents, the Term members of the Agreement, and for two (2) years following the termination of this Agreement (the "Restricted Period"), Client shall not be involved, directly or indirectly, whether as owner, partner, investor, consultant (paid or unpaid), agent, employee, co-venturer or otherwise, with any business that manages, operates, or promotes e-commerce stores or e-commerce transactions on behalf of third parties anywhere in the United States, regardless of whether Client is physically located within the United States or outside of the United States.Non-Solicitation. During the Restricted Period, Client agrees that it will not, directly, or indirectly through another Person: (i) induce or attempt to induce any employee or contractor of Consultant to leave the employ or contract of Consultant, or in any way interfere with the relationship between Consultant and any of its employees or contractors, or (ii) induce or attempt to induce any customer, supplier, client, distributor, vendor, licensee, or other business relation of Consultant to cease doing business with Consultant, or in any way interfere with Consultant's relationship with any such party.Non-Disclosure. The Parties agree not to use, reveal, make available, nor disclose, whether directly or indirectly, to any third party any Confidential Information for any purpose except as approved in writing by Consultant. Further, the Parties shall (a) not assist nor enable anyone to access or use any of Confidential Information; and (b) not use nor exploit any of the Confidential Information for any purpose whatsoever except in accordance with the terms of this Agreement. For purposes of this Agreement, the Party disclosing the Confidential Information shall be referred to as "Disclosing Party," and the Party receiving the Confidential Information shall be referred to as "Receiving Party."Notwithstanding the foregoing, Receiving Party will: 1) promptly notify the Disclosing Party, to the extent legally permissible, if Receiving Party becomes required by court order to disclose any Confidential Information; 2) cooperate with Disclosing Party if Disclosing Party decides to oppose or to seek to restrain such disclosure; and 3) subject to the foregoing, only disclose that information which its counsel advises it is legally compelled to disclose.If at Disclosing Party's request, Receiving Party is unable to obtain a protective order or other injunctive relief above with respect to the

required by court order to disclose such Confidential Information, Receiving Party may disclose only such Confidential Information as is expressly required by the court order.Maintenance of Confidential Information. The Receiving Party agrees that it shall take all reasonable measures to protect the secrecy of and avoid disclosure and unauthorized use of Disclosing Party's Confidential Information. Without limiting the foregoing, Receiving Party shall take at least those measures that Receiving Party takes to protect its own confidential information. Receiving Party shall also immediately notify Disclosing Party, in writing, of any unauthorized use or disclosure of the Confidential Information.Confidentiality Term: Regardless of any termination of this Agreement, the parties expressly acknowledge and agree that their respective rights and obligation under this Section 9 shall last for a period of five (5) years following the expiration of this Agreement or permissible termination of this Agreement; provided, however, that Client's duties of confidentiality thereunder with respect to Consultant's trade secrets shall survive such expiration and such duties of confidentiality shall continue and not expire so long as such Confidential Information is deemed a trade secret as a matter of law.In signing this Agreement, Client acknowledges that he/she/it has carefully read, consulted with legal counsel, and considered all the terms and conditions of this Agreement, including the restraints imposed on Client, throughout the United States, under this Section 9. Client agrees that all such restraints are necessary for the reasonable and proper protection of Consultant, and that each and every one of the restraints is reasonable in respect to subject matter, length of time and geographic area (i.e., throughout the United States). Client further acknowledges that, were Client to breach any of the covenants contained in this Section 9, however caused, the damage to the Consultant would be irreparable. Client therefore agrees that Consultant, in addition to any other remedies available to it, shall be entitled to preliminary and permanent injunctive relief against any such breach or threatened breach, without having to post bond, together with reasonable attorneys' fees incurred in enforcing Consultant's rights hereunder.

# LIMITATION OF LIABILITY

UNDER NO CIRCUMSTANCES WILL CONSULTANT, OR ANY OFFICERS, DIRECTORS, EMPLOYEES, AGENTS OR REPRESENTATIVES BE LIABLE FOR ANY INCIDENTAL, INDIRECT, CONSEQUENTIAL,   PUNITIVE, SPECIAL OR EXEMPLARY DAMAGES, HOWSOEVER OR WHENEVER ARISING, INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOST REVENUE, LOST PROFITS, ANTICIPATED PROFITS, LOST BUSINESS OR INJURY TO BUSINESS REPUTATION, COST OF PROCUREMENT OF SUBSTITUTE SERVICES, UNDER ANY THEORY OF LIABILITY OR CAUSE OF ACTION WHETHER IN TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE, CONTRACT

ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THIS LIMITATION OF LIABILITY SHALL NOT LIMIT CLIENT'S RIGHTS TO FILE SUIT AGAINST A THIRD PARTY OR PRODUCT VENDOR FOR ANY OF THE ABOVE LISTED CAUSES OF ACTION OR ANY OTHER CAUSE OF ACTION RELATED THERETO. SPECIFICALLY, CONSULTANT HEREBY COVENANTS THAT IT SHALL NOT TAKE ANY ACTION WHICH IS LIKELY TO CAUSE WAIVER OF ANY OF CLIENT'S RIGHTS WITH RESPECT TO THIRD-PARTY LIABILITY WITHOUT CLIENT'S PRIOR WRITTEN APPROVAL.CONSULTANT ASSUMES NO LIABILITY FOR OR RELATING TO THE DELAY, INTERRUPTION, CORRUPTION OR FAILURE OF PRODUCT, DATA OR INFORMATION TRANSMITTED IN CONNECTION WITH THE STORE, INCLUDING WITHOUT LIMITATION ANY ACT OR FAILURE TO ACT BY AMAZON OR ANY FORCE MAJEURE CONDITION (INCLUDING BY WAY OF EXAMPLE ONLY, ANY PUBLIC HEALTH ISSUE).AS A LIQUIDATED DAMAGES REMEDY AND NOT AS A PENALTY, SINCE DAMAGES TO CLIENT RESULTING FROM BREACH OF THIS AGREEMENT BY CONSULTANT ARE DIFFICULT AND IMPRACTICAL, IF NOT IMPOSSIBLE TO CALCULATE, CONSULTANT SHALL ONLY BE LIABLE TO THE EXTENT OF ACTUAL DAMAGES INCURRED BY CLIENT, NOT TO EXCEED A TOTAL OF $5,000.00 USD. AGREEMENT TO THIS PROVISION IS A MATERIAL INDUCEMENT TO CONSULTANT AGREEING TO ENTER INTO THIS AGREEMENT WITH CLIENT. THIS PROVISION 11.(C) SHALL PREVAIL IN THE EVENT OF ANY CONFLICT OR INCONSISTENCY WITH ANY OTHER PROVISION IN THIS AGREEMENT.

# DISCLAIMERS AND RELEASE

CONSULTANT'S SERVICES ARE PROVIDED ON AN "AS IS" "AS AVAILABLE" BASIS WITHOUT ANY REPRESENTATIONS OR WARRANTIES. CLIENT MAY NOT RELY UPON ANY REPRESENTATION OR WARRANTY REGARDING CONSULTANT'S SERVICES MADE BY ANY THIRD PARTY, INCLUDING, BUT NOT LIMITED TO REPRESENTATIONS BY THIRD PARTY SERVICE PROVIDERS. CLIENT AGREES THAT CONSULTANT SHALL BEAR NO RISK WHATSOEVER AS TO THE SALE OF PRODUCTS OR SERVICES. CONSULTANT SPECIFICALLY DISCLAIMS ANY AND ALL REPRESENTATIONS, WARRANTIES AND CONDITIONS, WHETHER EXPRESS OR IMPLIED, ARISING BY STATUTE, OPERATION OF LAW, USAGE OF TRADE, COURSE OF DEALING, OR OTHERWISE, INCLUDING BUT NOT LIMITED TO WARRANTIES OR CONDITIONS OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, NON- INFRINGEMENT, OR TITLE WITH RESPECT TO CONSULTANT'S SERVICES, OR OTHER SERVICES OR GOODS PROVIDED UNDER THIS AGREEMENT.Without limiting the foregoing, Consultant makes no representations or warranties as to: (1) the accuracy, the reliability, or the completeness, of any matter within the scope of this Agreement, including but not limited to the Store, the products therein, or the data, information, content, software, technology, graphics, or communications provided on or through the Store; (2) the satisfaction of any regulation (government or otherwise) requiring disclosure of information on the products provided through or in connection with the Store or the approval or compliance of the Store or any software or information and

economic needs and requirements or reach any particular level of sales, income, or net profits.Business Risk − Client hereby understands that the creation and potential growth of the Client's Store carries financial and other risks. Client hereby understands that e-commerce is an ever-changing industry that is subject to numerous business risks, including but not limited to: (i) a changing legal environment in which regulations can emerge or change that affects the commercial sale of products through Walmart via Client's Store; (ii) economic changes that affect consumer spending, the emergence of recessions due to economic and other issues (including public health issues) and the like; (iii) changes in the popular appeal of and demand for different types of Walmart products; (iv) changes in Walmart's terms and conditions, which can materially affect or even interfere with   the marketability of Client's Store or its products; (v) changes in international politics or economies, which may affect, among other things, the ability to package, distribute and ship Walmart products, and the costs thereof; (vi) market forces, including increased and changing levels of competition for any given product from other sellers of such product; (vii) unforeseen events, force majeure, public health concerns, and other external events that could affect the performance of any Walmart Store. Client hereby understands that there are no guarantees made by Consultant or otherwise as to the Store's sales, income, or profitability at any time, and acknowledges that Client is at risk of a total loss of his, her or its investment. Client acknowledges the substantial risks generally involved with an e-commerce business. Client recognizes that there is a possibility that subsequent to the execution of this Agreement, Client may discover facts or incur or suffer claims which were unknown or unsuspected at the time this Agreement was executed, and which if known by Client at that time may have had materially affected Client's decision to execute this Agreement. By operation of this Agreement, and in particular the disclaimers of Consultant contained in the preceding subsections, Client assumes any and all risks of such unknown facts and such unknown and unsuspected claims and expressly releases Consultant for any liability which Consultant could have had in connection there with in the absence of the release herein provided by Client to Consultant. Consultant encourages Client to only invest funds that Client can afford to invest in an illiquid basis over a longer-term and perhaps ultimately lose, and to consult Client's legal and/or business advisors prior to investing in the Store. Terms and Conditions − Client hereby understands that Walmart, from time to time, with or without cause, can and does suspend accounts for various reasons, some of which may not be obvious or justified in the Client's view. In the event Client's Walmart Store is suspended, Company will assist in sending an appeal on behalf of the Client and working with Walmart to remedy the situation at no extra cost. Consultant makes no representations or warranties of any kind, however, that Walmart will in such cases return Client's Store to active  status.   Furthermore,  Client agrees

representations regarding the Store in relation to any Walmart policy, whether currently in effect or as may be amended by Walmart from time to time. Client understands that Consultant has no control over or input in when and whether Walmart elects to change any of its policies. However, the Services provided by Consultant to Client pursuant to this Agreement shall where practical be consistent with Walmart's current policies.

# GENERAL PROVISIONS

Non-exclusivity - Each party is free to contract with others with respect to the subject matter of this Agreement subject to the limitations as to Client under Section 6 and Section 9 of this Agreement.Relationship of the Parties – Nothing herein contained shall constitute a partnership or a joint venture between the Parties. Consultant is performing its services to Client as an independent contractor and not as Client's agent or employee. There is no third-party beneficiary to this Agreement.Notices - All notices to either party shall be sent electronically to the email address(es) provided by each Party to the other and as otherwise set forth below. All notices to Consultant shall be sent to info@passivescaling.com. If to Client, notice shall be sent electronically to  , with a courtesy copy sent to .Alternatively, such written notice will also be deemed given upon personal delivery, or on receipt or refusal if sent by U.S. first class certified or registered mail, postage prepaid, return receipt requested, or by a recognized private delivery service, to the addresses stated on Page 1 of this Agreement. Severability, Headings – If any provision is held to be invalid or unenforceable for any reason, the remaining provisions will continue in full force and effect. In such event, the Parties hereby acknowledge their intent to make such invalidated provision, or part of such provision, as to be deemed replaced with a valid provision or part of provision that most closely approximates and gives effect to the intent of the invalid provision. Any such modification shall revise the existing invalid provision, or part thereof, only as much as necessary to make the invalidly-held provision otherwise valid. Headings are used for convenience of reference only, and in no way define, limit, construe or describe the scope or extent of any section of this Agreement. Dispute Resolution – Except where otherwise expressly set forth in this Agreement, any dispute or claim arising out of or relating to this Agreement shall only be resolved by binding arbitration. The arbitration of any dispute or claim shall be conducted in accordance with the American Arbitration Association ("AAA") rules, as modified by this Agreement, which shall take place in Miami-Dade County, Florida. Any arbitration proceeding, determination, or award, shall be confidential, and neither Party may disclose the existence, content or results of any arbitration, except as may be required by law or for purposes of enforcement. Judgment on any arbitration award may be entered in any court having proper jurisdiction. All administrative fees and expenses of such

each Party will bear its own expense of counsel, experts, witnesses and preparation and presentation of evidence at the arbitration (except where attorneys' fees and costs shall be awarded pursuant to Section 13.(L)). IF FOR ANY REASON THIS ARBITRATION CLAUSE IS DEEMED INAPPLICABLE OR INVALID, THE PARTIES FOREVER AND WITHOUT EXCEPTION WAIVE, TO THE FULLEST EXTENT ALLOWED BY LAW, ANY RIGHT TO PURSUE ANY CLAIMS ON A CLASS OR CONSOLIDATED BASIS OR IN A REPRESENTATIVE CAPACITY. No action, regardless of form, arising out of or in conjunction with the subject matter of this Agreement may be brought by either Party more than one (1) year after the cause of action arose. Amendment. This Agreement cannot be amended except in writing and signed by both Parties. Electronic Signatures - This Agreement may be executed by electronic means and in any number of counterparts, each of which when so executed and delivered will be deemed an original, and all such counterparts together will constitute one and the same instrument.Governing Law; Jurisdiction - This Agreement, the negotiations thereunder, and performance thereof shall be interpreted, construed and enforced in all respects in accordance with the laws of the State of Florida without reference to principles of conflicts of laws. Client hereby irrevocably consents to the personal jurisdiction of and agrees that the sole venue for any dispute arising in connection to this Agreement shall be the courts of competent jurisdiction (State and federal) located within Miami-Dade County, Florida. Client agrees not to commence or prosecute any such action, claim or proceeding other than in such aforementioned courts. The parties hereto agree that Florida law shall apply regardless of any choice or conflicts of law principles. Client agrees that Miami-Dade County, Florida is a convenient forum, and waives any objection to same under forum non conveniens principles.Waiver - The failure of any party to insist on or enforce strict performance of any provision of this Agreement, or to exercise any right or remedy under this Agreement or applicable law shall not be construed as a waiver or relinquishment of the right to assert or rely upon any such provision, right or remedy. Force Majeure - Neither Party shall be responsible for any failure to perform beyond its reasonable control, including, without limitation acts of God, national health emergency, acts or omissions of civil or military authority, civil disturbances, wars, strikes or other labor disputes, fires, transportation contingencies, or interruptions in telecommunications, internet services, or third-party vendors. Entire Agreement - This Agreement constitutes the entire agreement between the parties and supersedes all prior and contemporaneous oral and written agreements relating to the subject matter herein.Attorneys' Fees – If either party breaches this Agreement, or one party brings any action (including appeal) against the breaching party in connection with this Agreement, the substantially prevailing party in such action shall be entitled to recover his/her/its cost of the action and reasonable attorneys' fees.Injunctive Relief - In the event of a breach or threatened breach of Section 6 or Section 9, the

competent jurisdiction specific performance, injunctive relief, damages, or such other remedies and relief as may be available, regardless of any contrary provision of this Agreement. Additionally, due to the difficulty of measuring damages in the event of a breach of this Agreement by Client, the parties agree that, in the event of a breach of either Section 6 or Section 9 by Client, Client shall owe Consultant total liquidated damages in the amount of Fifty Thousand Dollars ($50,000.00) per breach. The Parties further agree that (i) the liquidated damage amount due from Client as above set forth is not a penalty but is an arms-length negotiated amount under the circumstances, and (ii) this Section shall not be construed as a waiver of prohibition of any other remedies of Consultant in the event of a breach of this Agreement by Client.Independent Counsel - The Parties acknowledge that each has been advised to seek, and each has had sufficient opportunity to seek, independent legal counsel possessing industry experience in connection with this matter. The Parties have either sought such counsel or voluntarily waived such right to do so. Accordingly, in interpreting this Agreement, no weight shall be placed upon either party. Furthermore, the parties equally drafted this agreement; thus, the Agreement shall be construed neutrally, and no rule of construction shall apply to the disadvantage of any Party.Assignment – Neither party may assign its rights or obligations under this Agreement without the prior written consent of the other party. Prior to any such assignment, said assignee shall execute an agreement identical to this Agreement. Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of the parties hereto, their successors, and assigns. Any purported assignment or delegation by either party in violation of the foregoing shall be null and void ab initio and of no force and effect. Cure - If at any time either Client believes the terms of this Agreement are not being fully performed, prior to seeking or commencing any relief expressly permitted under this Agreement, Client shall notify Consultant in writing of the specific nature of such claim, and Consultant receiving such notice shall have thirty (30) days from receipt of the notice to cure such claimed breach.Indemnification – Client agrees to indemnify, defend, and save and hold harmless Consultant, including its respective insurers, directors, officers, employees, agents, and representatives (collectively the "Indemnified Parties" and each an "Indemnified Party"), and to hold each Indemnified Party harmless from and against any and all claims, damages, losses, liabilities and expenses (including all attorneys' fees and costs) which any Indemnified Party may incur or which may be asserted against any Indemnified Party by any person, entity or governmental authority, throughout the world, in connection with or relating to the matters referred to in this Agreement, resulting from or relating directly or indirectly to Client's breach of this Agreement. The foregoing indemnity specifically includes, but is not limited to, any breach of any representation, warranty, or covenant in this Agreement applicable to

– Any Section in this Agreement that requires survival shall survive the termination of this Agreement for the maximum period permitted by applicable law.Client Data Management – Unless Consultant receives Client's prior written consent, Consultant shall not: (i) access, process, or otherwise use Client's Data other than as necessary to facilitate Consultant's Services; (ii) give any of its employees access to Client Data except to the extent that such individuals needs access to Client Data to facilitate performance of Consultant under this Agreement; or (iii) give any other third-party access to Client Data except as necessary for such third-party to facilitate performance under this Agreement. Consultant shall not erase Client Data, or any copy thereof, without Client's express written consent and shall follow Client's written instructions regarding retention and erasure of Client Data so long as it does not interfere with the performance of Consultant's Services and performance under this Agreement. Client possesses and retains all right, title, and interest in and to Client Data, and Consultant's use and possession thereof is solely in furtherance of Consultant's Services and on Client's behalf. Consultant shall comply with all applicable laws and regulations governing the handling of Client Data and shall not engage in any activity that would place Client in violation of any applicable law, regulation, or government request, or judicial process. Waiver of Jury Trial. EACH PARTY HERETO HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN MATERIALLY INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.Ministerial Services – In furtherance of Client's obligations under Section 2, Consultant may offer Client guidance and referrals to third-party vendors. Additionally, Consultant may, in its discretion, and at no additional fee to Client, offer Client assistance in fulfillment of the obligations in Section 2 ("Ministerial Act"). Before Consultant commences any Ministerial Act, Consultant shall obtain Client's written consent. Client agrees to reimburse Consultant for expenses incurred in carrying out a Ministerial Act. In the event Consultant offers to engage in a Ministerial Act, Client hereby agrees to indemnify, defend and save and hold harmless Consultant from any cost, claim, damage or liability (including attorneys' fees and court costs) related to the Ministerial Act. Client also waives any claims against Consultant that may be related to the Ministerial Act. Client accepts that this indemnification and waiver of all liability related to the Ministerial Act is a material inducement for

such indemnification and waiver from Client, Consultant would not make any such offer of assistance to Client to engage in the Ministerial Act. The foregoing indemnity of Client shall survive expiration of the Term of this Agreement or its earlier termination. DEFINITIONS – Words or phrases which are initially capitalized or are within quotation marks shall have the meanings as provided in Exhibit A of this Agreement, which is fully incorporated by reference and is a material part of this Agreement.

EXHIBIT A Definitions: Words or phrases which are initially capitalized or are within quotation marks in the e-commerce consulting agreement ("Agreement") shall have the meanings provided in this Exhibit A."Cash Back" means any revenue derived from cash back programs like Be Frugal. "Client Data" refers to any and all information processed or stored on computers or other electronic media by Consultant, by Client, or on Client's behalf, or provided to Consultant by Client to perform the Services contemplated under this Agreement; including: information on paper or other non-electronic media, information provided to Consultant by Client, and personally identifiable information from Client, Client affiliated third-parties, and other users."Confidential information" means any and all information of the Company that is not generally known to the public or those with whom the Company competes or does business, or with whom they plan to compete or do business, and any and all information, publicly known publicly known in whole or in part or not, which, if disclosed would assist in competition against them including without limitation: Consultant's proprietary business information and all information disclosed or made available by Consultant to Client, either directly or indirectly, in writing, orally, by demonstration, or by inspection of tangible or intangible objects, including without limitation documents, files, texts, emails, phone calls, zoom calls, links, source code, software, charts, graphs, and any other form of communication. Confidential Information also includes information disclosed by Client to Consultant. Confidential Information shall not include any information (a) which Client can establish was publicly known and made generally available in the public domain prior to the time of disclosure, other than as a result of an improper disclosure by a party hereto, or (b) was in Client's possession on a non-confidential basis prior to its disclosure."Net Profit" means the revenue, income, and sums owed to Client through the operation of Client's Store after deduction of (i) the cost of any goods sold in connection with Client's Store, and (ii) any Walmart fees related to Client's store."Pause" means the Store is considered in "Vacation Mode" due to a variety of reasons, including, but not limited to, insufficient credit available by Client to permit Consultant to render its services to Client as provided herein."Prohibited Action" means any affirmative action taken by Consultant which constitutes: (1) willful copyright infringement as defined under the U.S. Copyright Act or (2) late shipping of product, i.e., greater than five (5) days from the date of expected delivery of

under (1) and (2) above have resulted in the Suspension of Client's Store. The term "proprietary business information" means Consultant's valuable trade secrets and confidential business information regarding its brand, vendors, sources, suppliers, techniques, processes, products, services, including, but not limited to, information regarding e-commerce transactions, Walmart transactions, training materials, marketing and advertising materials, trade or industrial practices, customer and client correspondence, internal memoranda, project files, marketing plans, distribution channels, and relationships with, and identities of, customers, investors, clients, buyers, sellers, brokers, agents, representatives, distributors, manufacturers, and managers, as well as financial information, business, marketing and operating information, geographic sales information, social media analytics, price comparison information, sales data, sales programs, sales volumes, sales conversion rates, sales methods and processes, sales proposals, products, services, training manuals, sales scripts, income information, profit information, operating procedures, pricing policies, strategic plans, intellectual property, information about Consultant's clients, employees and contractors, and other confidential or proprietary information related to Consultant. The term "Store" means the Client's wholly owned e-commerce location on the third-party Walmart.com where products may be sold to third parties (there is no affiliation, endorsement, or sponsorship between Consultant and Walmart). "Suspension" means an action or actions by Walmart which inactivates or freeze Client's Store, and which thereby results in an inability for Client to access Client's Store which results in no access or sales activity through the Store, other than where due to the occurrence of a Prohibited Action. "Vacation Mode" means any action other than a breach of this Agreement by Client which results in a condition of Client's Store where all sales activity in the Store has been temporarily halted.

TERMINATION –

Client may terminate this Agreement at any time by providing written notice to Consultant. Consultant may terminate this Agreement, at any time, for cause, with fourteen (14) days written notice to Client. Consultant may terminate the Option Term, without cause, at any time. For this Section, "cause" shall include, but not be limited to: (1) any act or omission by Client, which interferes with the operation of the Store or
Consultant's ability to render Services, in Consultant's sole discretion; or (2) Client's breach or threatened breach of any term in this Agreement. If Client breaches any term under this Agreement, independent of any actions Walmart/Amazon may take from time to time, Consultant may Pause Client's Store, which, Consultant may only reactivate, in Consultant's sole discretion.

REFUND POLICY –

A. Subject to Paragraph (C) below, during the Term of this Agreement, if

option("Refund Option") to request a refund. Additionally, following an eighteen(18)month period if the Client has not made back their initial store costs, Client has the option to request a refund within a thirty (30) day period following their 18th month of working days. To exercise the Refund Option, Client must notify Consultant of that election in writing. In that event, subject to Paragraph (C),Consultant will refund a portion of the Fee, as defined in Paragraph (B) below(the "Refund Amount").

B.  The Refund Amount shall be calculated by the following formula: (x) the Fee less (y) any Net Profit and Cash Back Client received during the Refund Period,and less (z) any Net Profit and Cash Back Client received through Passive Scaling; provided, however, that (1) Client has not engaged in any act that interferes with the operation of Client's Store or of Consultant's Services or which would be in breach of this Agreement, including, without limitation, a Suspension of Client's Store for any reason other than the occurrence of a Prohibited Action, and (2) this Agreement remains in full force and effect at the time Client exercises the Refund Option. The Parties further agree that under no circumstance shall the Refund Amount exceed the Fee.

C. Client's right to exercise the Refund Option under Paragraph (A) is expressly conditioned on Consultant first managing one replacement store (the "Cure Store") for Client, and the Cure Store also results in a Prohibited Action.

I, Brian Adams, agree to the terms of this agreement and I agree that my typed name below can be used as a digital representation of my signature to that fact.

*Brian Adams*

SIGNED BY

**Brian Adams**

SIGNED ON

Date Signed: 31 Aug 2021

Time Signed: 13:34

IP ADDRESS FROM SIGNATURE LOCATION

174.210.40.115



**SIGNED WITH BETTERPROPOSALS.COM**
Build and send beautiful sales documents in minutes to help your business close more deals and get paid faster.

Case 2:24-cv-06635-JXN-LDW   Document 1-42   Filed 06/03/24   Page 87 of 95 PageID: 1456

**IN THE COUNTY COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2023-137620-CC-23
SECTION: CL02
JUDGE: Gordon Murray

**BA ENTERPRISE LLC**

Plaintiff(s) / Petitioner(s)

vs.

**Steven Rozenfeld et al**

Defendant(s) / Respondent(s)

_____/

## ORDER ON PLAINTIFF'S MOTION TO COMPEL RESPONSES TO PENDING DISCOVERY & FOR SANCTIONS DOCKET INDEX NUMBER: 30

THIS CAUSE, having come before the Court on May 9, 2024 on Plaintiff's Motion to to Compel Responses to Pending Discovery and the Court being fully advised in the premises, having heard argument of counsel, it is ORDERED AND ADJUDGED as follows:

1. Plaintiff's Motion is GRANTED.

2. Defendant Passive Scaling, Inc. shall file its responses to the First Request for Production within 15 days; to wit, Friday, May 24, 2024.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 9th day of May, 2024.

2023-137620-CC-23 05-09-2024 10:13 AM
Hon. Gordon Murray

**COUNTY COURT JUDGE**
Electronically Signed

**Attachment CC**                    **PX20**                    **001397**

**SALDUTTI LAW GROUP**
Robert L. Saldutti, Esquire – 006871992
Thomas B. O'Connell, Esquire - 031102008
1040 N. Kings Highway, Suite 100
Cherry Hill, NJ  08034
(856) 779-0300
Attorneys for Plaintiff/47881

| | |
|---|---|
| MATHEW GENES,<br><br>                    Plaintiff,<br><br>v.<br><br>PASSIVE SCALING INC<br><br>                    Defendant. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>CAMDEN COUNTY<br><br>DOCKET NO.<br><br>     Civil Action<br><br>**VERIFIED COMPLAINT** |

Plaintiff, Mathew Genes, by way of Verified Complaint against Passive Scaling, Inc., says:

## BACKGROUND

1.     At all times relevant to this Verified Complaint, Matthew Genes ("Plaintiff") was an adult individual.

2.     Upon information and belief, at  all times relevant to this Verified Complaint, Passive Scaling, Inc. ("Defendant") was a corporation registered to do business in the State of New Jersey.

3.     Plaintiff and Defendant participated in Commercial Arbitration under case and caption Matthew Genes v. Passive Scaling, Inc., Case No. 01-23-000-6460, with the American Arbitration Association ("the Arbitration").

4.     At the conclusion of the Arbitration, an Arbitration Award in the amount of $200,899.66 was entered in favor of Plaintiff and against Defendant on January 5, 2024.  A true and correct copy of the Arbitration Award is attached as Exhibit A.

5.      The Arbitrator sent notice of the Arbitration Award to Defendant's counsel in the Arbitration.  A true and correct copy of the Arbitrator's notice of the award sent to Defendant is attached as Exhibit B.

6.      Prior to filing this Complaint, Plaintiff sent notice to Defendant of the Arbitration Award.  A true and correct copy of Plaintiff's notice of the Arbitration Award to Defendant is attached as Exhibit C.

## COUNT ONE

## CONFIRMATION OF ARBITRATION AWARD AS JUDGMENT PURSUANT TO N.J.S.A. 2A:23B-22

7.      Plaintiff hereby incorporates each of the allegations of the preceding paragraphs as if set forth herein at length.

8.      Pursuant to N.J.S.A. 2A:23B-22, Plaintiff is entitled to confirm the Arbitration Award as a Judgment.

WHEREFORE, Plaintiff demands judgment against Defendant, Passive Scaling Inc., in the amount of $200,899.66 plus court costs, attorney's fees, and any other relief the Court deems just and equitable.

SALDUTTI LAW GROUP

**/s/  Thomas B. O'Connell**

_____
THOMAS B. O'CONNELL, ESQ.

Dated: February 13, 2024

## <u>CERTIFICATION</u>

Pursuant to <u>R</u>. 4:5-1 this controversy is not the subject of any other action pending in any court or any pending arbitration proceeding and no other action or arbitration proceedings are contemplated at this time.

The following parties should be joined in the action:  None.

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

### <u>CERTIFICATION PURSUANT TO (R.1:38-7)</u>

I hereby certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

SALDUTTI LAW GROUP

**/s/  Thomas B. O'Connell**
_____
THOMAS B. O'CONNELL, ESQ.

Dated: February 13, 2024



Southeast Case Management Center
John Bishop
Vice President
2200 Century Parkway
Suite 300
Atlanta, GA 30345
Telephone: (404)325-0101
Fax: (877)395-1388

January 10, 2024

James Radke
Murtha Cullina LLP
33 Arch Street
12th Floor
Boston, MA 02110-2320
Via Email to: jradke@murthalaw.com

Mikhail Usher, Esq.
Usher Law Group P.C.
1022 Avenue P
2nd Floor
Brooklyn, NY, NY 11223
Via Email to: musheresq@gmail.com
Via US and Certified Mail, Tracking #9489 0090 0027 6508 7639 62

Case Number: 01-23-0000-6460

Mathew Genes
-vs-
Passive Scaling, Inc.

Dear Parties:

The American Arbitration Association (the AAA) hereby transmits the enclosed duly executed award in the above-referenced matter. Please direct all further communication to the AAA. The parties will have no further direct communication with the arbitrator.

The AAA has conducted a financial reconciliation, and each party will receive a separate accounting for this matter based on that reconciliation. Any party with an outstanding balance will receive monthly invoices until the balance is paid in full.

Any outstanding balances the parties may owe the AAA for the administrative fees or arbitrator compensation and expenses incurred during the case remain due and payable to the AAA even after the award is issued, regardless of whether the award apportioned these costs between the parties.

The AAA will process any refund due to a party as soon as possible. To ensure the accurate transmission of any refund, please confirm to whom the refund check should be addressed and notify the case administrator prior to January 17, 2024. If confirmation is not timely received, by default the refund will be disbursed to the billing representative listed for the party's account.

Please note that the AAA WebFile® ECF Guidelines will not apply after closing of the case. Therefore, any additional submissions from the parties in this matter should be submitted via email to the AAA, with copies sent to all other parties.

Pursuant to AAA policy, in the normal course of our administration, we may maintain certain electronic case

documents in our electronic records system. Such electronic documents may not constitute a complete case file. Other than certain types of documents that the AAA maintains indefinitely in our system, the AAA will destroy electronic case documents 18 months after the date of this correspondence.

We appreciate the opportunity to assist you in resolving your dispute. As always, please do not hesitate to contact me if you have any questions.

Sincerely,

*//s/ Christine Anlicker on behalf of*

Paris N Wilkerson
Manager of ADR Services
Direct Dial: (404)320-5133
Email: ParisWilkerson@adr.org
Fax: (877)395-1388

cc:
Alex Susi, Esq.
Neil P. Linden, Esq.

AMERICAN ARBITRATION ASSOCIATION
Commercial Arbitration Tribunal

In the Matter of the Arbitration between

CASE NO. 01-23-0000-6460

Mathew Genes,

     Claimant,

-vs-

Passive Scaling, Inc.,

     Respondent.

## EX-PARTE FINAL AWARD OF ARBITRATOR

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the

arbitration provisions of the E-Commerce Consulting Agreement dated October 21, 2021 and

entered into by the above-named parties, having been duly sworn and oral hearings having been

waived in accordance with the Commercial Arbitration Rules, and having fully reviewed and

considered the written documents submitted to me by Claimant, represented by James Radke,

Esq. of Murtha Cullina LLP, and Respondent having failed to submit written documents despite

due notice being given to its representatives, Mikhail Usher, Esq. and Alex Susi, Esq. of Usher

Law Group, hereby AWARD as follows:

FINDINGS

     1.     On February 14, 2023, Claimant Matthew Genes ("Claimant") filed a Demand for

Arbitration (the "Original Demand") and initiated this proceeding against Respondent Passive

Scaling, Inc ("Respondent").

     2.     On February 28, 2023, Respondent filed an "Answering Statement" responding to

Claimant's Original Demand.

1

**Attachment CC**          **PX20**          **001403**

3.      On May 25, 2023, Claimant filed an Amended Demand for Arbitration (the "Amended Demand") in which he amended Count Four of his Original Demand and his Prayer for Relief (the Amended Demand, collectively with the remaining portions of the Original Demand, shall be referred to as the "Demand").

4.      On November 17, 2023, I issued an order titled "Findings and Order" in which I ordered that the Final Hearing in this matter would be determined on the submission of sworn statements and documents in lieu of live testimony to which the Claimant agreed and for which the Respondent did not object or respond.  I ordered Claimant to file his final submission of evidence by November 28, 2023 and for Respondent to file its evidence on December 1, 2023, subject to the limitations contained therein.

5.      In addition, in my November 17, 2023 "Findings and Order," I ordered that:

> Respondent shall pay to Claimant a monetary sanction in the amount of SIX THOUSAND NINE HUNDRED SEVENTY-SIX dollars ($6,976.00) to compensate Claimant for the attorneys' fees he incurred in addressing Respondent's failures to comply with its discovery obligations and my discovery orders.

6.      On November 28, 2023, I received Claimant's submission of evidence, which consisted of:

    a.  Direct Testimony of Matthew Genes, and numerous Exhibits thereto; and
    b.  Affidavit of Asante Monadjemi.

7.      Despite providing notice to Respondent and receipt of notice by its counsel, I did not receive any submission of evidence from the Respondent.

8.      I have reviewed and considered the sworn testimony set forth in the Direct Testimony of Matthew Genes and the evidence submitted therewith. I credit the Claimant's testimony.

2

9.      I have also reviewed and considered the sworn testimony set forth in the Affidavit of Asante Monadjemi. I credit the sworn statements set forth in Mr. Monadjemi's Affidavit.

10.     I have applied the conflicts of law principles of the forum state, the State of Florida, to determine which state's laws apply to the common law claims raised in Claimant's Demand. Florida has adopted the "significant relationship test" with respect to tort claims as enunciated in *Bishop v. Fla. Specialty Paint Co.,* 389 So.2d 999 (Fla.1980). Applying that test, I find that the Commonwealth of Massachusetts is the state with the most significant relationship to the legal issues raised by the tort claims in this case, which include Count One of the Claimant's Demand for Fraud. Here, the Respondent is alleged to have committed fraud in the solicitation of investment from a Massachusetts resident, and the harm caused by the alleged fraud was incurred in Massachusetts. Thus, I have applied Massachusetts law to Count One of the Demand.

11.     Applying Massachusetts law to Count One, I find that Claimant has not met his burden to prove that Respondent acted with fraudulent intent when it induced Claimant to enter the parties' E-Commerce Consulting Agreement. Accordingly, I find in favor of Respondent on Count One.

12.     In making these findings on Count One, I am mindful that Claimant requested information from Respondent in discovery that would bear on Claimant's fraud claim and that Respondent failed to respond to such discovery requests. On November 2, 2023, I issued an Order requiring Respondent to submit a sworn Affidavit concerning its efforts to comply with Claimant's discovery requests. Respondent did not comply with my November 2, 2023 Order. As a result of this discovery misconduct, I issued an award of sanctions against Respondent, as

**Attachment CC**                    **PX20**                    **001405**