noted above. Thus, I recognize that Respondent's discovery misconduct may have hindered Claimant's efforts to meet his burden of proof with respect to his fraud claim in Count One.

13.     Florida's conflicts of laws principles require me to apply the rule of *lex loci contractus* to the Claimant's contract claims, as enunciated in *Lumbermens Mut. Cas. Co. v. Aug.,* 530 So. 2d 293, 296 (Fla. 1988). This rule requires me to apply the law of the state where the contract was executed. Applying this test to the present case, I find that the parties' E-Commerce Consulting Agreement was executed in Massachusetts, where Claimant executed the form contract proposed to him by Respondent and paid the initial Consulting Fee called for under the Agreement. Accordingly, I will apply the law of the Commonwealth of Massachusetts to those claims of Claimant's Demand sounding in contract, including Count Two (Breach of Contract), and Count Three (Breach of the Implied Covenant of Good Faith and Fair Dealing). Further, I find that the laws of all states that could possibly be applied in this case, which include New Jersey, Massachusetts, and Florida, do not differ in material respects with respect to the contract claims raised in this case.

14.     With respect to Count Two of Claimant's Demand alleging Breach of Contract, I find that Claimant has proven that Respondent breached the parties' E-Commerce Agreement in material respects, as detailed in the Direct Testimony and exhibits of Mr. Genes, and in the Affidavit of Mr. Monadjemi. Accordingly, I find in favor of Claimant on Count Two.

15.     I find that Respondent's breach of contract caused Claimant to suffer financial damages in the amount of Seventy-One Thousand Seven-Hundred Twenty dollars and Eighty-Three cents ($71,720.83), as detailed in the Direct Testimony of Mr. Genes.

16.     With respect to Count Three of Claimant's Demand alleging Breach of the Implied Covenant of Good Faith and Fair Dealing, I find that Claimant has proven that

4

**Attachment CC**                    **PX20**                    **001406**

Respondent breached implied covenant as detailed in the Direct Testimony and exhibits of Mr.

Genes, and in the Affidavit of Mr. Monadjemi. Accordingly, I find in favor of Claimant on

Count Three.

17.   I find that the damages caused by Respondent's Breach of the Implied Covenant

are indistinguishable from those caused by Respondent's breach of contract, and total Seventy-

One Thousand Seven-Hundred Twenty dollars and Eighty-Three cents ($71,720.83). Given the

overlap between the damages awarded in Count Two, this amount may only be recovered once.

18.   With respect to Count Four of Claimant's Demand alleging violations of

Massachusetts General Laws chapter 93A, §§ 2 and 11, I find that the Massachusetts unfair

business practices statute may be applied to Respondent's conduct in this case.  I find that

Respondent's alleged unfair and deceptive acts took place in substantial part in Massachusetts,

given that Respondent solicited investment from a Massachusetts resident using financial

forecasts that Respondent admits were false and that Respondent's false and misleading

information and communications were received in Massachusetts. Further, Claimant was located

in Massachusetts when he relied on Respondent's unfair and deceptive conduct and the financial

harm caused by Respondent's actions was incurred in Massachusetts.

19.   In addition, I find that Claimant's claim under M.G.L. c. 93A involves elements

of both tort and contract, and therefore may be adjudicated as part of the parties' agreement to

arbitrate claims arising from the E-Commerce Consulting Agreement. See *H1 Lincoln, Inc. v. S.*

*Washington St.,* LLC, 489 Mass. 1, 4, (2022) ("c. 93A claim is difficult to pigeonhole into

discrete tort or contract categories, as c. 93A violations tend to involve elements of both tort and

breach of contract, blurring the lines between the two"); *Kattar v. Demoulas*, 433 Mass. 1, 12

(2000) ("[t]he relief available under c. 93A is 'sui generis,' being neither wholly tortious nor

**Attachment CC**          **PX20**          **001407**

wholly contractual in nature. Hence, a cause of action under c. 93A is 'not dependent on traditional tort or contract law concepts for its definition'").

20.    I find that Claimant has proven that Respondent violated M.G.L. c. 93A, §§ 2 and 11. As detailed in the Direct Testimony of Mr. Genes and in the Affidavit of Mr. Monadjemi, I find that Respondent engaged in "unfair or deceptive acts or practices in the conduct of any trade or commerce" that are:

> within "at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) is immoral, unethical, oppressive, or unscrupulous; [and] (3) caused substantial injury to consumers or other businesses.

*H1 Lincoln, Inc., supra* 489 Mass. at 14.

21.    Specifically, I find that Respondent used a financial forecast that it has admitted was false to solicit Claimant's investment in Respondent's business and to secure his execution of the E-Commerce Consulting Agreement and payment of amounts due thereunder.

22.    In addition, Respondent engaged in a pattern of "stringing along" Claimant for its own benefit, a form of commercial extortion recognized by the Supreme Judicial Court of Massachusetts (the "SJC") as a violation of M.G.L. c. 93A. See *H1 Lincoln, Inc., supra*, 489 Mass. at 16, and the cases cited therein. As described by the Massachusetts SJC, "[s]tringing along tactics involve the use of a protracted 'pattern of conduct ... calculated to misrepresent the true situation' to the target business and thereby induce detrimental reliance on the target's part." Id. With the target's bargaining position weakened by its prolonged reliance on the perpetrator's misrepresentations, the target becomes vulnerable to the coercive pressures that are then applied. *Id.*, quoting *Spectrum Software, Inc. v. Forte Automation Sys., Inc.*, 858 F.3d 666, 674 (1st Cir. 2017) (describing how defendant had "strung [plaintiff] along" so as to "take advantage of [the plaintiff's] financial exposure" to impose new and adverse contract terms).

6

23.     In this case, after Claimant had paid a $50,000 Consulting Fee to Respondent and in addition paid thousands of dollars towards the purchase of inventory chosen by Respondent, he claims he was in a vulnerable position and desperate to recoup the money he had invested. On multiple occasions, the parties agreed that Respondent would not initiate further purchase orders of inventory until it could locate, reconcile, and sell the inventory it had already purchased but had ostensibly "lost" or, perhaps, used for its other purposes. Despite the parties' agreements to cease further purchases, Respondent continued to order more inventory at Claimant's expense, in some instances from vendors controlled by Respondent's owner. This inventory was to be delivered to Respondent's warehouse, yet Respondent told Claimant it was unable to locate the inventory. Respondent never sold any of the additional inventory through Claimant's e-commerce stores, never obtained credits on Claimant's behalf from the selling vendors, and never refunded any of the money to Claimant. By continuing to string Claimant along through promises that it would reconcile and sell his existing inventory to recoup the funds he had already expended, Respondent was able to avoid having Claimant terminate the parties' E-Commerce Consulting Agreement (as he had threatened to do) while it continued to charge Claimant monthly fees and ordered additional products using Claimant's funds, which products were delivered to Respondent and never applied to Claimant's accounts or sold in his e-commerce stores.

24.     Further, even after Claimant terminated the parties' contract and explicitly directed Respondent to discontinue charging any fees to his credit card, Respondent continued to charge fees until Claimant cancelled his credit card.

25.     I find that these actions, when viewed in totality with the other conduct detailed in the Direct Testimony and exhibits of Mr. Genes and the Affidavit of Mr. Monadjemi, constitute

7

unfair and deceptive acts, or practices declared unlawful by M.G.L. c. 93A, §§ 2 and 11, and the case law interpreting the statute. See *H1 Lincoln, supra*, 489 Mass. at 16; *Full Spectrum Software, supra*, 858 F.3d at 674 ("one business's stringing along of another to the other's detriment can satisfy" standard for unfair conduct under G. L. c. 93A, § 11); *Greenstein v. Flatley*, 19 Mass. App. Ct. 351, 356 (1985) (stringing along tactics involve the use of a protracted "pattern of conduct ... calculated to misrepresent the true situation" to the target business and thereby induce detrimental reliance on the target's part).

26.     I further find that Respondent engaged in these unlawful actions knowingly and willfully. Among other things, as detailed in Exhibit HH to the Direct Testimony of Mr. Genes, Respondent's employee Toneane Stamps admitted that she lied on Respondent's behalf to shield the truth about its unsuccessful business, which demonstrates that Respondent's conduct was both knowing and willful.

27.     Pursuant to M.G.L. c. 93A, § 11, where a finding is made for the Claimant, "recovery *shall* be in the amount of actual damages; *or up to three, but not less than two, times such amount* if the court finds that the use or employment of the method of competition or the act or practice was a *willful or knowing violation of said section two*" (emphasis added).

28.     I further find that the contractual limitation of liability for consequential damages and punitive damages found in the E-Commerce Consulting Agreement does not bar the award of multiple damages under M.G.L. c. 93A, § 11 as a matter of law. See *H1 Lincoln, supra*, 489 Mass. at 4, 25-26 (contractual limitation of liability provision provides no protection in an action under M.G.L. c. 93A, § 11, where the statutory violation was done willfully or knowingly).

29.     I find that Respondent's knowing and willful violations of M.G.L. c. 93A, §§ 2 and 11 caused Claimant to incur single damages in the amount of Seventy-One Thousand Seven

**Attachment CC**            **PX20**                              **001410**

Hundred Twenty dollars and Eighty-Three cents ($71,720.83), as set forth in the Direct Testimony of Mr. Genes. This single damage amount is indistinguishable from the damages caused by Respondent's breach of contract and may only be recovered once.

30.     In addition, pursuant to M.G.L. c. 93A, § 11, I award multiple damages (i.e. two times) to Claimant for a total of One-Hundred Forty-Three Thousand Four-Hundred Forty-One dollars and Sixty-Six cents ($143,441.66).

31.     M.G.L. c. 93A, § 11 provides: "If the court finds in any action commenced hereunder, that *there has been a violation of section two, the petitioner shall,* in addition to other relief provided for by this section and irrespective of the amount in controversy, *be awarded reasonable attorneys' fees and costs* incurred in said action" (emphasis added).

32.     I find that the Claimant has incurred attorneys' fees in the amount of Fifty-One Thousand Three-Hundred Thirty-Five dollars and Fifty cents ($51,335.50), in accordance with the Affidavit of James F. Radke. This total amount includes the $6,976.00 that I previously awarded as a sanction for Respondent's discovery violations, which I ordered Respondent to pay as a monetary sanction. Therefore, the discovery sanction shall not be awarded separately from and is included in the overall award of attorneys' fees.

33.     The administrative fees of the American Arbitration Association totaling $925.00 shall be borne by Respondent Passive Scaling, and the compensation of the Arbitrator totaling $10,395.00 shall be borne by Respondent Passive Scaling. Therefore, Respondent Passive Scaling shall reimburse the sum of $6,122.50 to Claimant Mathew Genes, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Claimant Mathew Genes.

9

**Attachment CC**              **PX20**              **001411**

34.     Claimant has indicated that he will not pursue any recovery under Count Five of his demand alleging Violations of the New Jersey Consumer Fraud Act, N.J. Stat. §56:8-2 et seq. Accordingly, I refrain from making any finding on Count Five.

35.     This Award is in full settlement of all claims, defenses, and counterclaims asserted, or which could have been asserted and submitted to this Arbitration. All claims not granted expressly herein are hereby denied.

## AWARD

Based on the record submitted and my Findings as recited above, the Respondent shall pay to Claimant the following:

| | |
|---|---|
| Single damages are included in the multiple damages in Court Four (Counts Two, Three, Four) | |
| Multiple damages (Count Four) | $143,441.66 |
| Attorneys' Fees | $51,335.50 |
| AAA Administration Fees paid by Claimant | $925.00 |
| Arbitrator's Compensation paid by Claimant | $5197.50 |
| TOTAL | $200,899.66 |

SO ORDERED,

Neil P. Linden, Esq.
AAA Arbitrator

DATED: January ___, 2024

I, Neil P. Linden, Esq., do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Final Award.

Neil P. Linden, Esq.
AAA Arbitrator

DATED: January 5, 2024

10



1040 North Kings Highway • Suite 100 • Cherry Hill, NJ 08034
Tel: 856-779-0300 • Fax:856-281-3778

Thomas B. O'Connell, Esquire
Direct: 856-437-4015
email:  toconnell@slgcollect.com

February 6, 2024

**VIA REGULAR AND CERTIFIED MAIL**

Passive Scaling, Inc.
c/o Bratislav Rozenfeld, Registered Agent
██████████████
Edgewater, NJ ████

RE:     <u>Matthew Genes v. Passive Scaling, Inc.</u>
        **Notice of Arbitration Award pursuant to <u>N.J.S.A.</u> 2A:23B-22**
        Our File No. 47881

Dear Mr. Rozenfeld:

        Enclosed, please find a copy of the Arbitrator's Award <u>Mathew Genes v. Passive Scaling, Inc.</u>, American Arbitration Association Case No. 01-23-0000-6460.

        Please note that the Arbitrator previously provided a copy of the Arbitrator's Award was previously to your counsel in that matter, who are copied here.

                        Very truly yours,
                        SALDUTTI LAW GROUP

                        **/s/  Thomas B. O'Connell**
                        _____
                        THOMAS B. O'CONNELL, ESQUIRE

TBO/

cc:     Mikhail Usher, Esq., via email:  musheresq@gmail.com
        Alex@usherlegal.com

Philadelphia, PA    ●    Cherry Hill, NJ    ●    Lawrenceville, NJ

www.SLGCollect.com

**Attachment CC**          **PX20**          **001413**

**SALDUTTI LAW GROUP**
Thomas B. O'Connell, Esquire - 031102008
Robert L. Saldutti, Esquire – 006871992
1040 N. Kings Highway, Suite 100
Cherry Hill, NJ 08034
(856) 779-0300
Attorneys for Plaintiff/47881

| | |
|---|---|
| MATHEW GENES, <br><br> Plaintiff, <br><br> v. <br><br> PASSIVE SCALING INC <br><br> Defendant. | SUPERIOR COURT OF NEW JERSEY <br> LAW DIVISION <br> CAMDEN COUNTY <br><br> DOCKET NO. L-465-24 <br><br> Civil Action <br><br> **FINAL JUDGMENT BY DEFAULT** <br> **AND TAXING OF COSTS** |

THIS MATTER coming before the court by Thomas B. O'Connell, Esquire, from the Saldutti Law Group, appearing on behalf of the Plaintiff and it appearing that a Complaint was filed in this matter and that the Defendant was served with the Summons and Complaint and it further appearing that no Answer or appearance has been entered on behalf of the Defendant and that the time within which to file a responsive pleading having past and default having been entered and proper notice having been given pursuant to R.4:43-2(d) and other good cause having been shown;

IT IS on ____14____ day of ____Mcy____, 2024 that judgment be and hereby is entered against the Defendant, PASSIVE SCALING INC, and in favor of the Plaintiff, MATHEW GENES, in the amount of **$200,899.66**, and attorney allowance for **$40.00**, for a total of **$200,939.66**.

_____
**Michael J. Kassel, J.S.C.**

Based on Submittals
by O'Connell Esq
5/7/24

**Plaintiff or Filing Attorney Information:**

Name  Darryl Hester

NJ Attorney ID Number

Address  2706 Lewis Ave., Suitland MD 20746

Telephone Number  202-321-8168

Date Filed  3/3/23
Payment #  2833
CA  CK  MO  JACS  ACH  CR
Amount  250-
Payor  Hester
Batch#/EF#  908

FINANCE DIVISION
BERGEN COUNTY
2023 MAR -3  P 3:22

---

Superior Court of New Jersey

_____ Division _____ County

_____ Part

Darryl Hester _____,
                                Plaintiff,

v.

Passive Scaling Inc. _____

_____,
                                Defendant(s).

Docket No: _____
              (to be filled in by the court)

Civil Action

**Complaint**

CIVIL DIVISION
LAWYER'S OFFICE
2023 MAR -6  P 3:35
RECEIVED

---

Plaintiff, Darryl Hester _____, residing at _____
              (your name)

2706 Lewis Ave., Suitland MD 20746 _____, City of  Suitland
(your address)                                                              (your city or town)

County of  Prince George's _____.
              (your county)

Maryland

State Of ~~New Jersey~~, complaining of defendant, states as follows:

1. On  January 30 _____, 2023 _____,  Passive Scaling Inc _____, Defendant
                                                            (name of person being sued)

(Summarize what happened that resulted in your claim against the defendant.  Use additional pages if necessary.)

made me aware that the Amazon Store they set up for me was suspended again. The contract entered into on October 1, 2021 states that if the store is suspended twice a refund can be requested. The store has been suspended more than two times. In addition, there is $10,000 in merchandise sitting in a warehouse under the defendents control which has not been released to me. Further more a guarantee of profitability was breached on March 2023. Due refund of entire consulting fee of $30,000. Since $0 in profit.

---

The defendant in this action resides at ███████████████  Edgewater NJ ███████████,
                                                              (defendant's address)

In the County of  Bergen  [▼] _____, State of New Jersey.
                      (name of county where defendant lives)

2. Plaintiff is entitled to relief from defendant under the above facts.

---

3. The harm that occurred as a result of defendant's acts include: (list each item of damage and injury)

1. Consulting fees of $30,000

2. Merchandise of $10,000

3. Court Fees $800

Wherefore, plaintiff requests judgment against defendant for damages, together with attorney's fees, if applicable, costs of suit, and any other relief as the court may deem proper.

Dated: 03/01/2023          Signature: _____

**Attachment CC**                    **PX20**                    **001416**

## CERTIFICATION OF NO OTHER ACTIONS

I certify that the dispute about which I am suing is not the subject of any other action pending in any other court or a pending arbitration proceeding to the best of my knowledge and belief. Also, to the best of my knowledge and belief no other action or arbitration proceeding is contemplated. Further, other than the parties set forth in this complaint, I know of no other parties that should be made a part of this lawsuit. In addition, I recognize my continuing obligation to file and serve on all parties and the court an amended certification if there is a change in the facts stated in this original certification.

Dated:  03/01/2023                      Signature:  _____

**OPTIONAL:  If you would like to have a judge decide your case, do not include the following paragraph in your complaint.  If you would prefer to have a jury to decide your case, please sign your name after the following paragraph.**

## JURY DEMAND

The plaintiff demands trial by a jury on all of the triable issues of this complaint, pursuant to New Jersey Court *Rules* 1:8-2(b) and 4:35-1(a).

Dated:  _____    Signature:  _____

**Attachment CC**                    **PX20**                    **001417**

```
BERGEN COUNTY COURTHOUSE
SUPERIOR COURT LAW DIV
BERGEN COUNTY JUSTICE CTR RM 415
HACKENSACK        NJ 07601-7680


TELEPHONE - (201) 221-0700,CHRIS CHOLEWA        TEAM 002
COURT HOURS:  8:30 AM - 4:30 PM                         DATE SEPTEMBER 22, 2023

DOCKET NO. BER L -001246 23
NAME: HESTER DARRYL  VS PASSIVE SCALING INC
```

     IT IS HEREBY ORDERED THAT UNDER RULES 1:13-7 OR 4:43-2, THE ABOVE MATTER HAS BEEN DISMISSED WITHOUT PREJUDICE FOR LACK OF PROSECUTION. THIS ORDER CLOSES FILE. JUDGMENTS PREVIOUSLY ENTERED IN THIS CASE ARE NOT AFFECTED BY THIS ORDER.


     A FORMAL NOTICE OF MOTION IS NOW REQUIRED TO RESTORE THIS CASE TO ACTIVE TRIAL STATUS.


```
   HON MARY F. THURBER                         DARRYL HESTER
                                               2706 LEWIS AVE
_____
        JUDGE                                  SUITLAND        MD 20746
```

**LUM, DRASCO & POSITAN LLC**
103 Eisenhower Parkway – Suite 401
Roseland, New Jersey 07068-1049
(973) 403-9000
(973) 403-9021 (FAX)
NJ Attorney ID #**002181973**
Attorneys for Plaintiff, James Monaghan

---

|  |  |
|---|---|
| | SUPERIOR COURT OF NEW JERSEY |
| | LAW DIVISION: BERGEN COUNTY |
| | DOCKET NO. BER-L-001486-24 |
| JAMES MONAGHAN, | |
| Plaintiff, | Civil Action |
| -vs- | **AMENDED COMPLAINT** |
| PASSIVE SCALING, INC. | |
| Defendant. | |

Plaintiff, James Monaghan, by way of Amended Complaint against the Defendant, Passive Scaling, Inc. alleges and says:

1.    Plaintiff, James Monaghan ("Plaintiff") is a resident of Spicewood, Texas.

2.    Defendant, Passive Scaling, Inc. ("Passive Scaling" or "Defendant") is a New Jersey corporation with a principal business address located at 223 Veterans Boulevard, Carlstadt, in the County of Bergen, New Jersey.

**<u>Nature of the Case</u>**

3.    This action is brought pursuant to <u>N.J.S.A.</u> 2A:23B-22 to confirm the final award entered on December 12, 2023 by the American Arbitration Association ("AAA") before arbitrator Elaine E. Feldman, Esq.

## Factual Background

5.      On October 12, 2021 Plaintiff entered into an E-Commerce Consulting Agreement ("Agreement") with Passive Scaling. Annexed hereto as **Exhibit A** is a true copy of the relevant portions of the Agreement.[1]

6.      The Agreement provided that Passive Scaling would maintain Plaintiff's storefronts on the Amazon platform, review and source products and respond to customer inquiries. **Exhibit A** at §1.

7.      Plaintiff agreed and did pay Passive Scaling $30,000.00 for services to be rendered by Passive Scaling pursuant to the Agreement.

8.      A dispute arose under the Agreement where Plaintiff alleged Passive Scaling breached its obligations in failing to provide services to maintain his e-commerce store in operation and in compliance with all relevant regulations and also failed to provide Plaintiff with the second store under the Agreement.

9.      Plaintiff filed with the AAA for breach of the Agreement, in addition to other causes of action, pursuant to Paragraph 13(e) of the Agreement.

10.      Elaine E. Feldman, Esq. was appointed arbitrator (hereinafter the "Arbitrator") through the AAA Commercial Arbitration Tribunal, Case Number 01-23-002-8196.

11.      The matter was arbitrated on November 29, 2023 on notice to Defendant and Defendant's counsel, as set forth in the award of arbitration. A true copy of the AAA Commercial Arbitration Tribunal Award ("Arbitration Award") dated December 12, 2023 is annexed hereto as **Exhibit B**.

---

[1] Only the relevant portions of the Agreement have been provided as Exhibit A in an abundance of caution to protect the parties' interests. A full copy of the Agreement will be provided to the Court on request.

**Attachment CC**                     **PX20**                              **001420**

12.     Defendant failed to appear at the arbitration despite notice to Defendant's counsel.

13.     The Arbitrator entered an Arbitration Award for $30,000.00 with respect to Plaintiff's breach of contract claim.

14.     Pursuant to Paragraph 13(e) of the Agreement requiring that "all administrative fees and expenses of such arbitration proceeding will be divided equally among the parties" the Arbitrator required that administrative fees and expenses of the AAA totaling $1,772.50 and compensation of the Arbitrator of $1,350.00 would be shared equally by the parties, with Defendant reimbursing Plaintiff the sum of $1,561.25, for Defendant's share of the costs, pursuant to the Award. **Exhibit B** at §13(e).

15.     The AAA delivered the Arbitrator's final award on December 13, 2023 to Defendant's counsel by way of U.S. mail, certified mail and email via letter, a true copy of which letter is annexed hereto as **Exhibit C**.

16.     The total sum of damages and shared costs  was to be paid within thirty (30) days of the signed award or by January 12, 2024.

17.     To date, Defendant has failed to pay the outstanding sum of $30,000.00 and failed to pay the $1,561.25 due and owing for costs and fees of arbitration.

18.     This action is instituted pursuant to <u>N.J.S.A.</u> 2A:23B-22.

**WHEREFORE**, Plaintiff, James Monaghan, demands judgment  pursuant to <u>N.J.S.A.</u> 2A:23B-2 as follows:

A.     Confirming in all respects the Arbitration Award entered by the AAA Commercial Arbitration Tribunal, Arbitrator Elaine E. Feldman, Esq., as referred to in this Amended Complaint and annexed hereto as Exhibit B;

B.      Entering Judgment against Defendant in the amount of the Arbitration Award of $31,561.25;

C.      For post-judgment interest and costs to be taxed; and

D.      For attorneys' fees, costs and all other relief this Court deems equitable and just.

**LUM. DRASCO & POSITAN, LLC**
Attorneys for Plaintiff, James Monaghan


By:    /s *Dennis J. Drasco*
          DENNIS J. DRASCO

Dated:  May 10, 2024


## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Dennis J. Drasco, Esq., is designated as trial counsel for Plaintiff.

**LUM. DRASCO & POSITAN, LLC**
Attorneys for Plaintiff, James Monaghan


By:    /s *Dennis J. Drasco*
          DENNIS J. DRASCO

Dated: May 10, 2024

**Attachment CC**       **PX20**       **001422**

## CERTIFICATION PURSUANT TO RULE 4:5-1

I hereby certify that, to the best of my knowledge and belief, the above matter in controversy is not presently the subject of any pending action and no other action or arbitration is contemplated; and there is no non-party who should be joined in the action pursuant to Rule 4:28 or subject to joined pursuant to Rule 4:29-1(b).

**LUM. DRASCO & POSITAN, LLC**
Attorneys for Plaintiff, James Monaghan

By:   /s *Dennis J. Drasco*
DENNIS J. DRASCO

Dated:  May 10, 2024

## CERTIFICATION PURSUANT TO RULE 1:38-7

Pursuant to R. 1:38-7, the undersigned hereby certifies all personal identifiers have been removed from the documents being submitted at this time.

**LUM. DRASCO & POSITAN, LLC**
Attorneys for Plaintiff, James Monaghan

By:   /s *Dennis J. Drasco*
DENNIS J. DRASCO

Dated: May 10, 2024

**Attachment CC**                          **PX20**                          **001423**

# Exhibit "A"

PX20



# Delivering on Your eCommerce Objectives

**Project Proposal**

Amazon Automation

**Delivered on**

October 12, 2021

**Client**

James Monaghan

**Company**

PASSIVE SCALING INC

# E-COMMERCE CONSULTING AGREEMENT

This E-Commerce Consulting Agreement ("Agreement"), is dated as of October 12, 2021 by and between PASSIVE SCALING INC, a New Jersey Corporation company, whose address is 223 Veterans Blvd., Carlstadt, NJ 07020 (hereinafter "Consultant"), and James Monaghan, (hereinafter "Client").

WHEREAS, Client desires to engage Consultant's services, as an independent contractor, upon the terms and conditions herein set forth; and

WHEREAS, Consultant desires to render consulting services to Client upon the terms and conditions herein set forth;

NOW, THEREFORE, Consultant and Client (together, the "Parties"), for $30,000.00 and other good and valuable consideration, the receipt and sufficiency are hereby mutually acknowledged, agree to the following terms and conditions whereby Consultant shall consult Client in connection with two (2) e-commerce stores on the Amazon platform, (including one (1) sub-account), (the "Stores"):

1. **CONSULTANT'S SERVICES - Consultant agrees to perform the following services ("Services"):**
   A. Maintain Client's Stores, including configuring the Amazon storefronts and configuring the front and back end systems necessary to manage the Stores.
   B. Review, research, source, select, and list products for the Client's Stores.
   C. Respond to customers' phone and email inquiries within one (1) business day in support of Client's Stores and shall exercise good faith efforts to resolve customer inquiries, handle product returns, and manage billing matters.
   D. Maintain oversight of Client's Stores and its financial performance; however, Consultant shall have no obligation to, and does not intend to, provide financial advice to Client concerning the operation of Client's Stores (Client shall confer with its professional financial advisors concerning all financial inquiries.)



2021-10-12 18:51:24 (PST)

D. **Amazon Terms and Conditions** - Client hereby understands that Amazon, from time to time, with or without cause, can and does suspend accounts for various reasons, some of which may not be obvious or justified in Client's view. In the event Client's Stores is suspended, Company will assist in sending an appeal on behalf of the Client and working with Amazon to remedy the situation at no extra cost. Consultant makes no representations or warranties of any kind, however, that Amazon will in such cases return Client's Stores to active status. Furthermore, Client agrees and understands that Consultant makes no guarantees or representations regarding the Stores in relation to any Amazon policy, whether currently in effect or as may be amended by Amazon from time to time. Client understands that Consultant has no control over or input in when and whether Amazon elects to change any of its policies. However, the Services provided by Consultant to Client pursuant to this Agreement shall where practical be consistent with Amazon's current policies. In the event in which Client's store is suspended beyond a 30 day period, and no revenue is earned during this period, the "Maintenance Fee" of one hundred ninety nine ($199.00) USD per month or 35% of net profits will be waived.

13. **GENERAL PROVISIONS -**

A. **Non-exclusivity** - Each party is free to contract with others with respect to the subject matter of this Agreement subject to the limitations as to Client under Section 6 and Section 9 of this Agreement.

B. **Relationship of the Parties –** Nothing herein contained shall constitute a partnership or a joint venture between the Parties. Consultant is performing its services to Client as an independent contractor and not as Client's agent or employee. There is no third-party beneficiary to this Agreement.

C. **Notices -** All notices to either party shall be sent electronically to the email address(es) provided by each Party to the other and as otherwise set forth below. All notices to Consultant shall be sent to info@passivescaling.com. If to Client, notice shall be sent electronically to ████████████████████ Alternatively, such written notice will also be deemed given upon personal delivery, or on receipt or refusal if sent by U.S. first class certified or registered mail, postage prepaid, return receipt requested, or by a recognized private delivery service, to the addresses stated on Page 1 of this Agreement.



2021-10-12 (6:51:24) (PDT)

D. **Severability, Headings -** If any provision is held to be invalid or unenforceable for any reason, the remaining provisions will continue in full force and effect. In such event, the Parties hereby acknowledge their intent to make such invalidated provision, or part of such provision, as to be deemed replaced with a valid provision or part of provision that most closely approximates and gives effect to the intent of the invalid provision. Any such modification shall revise the existing invalid provision, or part thereof, only as much as necessary to make the invalidly-held provision otherwise valid. Headings are used for convenience of reference only, and in no way define, limit, construe or describe the scope or extent of any section of this Agreement.

E. **Dispute Resolution -** Except where otherwise expressly set forth in this Agreement, any dispute or claim arising out of or relating to this Agreement shall only be resolved by binding arbitration. The arbitration of any dispute or claim shall be conducted in accordance with the American Arbitration Association ("AAA") rules, as modified by this Agreement, which shall take place in Miami-Dade County, Florida. Any arbitration proceeding, determination, or award, shall be confidential, and neither Party may disclose the existence, content or results of any arbitration, except as may be required by law or for purposes of enforcement. Judgment on any arbitration award may be entered in any court having proper jurisdiction. All administrative fees and expenses of such arbitration proceeding will be divided equally between the parties, though each Party will bear its own expense of counsel, experts, witnesses and preparation and presentation of evidence at the arbitration (except where attorneys' fees and costs shall be awarded pursuant to Section 13.(L)). IF FOR ANY REASON THIS ARBITRATION CLAUSE IS DEEMED INAPPLICABLE OR INVALID, THE PARTIES FOREVER AND WITHOUT EXCEPTION WAIVE, TO THE FULLEST EXTENT ALLOWED BY LAW, ANY RIGHT TO PURSUE ANY CLAIMS ON A CLASS OR CONSOLIDATED BASIS OR IN A REPRESENTATIVE CAPACITY. No action, regardless of form, arising out of or in conjunction with the subject matter of this Agreement may be brought by either Party more than one (1) year after the cause of action arose.

F. **Amendment -** This Agreement cannot be amended except in writing and signed by both Parties.

G. **Electronic Signatures -** This Agreement may be executed by electronic means and in any number of counterparts, each of which when so executed and delivered will be deemed an original, and all such counterparts together will constitute one and the same instrument.



2021-10-12 18:51:24 (PDT)

Attachment CC          PX20                                          001428

# Signature Page

IN WITNESS WHEREOF, this Agreement is deemed executed as of the of the last execution date below.

**CLIENT:**

By; James Monaghan authorized representative and agent for service of process Date: October 13, 2021

Principal of Client acknowledges and agrees to be bound by all of the provisions of this Agreement applicable to Client, as if expressly a party hereto. Accepted and Agreed to by Principal of Client:

*James Monaghan*
2021-10-12 16:51:24 (PDT)
_____

James Monaghan

**CONSULTANT:**

By: PASSIVE SCALING INC. Amanada Pereman, Operations Manager, authorized representative and agent for service of process.

Date:  October 13, 2021

*Amanada Peremen*
2021-10-12 21:05:14 (PDT)
_____

Amanada Peremen

# Exhibit "B"

AMERICAN ARBITRATION ASSOCIATION
COMMERCIAL ARBITRATION TRIBUNAL

JAMES MONAGHAN, an individual

Claimant,

VS.

PASSIVE SCALING, INC., a New Jersey Corporation

Respondent.

Case Number: 01-23-0002-8196

## EX-PARTE AWARD OF ARBITRATOR

I, ELAINE E. FELDMAN, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties on October 12, 2021 and having been duly sworn, and having heard and considered the proofs and testimony of the Claimant, commenced a Final Hearing on November 29, 2023 via Zoom videoconference. The Claimant was represented by Oscar A. Gomez, Esq. of EPGD Attorneys of Law, P.A. and the Respondent represented by Mikhail Usher, Esq. of Usher Law group P.C. failed to appear at the Final Hearing after due notice in accordance with the Rules of the American Arbitration Association. The Arbitrator hereby AWARDS as follows:

The Claimant's Claim for breach of contract is GRANTED. Claimant is hereby Awarded against the Respondent the sum of ($30,000.00) THIRTY THOUSAND DOLLARS. The sum shall be paid within 30 days of the signed Award.

The Claimant's Claim for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA") is DENIED.

The administrative fees and expenses of the American Arbitration Association totaling $1,772.50 and the compensation of the arbitrator totaling $1,350.00 shall be borne equally by both parties. Therefore, Respondent shall reimburse Claimant the sum of $1,561.25, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by the Claimant.

This Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are hereby denied.

December 12, 2023
Date

Elaine E. Feldman
Elaine E. Feldman, Arbitrator

# Exhibit "C"



AMERICAN
ARBITRATION
ASSOCIATION®  | INTERNATIONAL CENTRE
FOR DISPUTE RESOLUTION®

Southeast Case Management Center
John Bishop
Vice President
2200 Century Parkway
Suite 300
Atlanta, GA 30345
Telephone: (404)325-0101
Fax: (877)395-1388

December 13, 2023

Oscar A. Gomez, Esq.
EPGD Attorneys at Law, PA
777 SW 37th Avenue
Suite 510
Miami, FL 33135
Via Email to: oscar@epgdlaw.com

Mikhail Usher, Esq.
Usher Law Group P.C.
1022 Avenue P
2nd Floor
Brooklyn, NY, NY 11223
Via US and Certified Mail and Email to: musheresq@gmail.com
9489009000276508765430

Case Number: 01-23-0002-8196

James Monaghan, an individual
-vs-
Passive Scaling Inc., a New Jersey Corporation,

Dear Parties:

The American Arbitration Association (the AAA) hereby transmits the enclosed duly executed award in the above-referenced matter. Please direct all further communication to the AAA. The parties will have no further direct communication with the arbitrator(s).

The AAA has conducted a financial reconciliation, and each party will receive a separate accounting for this matter based on that reconciliation. Any party with an outstanding balance will receive monthly invoices until the balance is paid in full.

Any outstanding balances the parties may owe the AAA for the administrative fees or arbitrator compensation and expenses incurred during the case remain due and payable to the AAA even after the award is issued, regardless of whether the award apportioned these costs between the parties.

Please note that the AAA WebFile® ECF Guidelines will not apply after closing of the case. Therefore, any additional submissions from the parties in this matter should be submitted via email to the AAA, with copies sent to all other parties.

Pursuant to AAA policy, in the normal course of our administration, we may maintain certain electronic case documents in our electronic records system. Such electronic documents may not constitute a complete case file. Other than certain types of documents that the AAA maintains indefinitely in our system, the AAA will destroy electronic case documents 18 months after the date of this correspondence.

We appreciate the opportunity to assist you in resolving your dispute. As always, please do not hesitate to contact

me if you have any questions.

Sincerely,

*//s/ Paris Wilkerson*

Paris N Wilkerson
Manager of ADR Services
Direct Dial: (404)320-5133
Email: ParisWilkerson@adr.org
Fax: (877)395-1388

cc:
Alex Susi, Esq.
Juan Andrade Duenas
Elaine E. Feldman, Esq.

*Prepared by the Court*

**Hon. Michael N. Beukas, J.S.C.**
Superior Court of New Jersey
Bergen County Justice Center
10 Main Street, Rotunda Chambers 253
Hackensack, New Jersey 07601
(201) 221-0700 ext. 25745

| | |
|---|---|
| JAMES MONAGHAN, | SUPERIOR COURT OF NEW JERSEY |
| | LAW DIVISION: BERGEN COUNTY |
| Plaintiff, | |
| | DOCKET NO.: BER-L-1486-24 |
| vs. | |
| | Civil Action |
| PASSIVE SCALING, INC. | |
| | **ORDER TO SHOW CAUSE** |
| | **SUMMARY ACTION** |
| Defendants. | |

**THIS MATTER** being brought before the court by Dennis J. Drasco, Esq. of Lum, Drasco

& Positan, LLC, attorneys for plaintiff, James Monaghan, seeking relief by way of summary action

pursuant to R. 4:67-1(a), based upon the facts set forth in the verified complaint filed herewith in

the form of the entry of an order confirming the arbitration award; and the court having determined

that this matter may be commenced by order to show cause as a summary proceeding, pursuant to

N.J.S.A. 2A:23B-22, R. 4:67-1 and R. 4:67-2, and for good cause having been shown;

**IT IS** on this **19th day** of **March, 2024**;

**ORDERED** that **defendant, Passive Scaling, Inc., <u>appear with designated legal counsel</u>,** pursuant to <u>R.</u> 1:21-1(c), and show cause on **Friday, May 3, 2024, at 9:00 a.m., <u>in person</u>,** before the Hon. Michael N. Beukas, J.S.C., Superior Court of New Jersey, Bergen County Justice Center, 10 Main Street, Rotunda Chambers 253, Hackensack, New Jersey 07601, or as soon thereafter as counsel can be heard, why judgment should not be entered for:

A.   **An order confirming the final arbitration award made by Elaine E. Feldman, Esq., entered on December 12, 2023; and**

B.   **Granting such other relief as the court deems equitable and just; and it is further**

   **ORDERED** that:

   1.   A copy of this order to show cause, verified complaint and all supporting affidavits or certifications, and legal briefs submitted in support of this application shall be served upon defendant, Passive Scaling, Inc., upon its registered agent, **<u>personally</u>, and <u>by certified mail, return receipt requested</u>, and <u>by first class regular mail</u>,** postage prepaid, within **ten (10) days** of the date hereof, in accordance with <u>R.</u> 4:4-3 and <u>R.</u> 4:4-4, this being original process.

   2.   Plaintiff, James Monaghan, shall file with the court his proof of service of the pleadings on defendant, Passive Scaling, Inc., no later than **three (3) days** before the return date.

   3.   Defendant, Passive Scaling, Inc., by and through designated legal counsel pursuant to <u>R.</u> 1:21-1(c), shall file and serve a written answer, an answering affidavit or a motion returnable on the return date to this order to show cause, and the relief requested in the verified complaint, and proof of service of the same, by **April 19, 2024.**  The answer, answering affidavit or a motion, as the case may be, must be filed with the Clerk of the Superior Court of New Jersey in the county listed above and a copy of the papers must be sent directly to the Hon. Michael N. Beukas, J.S.C., 10 Main Street, Rotunda Chambers 253, Hackensack, New Jersey 07601.

4.  Plaintiff, James Monaghan, must file and serve any written reply to defendant's order to show cause opposition by **April 26, 2024**. The reply papers must be filed with the Clerk of the Superior Court in the county listed above and a copy of the reply papers must be sent directly to the chambers of the Hon. Michael N. Beukas, J.S.C., 10 Main Street, Rotunda Chambers 253, Hackensack, New Jersey 07601.

5.  If defendant, Passive Scaling, Inc. does not file and serve opposition to this order to show cause, the application will be decided on the papers on the return date and relief may be granted by default, provided that the plaintiff files a proof of service and a proposed form of order at least **three (3) days** prior to the return date.

6.  If the plaintiff has not already done so, a proposed form of order addressing the relief sought on the return date (along with a self-addressed return envelope with return address and postage) must be submitted to the court no later than **three (3) days** before the return date.

7.  Defendant, Passive Scaling, Inc. take notice that the plaintiff has filed a lawsuit against you in the Superior Court of New Jersey, Law Division. The verified complaint attached to this order to show cause states the basis of the lawsuit. If you dispute this complaint, your attorney, must file a written answer, an answering affidavit or a motion returnable on the return date to the order to show cause and proof of service before the return date of the order to show cause.

These documents must be filed with the Clerk of the Superior Court in the county listed above. A list of these offices is provided. Include a $ 175.00 filing fee payable to the "Treasurer State of New Jersey." You must also send a copy of your answer, answering affidavit or motion to the plaintiff's attorney whose name and address appear above, or to the plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve your answer, answering affidavit or motion (with the fee) or judgment may be entered against you by default.

**Attachment CC**                     **PX20**                     **001437**

8.      If you cannot afford an attorney, you may call the Legal Services office in the county in which you live.  A list of these offices is provided.  If you do not have an attorney and are not eligible for free legal assistance you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

9.      The court will entertain argument, but not testimony, on the return date of the order to show cause, unless the court and parties are advised to the contrary no later than **three (3) days** before the return date.

Hon. Michael N. Beukas, J.S.C.

# Exhibit "C"

```
Status Report For:      PASSIVE SCALING INC
Report Date:            3/21/2024
Confirmation Number:    240813298122
```

## IDENTIFICATION NUMBER, ENTITY TYPE AND STATUS INFORMATION

```
Business ID Number:     0450602727
Business Type:          DOMESTIC PROFIT CORPORATION
Status:                 REVOKED FOR NOT FILING ANNUAL REPORT FOR 2
                        CONSECUTIVE YEARS
Original Filing Date:   02/08/2021
Stock Amount:           200
Home Jurisdiction:      NJ
Status Change Date:     NOT APPLICABLE
```

## REVOCATION/SUSPENSION INFORMATION

```
DOR Suspension Start    09-16-2023
Date:
DOR Suspension End      N/A
Date:
Tax Suspension Start    N/A
Date:
Tax Suspension End      N/A
Date:
```

## ANNUAL REPORT INFORMATION

```
Annual Report Month:    FEBRUARY
Last Annual Report      N/A
Filed:
Year:                   N/A
```

## AGENT/SERVICE OF PROCESS (SOP) INFORMATION

```
Agent:                  BRATISLAV ROZENFELD
Agent/SOP Address:      ▮▮▮▮▮▮▮▮▮▮ , EDGEWATER, NJ, ▮▮▮
Address Status:         DELIVERABLE
Main Business Address:  ▮▮▮▮▮▮▮▮▮▮ EDGEWATER, NJ, ▮▮▮
Principal Business      N/A
Address:
```

## ASSOCIATED NAMES

```
Associated Name:        N/A
Type:                   N/A
```

## PRINCIPALS

Following are the most recently reported officers/directors (corporations), managers/members/managing members (LLCs), general partners (LPs), trustees/officers (non-profits).

Title:        OTHER
Name:         BRATISLAV ROZENFELD ,
Address:      ███████████████      EDGEWATER, NJ, ████

FILING HISTORY -- CORPORATIONS, LIMITED LIABILITY COMPANIES, LIMITED PARTNERSHIPS AND LIMITED LIABILITY PARTNERSHIPS

To order copies of any of the filings below, return to the service page, https://www.njportal.com/DOR/businessrecords/Default.aspx and follow the instructions for obtaining copies. Please note that trade names are filed initially with the County Clerk(s) and are not available through this service. Contact the Division for instructions on how to order Trade Mark documents.

Charter Documents for Corporations, LLCs, LPs and LLPs

        Original Filing        2021
        (Certificate)Date:

Changes and Amendments to the Original Certificate:

        Filing Type            Year Filed
        REVOKED FOR FAILURE TO  2023
        PAY ANNUAL REPORTS

Note:
Copies of some of the charter documents above, particularly those filed before June 1988 and recently filed documents (filed less than 20 work days from the current date), may not be available for online download.

  • For older filings, contact the Division for instructions on how to order.
  • For recent filings, allow 20 work days from the estimated filing date, revisit the service center at https://www.njportal.com/DOR/businessrecords/Default.aspx periodically, search for the business again and build a current list of its filings. Repeat this procedure until the document shows on the list of documents available for download.

The Division cannot provide information on filing requests that are in process. Only officially filed documents are available for download.

**Attachment CC**          **PX20**          **001441**

# Exhibit "D"

```
          7  0  0  5  0  7
```

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: BERGEN COUNTY                          Docket No.  BER-L-001486-24

JAMES MONAGHAN
,Plaintiff(s)

                              - against -

PASSIVE SCALING, INC.
,Defendant(s)

                    AFFIDAVIT OF DUE DILIGENCE

I, THE UNDERSIGNED, UNDER PENALTY OF PERJURY, AM AND WAS ON THE DATES HEREIN
MENTIONED, OVER THE AGE OF EIGHTEEN YEARS AND NOT A PARTY TO THE ACTION,
ATTEMPTED TO SERVE THE FOLLOWING:

      COVER LETTER, ORDER TO SHOW CAUSE, VERIFIED COMPLAINT, EXHIBITS
      CIVIL CASE INFORMATION STATEMENT, LETTER BRIEF
      TRACK ASSIGNMENT NOTICE
      ORDER ENTERING JUDGMENT

AND THAT AFTER DUE SEARCH, CAREFUL INQUIRY AND DILIGENT ATTEMPTS AT THE

      RESIDENCE:   ▮▮▮▮▮▮▮▮▮
                   EDGEWATER NJ ▮▮▮▮▮▮

      ALTERNATE: UNKNOWN

I HAVE BEEN UNABLE TO MAKE DELIVERY ON ONE OF THE FOLLOWING NAMED:

      PASSIVE SCALING, INC.
      C/O BRATISLAV ROZENFELD, REGISTERED AGENT

THEREFORE PROCESS IS BEING RETURNED FOR THE FOLLOWING REASONS:

03/20/24 9:32 AM  PROPERTY IS A SINGLE-FAMILY HOUSE.
                  BOTH THE ENTITY AND SUBJECT ARE UNKNOWN AND
                  DO NOT EXIST AT THIS ADDRESS, AS PER CURRENT
                  FEMALE OCCUPANT.
                  NO FURTHER INFORMATION KNOWN.
                  SERVER RETURNING THIS REQ. FOR FURTHER REVIEW


                  SERVER: MATTHEW OSTROWSKI


SWORN AND SUBSCRIBED TO BEFORE ME THIS

  28  DAY OF  March    20 24

                                          Continued on next page
                    DGR Legal, Inc.
Attachment CC        Littleton Road, Morris Plains, NJ 07950-3000    001443    PX20
File #   26882.0001      (973) 403-1700  Fax (973) 403-9222     Work Order #   700507



700507

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: BERGEN COUNTY                        Docket No.  BER-L-001486-24

JAMES MONAGHAN
,Plaintiff(s)

                                    - against -

PASSIVE SCALING, INC.
,Defendant(s)

MELISSA GIAMBATTISTA
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires 9/17/2024

# Exhibit "E"

**Form A**

**Plaintiff or Filing Attorney Information:**

Name   Kenny Craig

NJ Attorney ID Number   (Pro Se)

Address   7927 Celosia Drive

Lansing, MI 48917

Email Address  kcraig06@yahoo.com

Telephone Number _____ ext. _____

|  |  |
|---|---|
| Kenny Craig _____ , <br> Plaintiff, <br><br> v. <br><br> Passive Scaling, LLC _____ , <br> Defendant(s). | Superior Court of New Jersey <br> Law Division <br> Hudson ____ ▾ ____ County <br> Docket Number  HUD-L-002343-23 <br><br><br> Civil Action <br><br> **Notice of Motion** |

To: Passive Scaling, LLC

▮▮▮▮▮▮▮▮▮▮▮

Edgewater, New Jersey, ▮▮▮▮

**TAKE NOTICE** that the undersigned will apply to the above named Court located at

583 Newark Ave  Jersey City, NJ 07306 _____,

on 03/01/2024 _____, at 9:00 a.m. for an **Order** to (describe relief requested):

Plaintiff comes before this court to request a Motion to Reconsider to Amend Default Judgement to include The FBA Machine, INC. and Bratislav Rozenfeld as additional defendants on a previous default judgment granted by this court.

_____

_____

_____

I will rely on the attached certification which contains the grounds for the relief sought.

Pursuant to *R*. 1:6-2(d), the undersigned: (check one)

■   Waives oral argument and consents to disposition on the papers.

☐   Requests oral argument if this matter is contested.

☐   Requests oral argument for the following reasons:

_____

_____

_____

A proposed form of Order is attached.

**Attachment CC**          **PX20**          001446          page 9 of 14

## Form A

## Court Dates

No pre-trial conference, arbitration proceeding, calendar call or trial date has been set except as follows: (If any dates have been scheduled, note them here; otherwise, state "none")

_____
_____
_____
_____
_____

## Discovery End Date

☐ Discovery in this matter is scheduled to be completed on _____.

■ A discovery end date has not been assigned to this matter.

## Certification Regarding Attempts to Resolve
### (Required for discovery and calendar motions – check one)

☐ I certify that I have personally discussed this matter with the attorney for the opposing party, or the opposing party if appearing *pro se*, in order to resolve the issues raised by this motion. This effort was not successful.

■ I certify that I have made a good faith effort to personally discuss this matter with the attorney for the opposing party, or with the party if appearing *pro se*, in order to resolve the issues raised by this motion. The effort I made included the following action: (specify attempts to confer):
I have made several attempts to reach the company and it's owner Bratislav Rozenfeld including certified mail and private service company to collect the debt on the default judgement granted by this court. Subject is avoiding civil process service and will not respond to any attempts to resolve this matter.
_____
_____
_____

☐ I certify that I have advised the attorney for the opposing party, or the party if appearing *pro se*, by letter that if I will make this motion if she/he continues to fail to comply with my discovery request.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

01/30/2024
Date

_Kenny Craig signature_
Signature

Kenny Craig
Print Name

**Form C**

**Plaintiff or Filing Attorney Information:**

Name   Kenny Craig

NJ Attorney ID Number   (Pro Se)

Address   7927 Celosia Drive

Lansing, MI 48917

Email Address   kcraig06@yahoo.com

Telephone Number _____ ext. _____

|  |  |
|---|---|
| Kenny Craig _____, <br> Plaintiff, <br><br> v. <br><br> Passive Scaling, LLC _____, <br> Defendant(s). | Superior Court of New Jersey <br> Law Division <br> Hudson ▼ County <br> Docket Number  HUD-L-002343-23 <br><br> Civil Action <br><br> **Order** |

This matter having been brought before the Court on Motion of ■ plaintiff / ☐ defendant for an Order (describe relief requested):

Plaintiff comes before this court to request a Motion to Reconsider to Amend Default Judgement to include The FBA Machine, INC. and Bratislav Rozenfeld as additional defendants on a previous default judgment granted by this court.

_____

_____

_____

_____

and the Court having considered the matter and for good cause appearing,

On this ___ day of _____, 20__, it is **ORDERED** as follows:

_____

_____

_____

_____

_____

_____

_____

_____

☐ **Opposed**      ☐ **Unopposed**      _____

                                                         **J.S.C.**

Revised 08/15/2022, CN 10555      **Attachment CC**      **PX20**      **001448**   page 14 of 14

**Form B**

**Plaintiff or Filing Attorney Information:**

Name  Kenny Craig

NJ Attorney ID Number  (Pro Se)

Address  7927 Celosia Drive
 Lansing, MI 48917

Email Address  kcraig06@yahoo.com

Telephone Number _____ ext. ____

|  |  |
|---|---|
| Kenny Craig _____,<br>                              **Plaintiff,** | Superior Court of New Jersey<br>Law Division<br>Hudson  ☐  County<br>Docket Number  HUD-L-002343-23 |
|                    v. | |
| Passive Scaling, LLC _____,<br>                              **Defendant(s).** | Civil Action<br>**Certification in Support of Motion** |

I, Kenny Craig _____, am the (check one) ■ plaintiff /☐ defendant in the above-captioned matter.  I make this certification in support of my motion to: (state what you want the court to do)
Plaintiff comes before this court to request a Motion to Reconsider to Amend Default Judgement to include The FBA Machine, INC. and Bratislav Rozenfeld as additional defendants on a previous default judgment granted by this court.

_____

_____

This motion should be granted because: (State the basis for your motion and why is should be granted.  Use extra paper if necessary.)
On September 15th, 2023 the Honorable Kimberly Espinales-Maloney, Judge in the Superior Court of New Jersey Law Division in Hudson County, granted the plaintiff a default Judgement in the amount of $30,000 dollars against Passive Scaling, LLC which is owned by Mr. Bratislav Rozenfeld.  On September 29th, 2023 the same court issued a writ of Execution to levi the bank account of Passive Scaling, LLC.  Plantiff paid the processing fees and sent the writ to the Hudson County Sheriff's Office Civil Process Unit with the banking account information of the defendant.  The sheriff's office informed the plantiff that the writ could not be (see attached)...

I certify that the above statements made by me are true and that if any of the statements are willfully false, I am subject to punishment.

01/30/2024
Date

_Signature_

Kenny Craig
Print Name

... executed because on October 13th, 2023 the bank informed them that the account was closed and no further information available. Repeated attempts to reach Mr. Bratislav Rozenfeld the owner of Passive Scaling, LLC was unsuccessful and civil process attempts were avoided. On 11/03/23 plaintiff hired a private investigator and paid ACS Investigations, LLC. $693.06 to conduct an asset search to obtain banking information and locations for Passive Scaling, LLC. On December 1st, 2023 plaintiff received a report back from the investigation revealing that Passive Scaling, LLC no longer had any banking assets and appeared to no longer be in business. Plaintiff made a check with the New Jersey Dept of Treasury Division of Revenue and Enterprise Services and discovered that the owner of Passive Scaling, LLC, Mr. Rozenfeld, had filed for a new business "The FBA Machine" and a new business ID number (xxxxxx1950). Plaintiff then searched the internet and discovered that Mr. Rozenfeld had created a new company and webpage with the new company name and logo operating exactly like his previous company Passive Scaling, LLC. Mr. Rozenfeld has closed down one company and created a new one to avoid further lawsuits, penalties, and is avoiding civil process service to defy the court's judgment and execution of the writ issued by the court. "The FBA Machine" webpage: https://thefbamachine.co/ identical to "Passive Scaling" webpage: https://passivescaling.com/ which has now been taken down. The FBA Machine's page is using the same tactics, videos, and language used by Mr. Rozenfeld to lure clients into the same kind of scam as listed on his previous company Passive Scaling's page, that the court granted the plaintiff relief from in the original court filings. The defendant is denying the plaintiff due process by taking these evasive actions. After further research, plaintiff was provided the banking information and address of Mr. Rozenfeld's new company the FBA Machine, INC. Plaintiff is therefore asking this court to grant this Motion to Reconsider and amend the previous default judgment against Passive Scaling, LLC to include The FBA Machine, INC., and Mr. Bratislav Rozenfeld as additional defendants because he is now operating The FBA Machine, INC. in place of Passive Scaling, INC, which he has now closed. Both companies are owned by Mr. Bratislav Rozenfeld as reported by the New Jersey Department of Treasury. Motions for reconsideration are governed by **N.J. Ct. R. 4:49-2**, which provides that the decision to grant or deny a motion rests within the sound discretion of the court and exercised in the interest of justice. The plaintiff therefore comes before the mercy of the court to reconsider amending the original default judgment based on these facts that could not have been provided at the original hearing. The plaintiff was unaware the defendant was taking actions to prohibit any judgment or writ from ever being served and executed at the time the plaintiff was seeking relief from the court. Once the court issued the default judgement against Passive Scaling, LLC, Mr. Rozenfeld was noticed and properly served by civil process server. Instead of working out a plan with the defendant for repayment, he closed down Passive Scaling, LLC and opened The FBA Machine, INC. to avoid collection of the debt and defy the writ of execution which the court subsequently issued. According to **N.J. Ct. R. 4:49-2**, the default judgement and the writ of execution that were originally ordered by the court, can be amended to be properly executed by local law enforcement upon careful review and reconsideration by the court in the interest of justice. It is well settled pursuant to Rule 4:49-2 provides: "Except as otherwise provided by R. 1:13-1, a motion for rehearing or reconsideration seeking to alter or amend a judgement or order shall...state with specificity the basis on which it is made, including a statement of the matters or controlling decisions which

counsel believes the court has overlooked or as to which it has erred…" The plaintiff therefore, prays for this court's immediate relief from the actions taken by the defendant and causing further emotional and financial distress.

- Skip to Content
- Skip to Footer

 **STATE OF NEW JERSEY**
**NJ DEPARTMENT OF THE TREASURY**
**DIVISION OF REVENUE AND ENTERPRISE SERVICES**
# BUSINESS RECORDS SERVICE

- Login
- New User
- Help
- Retrieve Documents
- Cart

1. Search
2. Results
3. Select Documents

## Standing Certificates

**Search Summary**

Search Type:            RegisteredAgent
Registered Agent Name: Bratislav Rozenfeld
City:

| Short Form ? | Long Form w/Filing History ? | Long Form w/Officers ? | Business Name | Entity ID | City | Type | Original Filing Date |
|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | 1HR DELIVERIES INC | 0450602744 | EDGEWATER | DP | 02/2021 |
| ☐ | ☐ | ☐ | 3PL LOGISTIC AUTOMATION INC | 0450602732 | EDGEWATER | DP | 02/2021 |
| ☐ | ☐ | ☐ | HOURLY RELIEF INC | 0450602752 | EDGEWATER | DP | 02/2021 |
| ☐ | ☐ | ☐ | PASSIVE SCALING INC | 0450602727 | EDGEWATER | DP | 02/2021 |
| ☐ | ☐ | ☐ | SALES.SUPPORT NEW JERSEY INC | 0450602738 | EDGEWATER | DP | 02/2021 |
| ☐ | ☐ | ☐ | THEFBAMACHINE INC | 0450851950 | KEARNY | DP | 08/2022 |

Add To Cart →    Go Back    x Cancel Search

Division of Revenue & Enterprise Services

**Attachment CC**                    **PX20**                    **001452**

**Form B**

## Certification of Service

I certify that on <u>01/30/2024</u>, I sent a copy of the Notice of Motion, Certification, and proposed form of Order to the following parties by: (check which mailing method you chose. If you sent it by both regular and certified mail, return receipt requested, check both)

■ regular mail      ☐ certified mail, return receipt requested

List each party to the lawsuit; use the attorney's name and address if the party is represented by counsel.

Name <u>Bratislav Rozenfeld</u>

Address ████████████

████ Edgewater, New Jersey ████

Attorney for _____

Date   <u>01/30/2024</u>

Name <u>The FBA Machine</u>

Address ████████████

████ Edgewater, New Jersey ████

Attorney for _____

_Kenn Cri_
Signature

<u>Kenny Craig</u>
Print Name

# Exhibit "F"

LAW DIVISION BERGEN COUNTY                                    **Docket No.** BER-L-001486-24
JAMES MONAGHAN

**,Plaintiff(s)**

- against -

PASSIVE SCALING, INC.

**,Defendant(s)**

PROOF OF DILIGENCE

I, THE UNDERSIGNED AM AND WAS ON THE DATES HEREIN MENTIONED, OVER THE AGE
OF EIGHTEEN YEARS AND NOT A PARTY TO THE ACTION, ATTEMPTED TO SERVE THE
FOLLOWING:

COVER LETTER; FILED ORDER TO SHOW CAUSE; VERIFIED COMPLAINT;
VERIFICATION; EXHIBITS; CIVIL CASE INFORMATION STATEMENT; LETTER BRIEF
IN LIEU; TRACK ASSIGNMENT NOTICE; PROPOSED ORDER ENTERING JUDGMENT

AND THAT AFTER DUE SEARCH, CAREFUL INQUIRY AND DILIGENT ATTEMPTS AT THE

RESIDENCE:  UNKNOWN

ALTERNATE: 2011 8TH STREET
           SUITE 103
           NORTH BERGEN NJ 07047

I HAVE BEEN UNABLE TO MAKE DELIVERY ON ONE OF THE FOLLOWING NAMED:

PASSIVE SCALING, INC.
C/O BRATISLAV ROZENFELD, REGISTERED AGENT
C/O THE FBA MACHINE

THEREFORE PROCESS IS BEING RETURNED FOR THE FOLLOWING REASONS:

03/29/24 02:09 PM SUITE 130 AT THE GIVEN ADDRESS IS CURRENTLY
                  OCCUPIED BY WEST ORANGE FARMS.
                  SERVER SPOKE WITH THE OWNER VIA RING
                  DOORBELL WHO ADVISED, ENTITY IS UKNOWN AT
                  THIS ADDRESS.
                  HE FURTHER PROVIDED AZROHOM SCHLAFF,
                  LANDLORD'S PHONE NUMBER 908-330-3677.
                  THE LANDLORD CONFIRMED THAT THE ENTITY MOVED
                  OUT 6 MONTHS AGO AND DID NOT HAVE A CURRENT
                  ADDRESS FOR THEIR LOCATION.
                  NO FURTHER INFORMATION KNOWN.
                  SERVER RETURNING THIS REQ. FOR FURTHER REVIEW

PERSON SERVING: ROBERT MCCANN

DGR Legal, Inc.
1359 Littleton Road, Morris Plains, NJ 07950-3000
File #  2          **Attachment CC** (973) 403-1700  Fax **PX20** 403-9222          Work Order # **001455**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------x

SELLERSFUNDING PORTFOLIO, LLC,

                                Plaintiff,

        -against-

CLOSTER GREEN CORP.,
d/b/a WRAITH & CO.
BRATISLAV ROZENFELD

                           Defendants.

-------------------------------------------------------------------x

Index No. 155078/2020

**Amended Complaint**

File No. 764442

Plaintiff, by his attorneys, complaining of Defendants, allege as follows:

### AS AND FOR A FIRST CAUSE OF ACTION

1. Plaintiff is a Delaware limited liability company authorized to do business in the State of New York with an address of c/o Sellers Funding Corp. 43 W. 23rd Street, 2nd Floor, New York, New York 10021.

2. Upon information and belief, Defendants reside in the county in which this action is brought; or that Defendants transacted business within the county in which this action is brought in person or through an agent and the cause of action arose out of said transaction.

3. Plaintiff is the holder of a written promissory agreement dated March 21, 2019 duly made and delivered by Defendant Closter Green Corp. with Defendant Bratislav Rozenfeld being a party subject thereto.

4. Defendant Closter Green Corp. defaulted in the performance of its obligations under the written promissory agreement, said default damaging Plaintiff in the sum of $153,473.31, with interest from June 27, 2019.

### AS AND FOR A SECOND CAUSE OF ACTION

5. Plaintiff re-alleges each and every allegation set forth in Paragraphs 1 through 4 of this Complaint.

6. Defendant Bratislav Rosenfeld issued a personal guarantee of the written promissory agreement alleged herein, guaranteeing payment under the agreement to Plaintiff, in order for Plaintiff to enter the written promissory agreement.

7. Upon default of Defendant Closter Green Corp. in the obligations of the written promissory agreement, Plaintiff demanded that Defendant Bratislav Rozenfeld perform the obligations under the terms of the personal guarantee.

8. Defendant Bratislav Rozenfeld failed and refused to perform the obligations as required under th terms of the personal guarantee, damaging Plaintiff in the sum of $153,473.31, with interest from June 27, 2019.

Case 2:24-cv-06635-JXN-LDW    Document 1-43    Filed 06/03/24    Page 52 of 98 PageID: 1516

## AS AND FOR A THIRD CAUSE OF ACTION

9. Under the terms of the written promissory agreement, upon default of the obligations to be performed by Defendants, Defendants would be liable for costs incurred by Plaintiff in the recovery of the amount due under the written promissory agreement.

10. The costs expended by Plaintiff and the costs that will be incurred in the collection of the damages herein are a direct result of the actions of Defendants, which will result in damages to be determined by this Court but shall not exceed $30,694.66.

WHEREFORE, Plaintiff demands judgment against Defendants in the sum of $153,473.31 with lawful interest from June 27, 2019, together with a sum to be determined by this Court for costs under the written promissory agreement of $30,694.66, together with costs and fees pursuant to statute.

Dated: June 1, 2021

KEVIN M. KNAB, ESQ.
Smith Carroad Levy Wan & Parikh, P.C.
Attorneys for Plaintiff
5036 Jericho Tpke. Commack, New York 11725
(631) 499-5400

# THE LAW OFFICE OF
# SHANNAN S. COLLIER, P.C.

E-Mail Address
shannan@sscollier.com

100 GALLERIA PARKWAY, SUITE 10100
ATLANTA, GEORGIA 30339

TELEPHONE
(404) 419-7113

*Licensed in Georgia
*Licensed in Florida

December 5, 2022

**SENT VIA FEDERAL EXPRESS**
**SENT VIA ELECTRONIC MAIL:  info@passivescaling.com**
Passive Scaling, Inc.
Attn:  Steven Bratislav Rozenfield, CEO
223 Veteran's Blvd.
Carlstadt, NJ 07020

In re:    E-Commerce Consulting Agreement of August 12, 2021 (the "Agreement")

Dear Mr. Rozenfield:

We are legal counsel to James David Wegener and have been asked to contact you with regard to the ongoing breaches of the above-referenced Agreement by Passive Scaling, Inc. ("Passive").  For your convenience, an overview of the relevant information follows:

The parties entered into the Agreement prepared by Passive for Passive to provide specific services designated therein.

The Term of the Agreement is designated as being 18 months, subject to termination by either party with or without cause.

Upon a breach of the Agreement by Passive for failure to perform its services under the Agreement in a manner acceptable to Walmart, Passive would have the opportunity to correct its breach via a "cure store".  Unfortunately, Passive was unable to cure its default in accordance with the terms of the Agreement.

After engaging in the curable breach and thereafter failing to so cure as provided in the Agreement, our client provided you with notice and demand for remedy also as provided therein.  Again, unfortunately, Passive has failed to remit the amounts due to our client in accordance therewith.

Our client as "Client" under the Agreement performed each of the tasks required under Paragraph 2 of the Agreement.

Our client remitted the Fee due under Paragraph 3 of the Agreement.

Our client demanded Refund in accordance with the provisions of Paragraph 10, after both the original Store and Cure Store both resulted in more than one Prohibited Action by Passive.

**Attachment CC**                    **PX20**                    **001458**

Our client provided Passive with written notice to the electronic mail address set forth in Paragraph 13 of the Agreement; however, Passive has not only failed to comply but has terminated all correspondence with our client.

Due to the ongoing and repeated failure to comply with the provisions of the Agreement by Passive, this correspondence shall serve as formal, written notice and demand for refund of the Fee of Thirty Thousand Dollars ($30,000) less the Five Thousand Dollars ($5,000) in profit received by our client, for a total of Twenty-Five Thousand Dollars ($25,000), to be received, without exception, on or before 2:00 pm, Eastern Time, December 16, 2022. Should you fail to comply with the terms hereof, then this correspondence shall serve as a DEMAND FOR ARBITRATION under Paragraph 13 of the Agreement. Otherwise, our client shall proceed with any and all remedies available under law and equity, specifically including, but not limited to, recovery of the entire Fee, plus Interest from the date of the closing of the Cure Store, as well as all costs, expenses, and attorney's fees incurred in collection (under O.C.G.A. §13-6-11).

Our client retains the right to reject any offer which he determines in his sole and absolute discretion to be unreasonable. Notwithstanding the sending of this demand letter, our client specifically reserves all rights and remedies available under law. Nothing contained in this letter nor any act or omission to act by our client is intended or should be deemed to be a waiver or modification of any rights or remedies which our client may have, and all such rights and remedies whether in law or in equity are hereby expressly reserved by our client.

Thank you in advance for your immediate attention to and cooperation in this matter.

Very truly yours,

Shannan Collier Stalvey, Esq.

with consent

cc:     James David Wegener (via electronic mail)

Case Number:23-008716-CI

IN THE CIRCUIT COURT FOR PINELLAS COUNTY FLORIDA

JAMES DAVID WEGENER,

                Plaintiff,

     v.

PASSIVE SCALING, INC.,

                Defendant.

**Civil Action File No.: _____**

## **VERIFIED COMPLAINT**

COMES NOW, Plaintiff James David Wegener ("Plaintiff"), by and through his attorney, Shannan Collier Stalvey, and respectfully petitions the Court for breach of written agreement for services provided as follows:

1.      Plaintiff is a resident of Pinellas County, Florida.

2.      Passive Scaling, Inc. ("Defendant") is a New Jersey Corporation Company, providing consultant services with a registered address of 223 Veterans Blvd., Carlstadt, NJ 07020.

3.      On or about August 12, 2021, Plaintiff executed Defendant's Agreement to engage in e-commerce consulting services as an independent contractor for Defendant to maintain the designated "Client Stores," including configuring Walmart storefronts and the front and back-end systems necessary to manage the stores and review, research, source, select, and list products for the Client Stores, a true and correct copy of which is hereby attached to this Statement of Claim as Exhibit "A" and hereby incorporated by reference.

4.      Defendant's Agreement is pre-printed and allows for no modifications whatsoever; and, if any provision is held to be invalid or unenforceable for any reason, the remaining provisions will continue in full force and effect.

5.      Prior to execution, the parties agreed to the responsibilities, fees, refund policy, and terms of breach, each of which are detailed in the Agreement.

6.      Defendant failed to comply with the terms of the Agreement for an extended time, amounting to a breach of the Agreement.

7.      As a direct result of Defendant's breach, in or about November, 2021, Plaintiff

James David Wegener v Passive Scaling, Inc.
Verified Complaint
**Attachment CC**           **PX20**           Page 1
           **001460**

began providing Defendant with written electronic mail notice of its failure to comply with the terms of the Agreement.

8.      As a direct result of said notice and acknowledgment by Defendant of its Breach, Plaintiff provided Defendant with the opportunity to cure its breach.

9.      Defendant accepted its right to cure, managing one replacement store (the "Cure Store").

10.     Defendant failed to cure its default in accordance with the terms of the Agreement.

11.     As a result of Defendant's failure to effectuate cure under the Cure Store, Plaintiff demanded payment in accordance with the terms of the Agreement.

12.     After Defendant failed and refused to respond, Plaintiff procured legal counsel to address Defendant's breach and failure to cure.

13.     Plaintiff's counsel sent written notice and demand to Defendant dated December 5, 2022, a true and correct copy of which is attached hereto as Exhibit "B" and is hereby incorporated by reference.

14.     Defendant failed to respond to said demand.

15.     Plaintiff's counsel then set up a Zoom call with Defendant's agents.

16.     During said Zoom call, Defendant agreed to settlement and to prepare and submit a settlement agreement detailing the terms to which the parties agreed.

17.     According to the terms of the Agreement, if at any time Plaintiff believed that Defendant was not fully complying with the terms of the Agreement, Plaintiff was required to notify Defendant in writing of the specific nature of such claim, and Defendant had thirty (30) days from receipt of the notice to cure the breach.

18.     Defendant breached; Plaintiff provided notice of the breach in accordance with the terms of the Agreement; Defendant failed to cure its breach in accordance with its owns terms; therefore, Plaintiff demanded remedy under the Agreement.

19.     Notwithstanding Plaintiff's compliance with the terms of the Agreement, Defendant failed and continues to refuse to remit the amounts due to Plaintiff.

20.     Plaintiff performed all the tasks required to be performed according to the terms of the Agreement and allowed Defendant an extended time to cure.

21.     Under the provisions of the Agreement Plaintiff is owed the principle sum of Twenty-Five Thousand Dollars ($25,000).

22.     Defendant admitted that it breached, failed to cure, and owes sums certain to Plaintiff.

23.     Since the parties' meeting of the minds, Defendant has evaded and continues to avoid contact with Plaintiff.

24.     Defendant's acts of evasion and avoidance are preventing Plaintiff from engaging in timely recovery and resolution.

25.     Clearly, Defendant's representation that settlement was reached was made for the sole purpose of evading Plaintiff's claim and to fraudulently delay Plaintiff's claims and recovery.

26.     Plaintiff timely notified Defendant of his damages; sent written request for attention to this matter; has been forced to resort to legal counsel and legal recourse in this matter; and continues to accrue losses as a direct result of Defendant's breach, fraud, and other improper acts.

## COUNT I – BREACH OF CONTRACT

27.     Plaintiff incorporates paragraphs 1-26 hereinabove as though specifically set forth herein.

28.     Notwithstanding Plaintiff's compliance with the terms of the Agreement, Defendant has failed and continues to refuse to address its intentional breaches and improper prohibited actions under the Agreement.

29.     The acts of the parties bound them to a contract.  See *Cheverie v. Geisser*, 783 So.2d 1115 (Fla. 4th DCA 20001).

30.     As a sole result of Plaintiff's acts and reliance upon each of Defendant's representations made, Plaintiff has incurred substantial cost, expense, and time in managing each of the clients so introduced to Defendant.

31.     As Defendant entered into an agreement with Plaintiff and then thereafter failed to comply therewith, Defendant has committed a breach of contract.

32.     As Defendant has failed and refused to remit Plaintiff's funds due, Defendant has committed a breach of contract.

33.     As a direct result of Defendant's improper acts and failure to act in accordance with the terms of the Agreement and subsequent settlement as agreed, Plaintiff has incurred calculable losses and damages.

34.     As a direct result of Defendant's breach of the Agreement, Plaintiff, as the injured party, is completely deprived of the benefit which was reasonably expected; and (2) Plaintiff can be adequately compensated for the part of the benefit of which he has been deprived, as set forth in the Agreement.

35.     Further, Defendant will not suffer hardship nor more than that for which it contracted by finding in favor of Plaintiff for Defendant's breach of contract and clearly has failed and refused to cure its breach.

36.     Additionally, Defendant's acts clearly violate the standards of good faith and fair dealing. Section 241, Restatement (Second) of Contracts.

37.     Because Plaintiff has met the standards for proving Defendant's material breach of contract, Defendant is liable to Plaintiff for said breach.

38.     "Florida follows the general rule that to be recoverable, damages for breach of contract 'must arise naturally from the breach, or have been in contemplation of both parties at the time they made the contract, as the probable result of a breach.'" *T.D.S., Inc. v. Shelby Mut. Ins. Co.,* 760 F.2d 1520, 1532 n. 11 (11th Cir.1985) (citing *Hobbley v. Sears, Roebuck and Co.,* 450 So. 2d 332, 333 (Fla.App. 1st Dist.1984)).

39.     "[D]amages are recoverable so long as the actual consequence of breach of contract could have been reasonably expected to flow from the breach." *T.D.S., Inc.,* 760 F.2d at 1520, n. 11. (citing *Natural Kitchen, Inc. v. American Transworld Corp.,* 449 So. 2d 855, 860 (Fla. 2d DCA 1984)).

40.     Clearly, Defendant was well aware of the natural and actual consequences of the breach of contract, as Defendant drafted the Agreement; therefore, the damages requested are reasonable.

41.     Further, because Defendant acted in bad faith, it is liable to Plaintiff for actual damages, interest on the damages, attorneys' fees, and costs of litigation.

### COUNT II – BREACH OF DUTY, GOOD FAITH, AND FAIR DEALING

42.     Plaintiff incorporates paragraphs 1-41 hereinabove as though specifically set forth herein.

43.     After Plaintiff and Defendant executed Defendant's Agreement, the parties were bound by a contract.

44.    As Plaintiff acted in reliance upon the representations made to him by Defendant, the parties were bound by a contract.

45.    There is no rescission or revocation of the Agreement.

46.    In the performance of its duties under the contract, Defendant had a duty of good faith and fair dealing. *Meruelo v. Mark Andrews of Palm Beach, Ltd.*, 12 So.3d 247, 251 (Fla. 4th DCA 2009).

47.    By failing to comply with the terms of the Agreement, i.e., breaching the Agreement, Defendant further breached its implied covenant of good faith and fair dealing. *Snow v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 896 So.2d 787, 791 (Fla. 2d DCA 2005)

48.    By failing to comply after opportunity to cure and written notice and demand, Defendant acted intentionally.

49.    As a direct result of Defendant's breach of good faith and fair dealing, Plaintiff has incurred calculable losses and damages.

50.    As Defendant acted in bad faith, it is liable to Plaintiff for actual damages, interest on the damages, attorneys' fees, and costs of litigation.


COUNT III – FRAUD


51.    Plaintiff incorporates paragraphs 1-26 hereinabove as though specifically set forth herein.

52.    Defendant induced Plaintiff to delay pursuit of legal recourse by representing that complete settlement between the parties had been reached.

53.    Defendant further agreed to take all acts necessary to produce the final written agreement for execution by the parties.

54.    Since Plaintiff notified Defendant of its failure to cure as provided in the Agreement, Defendant has evaded contact with Plaintiff.

55.    Defendant intended that Plaintiff rely upon Defendant's false statements.

56.    Plaintiff did rely upon Defendant's false statements.

57.    Defendant clearly engaged in a scheme to defraud which resulted in Defendant's retention of Plaintiff's funds with an aggregate value of more than $20,000 and less than $50,000,

making Defendant guilty of a felony of the second degree under Florida Statutes §§ 775.082, 775.083, and/or 775.084.

58.    Defendant's improper acts resulted in detrimental reliance by Plaintiff, resulting in damages to Plaintiff, equating to a Fraud in the Inducement for which Plaintiff has a right of recovery.

**WHEREFORE,** Plaintiff demands judgment against Defendant for Breach of Contract and Breach of Good Faith and Fair Dealing in the amount of Twenty-Five Thousand Dollars ($25,000), plus statutory interest from December 16, 2022, and all court costs, attorneys' fees, and expenses incurred by Plaintiff in this matter; OR, IN THE ALTERNATIVE

**WHEREFORE,** Plaintiff demands judgment against Defendant for Fraud in the amount of in the amount of Twenty-Five Thousand Dollars ($25,000), plus statutory interest from December 16, 2022, and all court costs, attorneys' fees, and expenses incurred by Plaintiff in this matter**;**

AND

**WHEREFORE,** Plaintiff prays for any and all additional relief this Court deems just and proper.

Respectfully Submitted this 12th day of October, 2023.

/s/ Shannan Collier Stalvey
SHANNAN COLLIER STALVEY
Florida Bar No. 0992313
Attorney for Plaintiff
100 Galleria Pkw. Suit 1010
Atlanta, GA 30339
404/419-7113
shannan@sscollier.com

IN THE CIRCUIT COURT FOR PINELLAS COUNTY FLORIDA

JAMES DAVID WEGENER

               Plaintiff,

    v.

PASSIVE SCALING, INC.

               Defendant.

**Civil Action File No.:** _____

## VERIFICATION

Personally appeared before the undersigned officer duly authorized to administer oaths, James Wegener, who, after being duly sworn, deposes and states that he signs this Verification of Complaint, that he has read the Complaint, and that the facts contained therein are true and correct.

_____
James Wegener

Subscribed and sworn to
before me this 22 day of June, 2023.

_____
Notary Public
My Commission Expires: 10/03/2026

KYLE Q CLARK
Notary Public - State of Florida
Commission # HH 318673
My Comm. Expires Oct 3, 2026
Bonded through National Notary Assn.

I



Exhibit A to Complaint

**Attachment CC**      **PX20**      **001467**

# Pricing Breakdown

| Description | Price | Quantity | Total Price |
|---|---|---|---|
| **Initial Consulting Fee** | $30,000 | 1 | $30,000 |
| *"Store Infrastructure Fee"* - this goes directly towards warehousing expenses, full time employees & benefits, consulting expertise, web build & store build, web build & store build, product selection, & initial inventory | | | |
| **Management Fee - $199 or 35%** | $199 | Monthly | $199 |
| Minimum management fee of $199 per month **or** thirty five percent (35%) of net profit - **this fee begins the following month after fulfillment of initial payment.** | | | |
| **Software Fee** | $99 | Monthly | $99 |
| Fee paid directly to software provider | | | |
| **Minimum Working Capital - $10,000** | $10,000 | 0 | $0 |
| This is the minimum requirement of available credit or capital to cover inventory & wholesale price of dropshipped items. Walmart pays every two weeks, and this money covers orders until the scheduled store payout. | | | |
| *Please note: Walmart places an additional 14 day waiting period for the first 90 days of a new account. This means only one payment from Walmart occurs within the first month of business* | | | |
| **Recommended credit available for expedited scaling process is $25,000 +** | | | |

| | |
|---|---|
| **TOTAL** | **$30,298** |

# E-COMMERCE CONSULTING AGREEMENT

This E-Commerce Consulting Agreement ("Agreement"), is dated as of August 12, 2021 by and between PASSIVE SCALING INC, a New Jersey Corporation company, whose address is 223 Veterans Blvd., Carlstadt, NJ 07020 (hereinafter "Consultant"), and James David Wegener, (hereinafter "Client").

WHEREAS, Client desires to engage Consultant's services, as an independent contractor, upon the terms and conditions herein set forth; and

WHEREAS, Consultant desires to render consulting services to Client upon the terms and conditions herein set forth;

NOW, THEREFORE, Consultant and Client (together, the "Parties"), for $30,000.00 and other good and valuable consideration, the receipt and sufficiency are hereby mutually acknowledged, agree to the following terms and conditions whereby Consultant shall consult Client in connection with one (1) e-commerce stores on the Walmart platform (the "Store"):

1. **CONSULTANT'S SERVICES - Consultant agrees to perform the following services ("Services"):**

    A. Maintain Client's Stores, including configuring the Walmart storefronts and configuring the front and back end systems necessary to manage the Stores.

    B. Review, research, source, select, and list products for the Client's Stores.

    C. Respond to customers' phone and email inquiries in support of Client's Stores and shall exercise good faith efforts to resolve customer inquiries, handle product returns, and manage billing matters.

    D. Maintain oversight of Client's Stores and its financial performance; however, Consultant shall have no obligation to, and does not intend to, provide financial advice to Client concerning the operation of Client's Stores (Client shall confer with its professional financial advisors concerning all financial inquiries.)

_James David Wegener_

2. **CLIENT RESPONSIBILITIES -**

A. Client understands there is a period that will delay the commencement and commercial operations of the Stores, including, without limitation, a 1 to 4 month configuration period (and perhaps longer, depending on the circumstances specific to each proposed Stores) where Client must complete certain obligations. Until Client satisfies all contractual and legal requirements for the creation and operation of Client's Stores, Consultant cannot commence providing the Services as set forth in Section 1 of this Agreement.

B. Within the first eight (8) months of this Agreement, Client will use best efforts to obtain, and maintain for the duration of this Agreement, a credit card or total credit limit issued through a United States federally insured banking institution with a minimum credit limit of thirty thousand ($30,000.00) dollars USD. In no event shall Consultant be responsible for payment of any kind and any other obligation under Client's credit cards, all of which credit card obligations shall be solely that of Client. Furthermore, unless Consultant provides written consent: (i) at no time shall Client Pause its Stores, allow for a Suspension, or place its Walmart account or Stores in Vacation Mode, such terms being defined or referenced on the Walmart website or in other written materials made available to Client; and (ii) Client shall not allow its Stores to remain shut down for more than ninety (90) days during the term of this Agreement.

C. Within thirty (30) days from the commencement of this Agreement, Client shall provide Consultant with only necessary information for the purpose of Consultant carrying out its obligations under this Agreement. Client shall use its best efforts to assist Consultant in obtaining all information deemed necessary by Consultant to implement Consultant's Services.

3. **COMPENSATION -**

A. In consideration for this Agreement, Client shall pay Consultant a one-time consulting fee of thirty thousand dollars ($30,000.00) USD (the "Fee"), via wire transfer or ACH to Consultant's bank account within 72 hours of execution of this Agreement. Except as expressly permitted under Section 10, the Fee is non-refundable.

James David Wegener

B. Client shall also thereafter, beginning in the month following the month in which the Fee is paid, pay Consultant one hundred ninety nine ($199.00) USD per month (the "Maintenance Fee"), or thirty five percent (35%) of the Net Profit from Client's Stores per month (the "Ongoing Commission"), whichever is greater plus an additional ninety nine dollars ($99) software fee paid directly to the software provider. Client shall not be responsible for payment of the Ongoing Commission or the Maintenance Fee if, other than due to breach of this Agreement by Client, there is no activity in Client's Stores for said month (or a portion thereof, where such portion exceeds 15 days).

C. Consultant shall invoice Client monthly, and Client has seventy-two (72) hours to remit payment.

4. **TERM –**
This Agreement shall commence on the last date of execution by both parties and shall continue in effect for a period of eighteen (18) months (the "Initial Term") thereafter. Upon completion of the Initial Term, the Agreement shall automatically extend on a month-to-month basis (the "Option Term") until written notice is provided by either party, to the other party, in accordance with Section 5.

5. **TERMINATION –**
Client may terminate this Agreement at any time by providing written notice to Consultant. Consultant may terminate this Agreement, at any time, for cause, with fourteen (14) days written notice to Client. Consultant may terminate the Option Term, without cause, at any time. For this Section, "cause" shall include, but not be limited to: (1) any act or omission by Client, which interferes with the operation of the Stores or Consultant's ability to render Services, in Consultant's sole discretion; or (2) Client's breach or threatened breach of any term in this Agreement. If Client breaches any term under this Agreement, independent of any actions Walmart may take from time to time, Consultant may Pause Client's Stores, which, Consultant may only reactivate, in Consultant's sole discretion.

James David Wegener

**Attachment CC**                 **PX20**                 **001471**

6. **NON-DISPARAGEMENT –**

   During this Agreement and for one (1) year thereafter, the Parties mutually agree that any issues or problems that either party has regarding the other with respect to this Agreement, shall be discussed with the other party in a professional and private manner. The Parties hereby mutually agree not to disparage, insult, or fabricate information regarding the other party in any online or offline forum or any other forum whatsoever, including but not limited to social media channels, regardless of whether such comments or information would not constitute libel or slander, and regardless of whether such comments could be deemed factually true.

7. **SALES / USE TAX –**

   Consultant does not provide tax reporting or tax management services of any kind. Client is responsible for determining if Client is responsible for collecting and remitting sales or use tax under any applicable state or local law, regulation, or ordinance.

8. **INTELLECTUAL PROPERTY –**

   Client understands that Client's Stores is a service hosted on the Walmart platform and not a distinct or severable product or service that can be ported, removed or installed in or on a different place or platform. Accordingly, Consultant does not hold itself out to have any rights, endorsements, relations, or affiliation with Walmart, or any of Walmart's copyright, trademark, trade dress, trade secret, or any other intellectual property right that Walmart may hold (the "Intellectual Property Rights"). Further, Consultant cannot, and does not, grant or convey to Client any Intellectual Property Rights, whatsoever, in Client's Stores, or Walmart, and Consultant holds no legal or equitable rights in Client's Stores.

James David Wegener

9. **RESTRICTED ACTIVITIES –**

Client acknowledges that during the Term of this Agreement Client will have access to Consultant's Confidential Information which, if disclosed, could assist in competition against Consultant by third parties. Client recognizes the highly competitive nature of Consultant's business, services, and its trade secrets, and that Consultant conducts its business electronically, through e-commerce, and throughout the United States. Therefore, Client agrees that the following restrictions on Client's activities are necessary to protect the good will, Confidential Information, and other legitimate business interests of Consultant, which restrictions are fair and supported by adequate consideration: shareholders, employees, Non-Competition, agents, the Term members of the Agreement:

A. **Non-Solicitation**. During the Restricted Period, Client agrees that it will not, directly, or indirectly through another Person: (i) induce or attempt to induce any employee or contractor of Consultant to leave the employ or contract of Consultant, or in any way interfere with the relationship between Consultant and any of its employees or contractors, or (ii) induce or attempt to induce any customer, supplier, client, distributor, vendor, licensee, or other business relation of Consultant to cease doing business with Consultant, or in any way interfere with Consultant's relationship with any such party.

B. **Non-Disclosure**. The Parties agree not to use, reveal, make available, nor disclose, whether directly or indirectly, to any third party any Confidential Information for any purpose except as approved in writing by Consultant. Further, the Parties shall (a) not assist nor enable anyone to access or use any of Confidential Information; and (b) not use nor exploit any of the Confidential Information for any purpose whatsoever except in accordance with the terms of this Agreement. For purposes of this Agreement, the Party disclosing the Confidential Information shall be referred to as "Disclosing Party," and the Party receiving the Confidential Information shall be referred to as "Receiving Party".

C. **Notwithstanding the foregoing**, Receiving Party will: 1) promptly notify the Disclosing Party, to the extent legally permissible, if Receiving Party becomes required by court order to disclose any Confidential Information; 2) cooperate with Disclosing Party if Disclosing Party decides to oppose or to seek to restrain such disclosure; and 3) subject to the foregoing, only disclose that information which its counsel advises it is legally compelled to disclose.


James David Wegener

D. **If at Disclosing Party's request**, Receiving Party is unable to obtain a protective order or other injunctive relief above with respect to the Confidential Information referred to therein and Receiving Party is thereafter required by court order to disclose such Confidential Information, Receiving Party may disclose only such Confidential Information as is expressly required by the court order.

E. **Maintenance of Confidential Information**. The Receiving Party agrees that it shall take all reasonable measures to protect the secrecy of and avoid disclosure and unauthorized use of Disclosing Party's Confidential Information. Without limiting the foregoing, Receiving Party shall take at least those measures that Receiving Party takes to protect its own confidential information. Receiving Party shall also immediately notify Disclosing Party, in writing, of any unauthorized use or disclosure of the Confidential Information.

F. **Confidentiality Term**: Regardless of any termination of this Agreement, the parties expressly acknowledge and agree that their respective rights and obligation under this Section 9 shall last for a period of five (5) years following the expiration of this Agreement or permissible termination of this Agreement; provided, however, that Client's duties of confidentiality thereunder with respect to Consultant's trade secrets shall survive such expiration and such duties of confidentiality shall continue and not expire so long as such Confidential Information is deemed a trade secret as a matter of law.

G. **In signing this Agreement**, Client acknowledges that he/she/it has carefully read, consulted with legal counsel, and considered all the terms and conditions of this Agreement, including the restraints imposed on Client, throughout the United States, under this Section 9. Client agrees that all such restraints are necessary for the reasonable and proper protection of Consultant, and that each and every one of the restraints is reasonable in respect to subject matter, length of time and geographic area (i.e., throughout the United States). Client further acknowledges that, were Client to breach any of the covenants contained in this Section 9, however caused, the damage to the Consultant would be irreparable. Client therefore agrees that Consultant, in addition to any other remedies available to it, shall be entitled to preliminary and permanent injunctive relief against any such breach or threatened breach, without having to post bond, together with reasonable attorneys' fees incurred in enforcing Consultant's rights hereunder.


James David Wegener

10. **REFUND POLICY –**

    A.  Subject to Paragraph (C) below, during the Term of this Agreement, if Consultant's Services result in a Prohibited Action, twice. Client has the option ("Refund Option") to request a refund. Additionally, following an eighteen(18) month period if the Client has not made back their initial stores costs, Client has the option to request a refund within a thirty (30) day period following their 18th month of working days. To exercise the Refund Option, Client must notify Consultant of that election in writing. In that event, subject to Paragraph (C), Consultant will refund a portion of the Fee, as defined in Paragraph (B) below (the "Refund Amount").

    B.  The Refund Amount shall be calculated by the following formula: (x) the Fee ($30,000.00) less (y) any Net Profit and Cash Back Client received during the Refund Period, and less (z) any Net Profit and Cash Back Client received through the Cure Stores; provided, however, that (1) Client has not engaged in any act that interferes with the operation of Client's Stores or of Consultant's Services or which would be in breach of this Agreement, including, without limitation, a Suspension of Client's Stores for any reason other than the occurrence of a Prohibited Action, and (2) this Agreement remains in full force and effect at the time Client exercises the Refund Option. The Parties further agree that under no circumstance shall the Refund Amount exceed the Fee of ($30,000.00).

    C.  Client's right to exercise the Refund Option for reason of Prohibited Action under Paragraph (A) is expressly conditioned on Consultant first managing one replacement store (the "Cure Store") for Client, and the Cure Store also resulting in a Prohibited Action.

James David Wegener

11. **LIMITATION OF LIABILITY –**

   A. UNDER NO CIRCUMSTANCES WILL CONSULTANT, OR ANY OFFICERS, DIRECTORS, EMPLOYEES, AGENTS OR REPRESENTATIVES BE LIABLE FOR ANY INCIDENTAL, INDIRECT, CONSEQUENTIAL, PUNITIVE, SPECIAL OR EXEMPLARY DAMAGES, HOWSOEVER OR WHENEVER ARISING, INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOST REVENUE, LOST PROFITS, ANTICIPATED PROFITS, LOST BUSINESS OR INJURY TO BUSINESS REPUTATION, COST OF PROCUREMENT OF SUBSTITUTE SERVICES, UNDER ANY THEORY OF LIABILITY OR CAUSE OF ACTION WHETHER IN TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE, CONTRACT OR OTHERWISE, REGARDLESS OF WHETHER OR NOT IT HAS OR THEY HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THIS LIMITATION OF LIABILITY SHALL NOT LIMIT CLIENT'S RIGHTS TO FILE SUIT AGAINST A THIRD PARTY OR PRODUCT VENDOR FOR ANY OF THE ABOVE LISTED CAUSES OF ACTION OR ANY OTHER CAUSE OF ACTION RELATED THERETO. SPECIFICALLY, CONSULTANT HEREBY COVENANTS THAT IT SHALL NOT TAKE ANY ACTION WHICH IS LIKELY TO CAUSE WAIVER OF ANY OF CLIENT'S RIGHTS WITH RESPECT TO THIRD-PARTY LIABILITY WITHOUT CLIENT'S PRIOR WRITTEN APPROVAL.

12. **DISCLAIMERS AND RELEASE –**

   A. CONSULTANT'S SERVICES ARE PROVIDED ON AN "AS IS" "AS AVAILABLE" BASIS WITHOUT ANY REPRESENTATIONS OR WARRANTIES. CLIENT MAY NOT RELY UPON ANY REPRESENTATION OR WARRANTY REGARDING CONSULTANT'S SERVICES MADE BY ANY THIRD PARTY, INCLUDING, BUT NOT LIMITED TO REPRESENTATIONS BY THIRD PARTY SERVICE PROVIDERS. CLIENT AGREES THAT CONSULTANT SHALL BEAR NO RISK WHATSOEVER AS TO THE SALE OF PRODUCTS OR SERVICES. CONSULTANT SPECIFICALLY DISCLAIMS ANY AND ALL REPRESENTATIONS, WARRANTIES AND CONDITIONS, WHETHER EXPRESS OR IMPLIED, ARISING BY STATUTE, OPERATION OF LAW, USAGE OF TRADE, COURSE OF DEALING, OR OTHERWISE, INCLUDING BUT NOT LIMITED TO WARRANTIES OR CONDITIONS OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, NON- INFRINGEMENT, OR TITLE WITH RESPECT TO CONSULTANT'S SERVICES, OR OTHER SERVICES OR GOODS PROVIDED UNDER THIS AGREEMENT.



James David Wegener

B. **Without limiting the foregoing**, Consultant makes no representations or warranties as to: (1) the accuracy, the reliability, or the completeness, of any matter within the scope of this Agreement, including but not limited to the Stores, the products therein, or the data, information, content, software, technology, graphics, or communications provided on or through the Stores; (2) the satisfaction of any regulation (government or otherwise) requiring disclosure of information on the products provided through or in connection with the Stores or the approval or compliance of the Stores or any software or information and content contained in the Stores; or (3) that the Stores will satisfy Client's economic needs and requirements or reach any particular level of sales, income, or net profits.


James David Wegener

C. **Business Risk** – Client hereby understands that the creation and potential growth of the Client's Stores carries financial and other risks. Client hereby understands that e-commerce is an ever-changing industry that is subject to numerous business risks, including but not limited to: (i) a changing legal environment in which regulations can emerge or change that affects the commercial sale of products through Walmart via Client's Stores; (ii) economic changes that affect consumer spending, the emergence of recessions due to economic and other issues (including public health issues) and the like; (iii) changes in the popular appeal of and demand for different types of Walmart products; (iv) changes in Walmart's terms and conditions, which can materially affect or even interfere with the marketability of Client's Stores or its products; (v) changes in international politics or economies, which may affect, among other things, the ability to package, distribute and ship Walmart products, and the costs thereof; (vi) market forces, including increased and changing levels of competition for any given product from other sellers of such product; (vii) unforeseen events, force majeure, public health concerns, and other external events that could affect the performance of any Walmart Stores. Client hereby understands that there are no guarantees made by Consultant or otherwise as to the Stores sales, income, or profitability at any time, and acknowledges that Client is at risk of a total loss of his, her or its investment. Client acknowledges the substantial risks generally involved with an e-commerce business. Client recognizes that there is a possibility that subsequent to the execution of this Agreement, Client may discover facts or incur or suffer claims which were unknown or unsuspected at the time this Agreement was executed, and which if known by Client at that time may have materially affected Client's decision to execute this Agreement. By operation of this Agreement, and in particular the disclaimers of Consultant contained in the preceding subsections, Client assumes any and all risks of such unknown facts and such unknown and unsuspected claims and expressly releases Consultant for any liability which Consultant could have had in connection therewith in the absence of the release herein provided by Client to Consultant. Consultant encourages Client to only invest funds that Client can afford to invest in an illiquid basis over a longer term and perhaps ultimately lose, and to consult Client's legal and/or business advisors prior to investing in the Stores.


James David Wegener

D. **Walmart Terms and Conditions** – Client hereby understands that Walmart, from time to time, with or without cause, can and does suspend accounts for various reasons, some of which may not be obvious or justified in Client's view. In the event Client's Stores is suspended, Company will assist in sending an appeal on behalf of the Client and working with Walmart to remedy the situation at no extra cost. Consultant makes no representations or warranties of any kind, however, that Walmart will in such cases return Client's Stores to active status. Furthermore, Client agrees and understands that Consultant makes no guarantees or representations regarding the Stores in relation to any Walmart policy, whether currently in effect or as may be amended by Walmart from time to time. Client understands that Consultant has no control over or input in when and whether Walmart elects to change any of its policies. However, the Services provided by Consultant to Client pursuant to this Agreement shall where practical be consistent with Walmart's current policies. In the event in which Client's store is suspended beyond a 30 day period, and no revenue is earned during this period, the "Maintenance Fee" of one hundred ninety nine ($199.00) USD per month or 35% of net profits will be waived.

13. **GENERAL PROVISIONS -**

A. **Non-exclusivity** – Each party is free to contract with others with respect to the subject matter of this Agreement subject to the limitations as to Client under Section 6 and Section 9 of this Agreement.

B. **Relationship of the Parties –** Nothing herein contained shall constitute a partnership or a joint venture between the Parties. Consultant is performing its services to Client as an independent contractor and not as Client's agent or employee. There is no third-party beneficiary to this Agreement.

C. **Notices -** All notices to either party shall be sent electronically to the email address(es) provided by each Party to the other and as otherwise set forth below. All notices to Consultant shall be sent to info@passivescaling.com, If to Client, notice shall be sent electronically to ███████████████ Alternatively, such written notice will also be deemed given upon personal delivery, or on receipt or refusal if sent by U.S. first class certified or registered mail, postage prepaid, return receipt requested, or by a recognized private delivery service. to the addresses stated on Page 1 of this Agreement.



James David Wegener

D. **Severability, Headings -** If any provision is held to be invalid or unenforceable for any reason, the remaining provisions will continue in full force and effect. In such event, the Parties hereby acknowledge their intent to make such invalidated provision, or part of such provision, as to be deemed replaced with a valid provision or part of provision that most closely approximates and gives effect to the intent of the invalid provision. Any such modification shall revise the existing invalid provision, or part thereof, only as much as necessary to make the invalidly-held provision otherwise valid. Headings are used for convenience of reference only, and in no way define, limit, construe or describe the scope or extent of any section of this Agreement.

E. **Dispute Resolution -** Except where otherwise expressly set forth in this Agreement, any dispute or claim arising out of or relating to this Agreement shall only be resolved by binding arbitration. The arbitration of any dispute or claim shall be conducted in accordance with the American Arbitration Association ("AAA") rules, as modified by this Agreement, which shall take place in Miami-Dade County, Florida. Any arbitration proceeding, determination, or award, shall be confidential, and neither Party may disclose the existence, content or results of any arbitration, except as may be required by law or for purposes of enforcement. Judgment on any arbitration award may be entered in any court having proper jurisdiction. All administrative fees and expenses of such arbitration proceeding will be divided equally between the parties, though each Party will bear its own expense of counsel, experts, witnesses and preparation and presentation of evidence at the arbitration (except where attorneys' fees and costs shall be awarded pursuant to Section 13.(L)). IF FOR ANY REASON THIS ARBITRATION CLAUSE IS DEEMED INAPPLICABLE OR INVALID, THE PARTIES FOREVER AND WITHOUT EXCEPTION WAIVE, TO THE FULLEST EXTENT ALLOWED BY LAW, ANY RIGHT TO PURSUE ANY CLAIMS ON A CLASS OR CONSOLIDATED BASIS OR IN A REPRESENTATIVE CAPACITY. No action, regardless of form, arising out of or in conjunction with the subject matter of this Agreement may be brought by either Party more than one (1) year after the cause of action arose.

F. **Amendment -** This Agreement cannot be amended except in writing and signed by both Parties.

G. **Electronic Signatures -** This Agreement may be executed by electronic means and in any number of counterparts, each of which when so executed and delivered will be deemed an original, and all such counterparts together will constitute one and the same instrument.


James David Wegener

H. **Injunctive Relief -** In the event of a breach or threatened breach of Section 6 or Section 9, the aggrieved party shall immediately be entitled to pursue in any court of competent jurisdiction specific performance, injunctive relief, damages, or such other remedies and relief as may be available, regardless of any contrary provision of this Agreement. Additionally, due to the difficulty of measuring damages in the event of a breach of this Agreement by Client, the parties agree that, in the event of a breach of either Section 6 or Section 9 by Client, Section 10 will be voided, disabling Client from the refund option of this contract. The Parties further agree that (i) any liquidated damage to be requested by Consultant is an arms-length negotiated amount under the circumstances, and (ii) this Section shall not be construed as a waiver of prohibition of any other remedies of Consultant in the event of a breach of this Agreement by Client.

I. **Independent Counsel -** The Parties acknowledge that each has been advised to seek, and each has had sufficient opportunity to seek, independent legal counsel possessing industry experience in connection with this matter. The Parties have either sought such counsel or voluntarily waived such right to do so. Accordingly, in interpreting this Agreement, no weight shall be placed upon either party. Furthermore, the parties equally drafted this agreement; thus, the Agreement shall be construed neutrally, and no rule of construction shall apply to the disadvantage of any Party.

J. **Assignment –** Neither party may assign its rights or obligations under this Agreement without the prior written consent of the other party. Prior to any such assignment, said assignee shall execute an agreement identical to this Agreement. Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of the parties hereto, their successors, and assigns. Any purported assignment or delegation by either party in violation of the foregoing shall be null and void ab initio and of no force and effect.

K. **Cure -** If at any time either Client or Consultant believes the terms of this Agreement are not being fully performed, prior to seeking or commencing any relief expressly permitted under this Agreement, the respective party shall notify the party in question of performance in writing of the specific nature of such claim, and the party receiving such notice shall have thirty (30) days from receipt of the notice to cure such claimed breach.

James David Wegener

L. **Indemnification of Consultant –** Client agrees to indemnify, defend, and save and hold harmless Consultant, including its respective insurers, directors, officers, employees, agents, and representatives (collectively the "Indemnified Parties" and each an "Indemnified Party"), and to hold each Indemnified Party harmless from and against any and all claims, damages, losses, liabilities and expenses (including all attorneys' fees and costs) which any Indemnified Party may incur or which may be asserted against any Indemnified Party by any person, entity or governmental authority, throughout the world, in connection with or relating to the matters referred to in this Agreement, resulting from or relating directly or indirectly to Client's breach of this Agreement. The foregoing indemnity specifically includes, but is not limited to, any breach of any representation, warranty, or covenant in this Agreement applicable to Client, and shall survive expiration or termination of this Agreement.

M. **Indemnification of Client -** Consultant agrees to indemnify, defend, and save and hold harmless Client, including its respective insurers, directors, officers, employees, agents, and representatives (collectively the "Indemnified Parties" and each an "Indemnified Party"), and to hold each Indemnified Party harmless from and against any and all claims, damages, losses, liabilities and expenses (including all attorneys' fees and costs) which any Indemnified Party may incur or which may be asserted against any Indemnified Party by any person, entity or governmental authority, throughout the world, as a direct result of the services exclusively performed by Consultant under the terms of this agreement, or the Consultants breach of this agreement. The foregoing indemnity specifically includes, but is not limited to, any breach of any representation, warranty, or covenant in this Agreement applicable to Client, and shall survive expiration or termination of this Agreement.

N. **Survival –** Any Section in this Agreement that requires survival shall survive the termination of this Agreement for the maximum period permitted by applicable law.

_____
James David Wegener

O. **Client Data Management –** Unless Consultant receives Client's prior written consent, Consultant shall not: (i) access, process, or otherwise use Client's Data other than as necessary to facilitate Consultant's Services; (ii) give any of its employees access to Client Data except to the extent that such individuals needs access to Client Data to facilitate performance of Consultant under this Agreement; or (iii) give any other third-party access to Client Data except as necessary for such third-party to facilitate performance under this Agreement. Consultant shall not erase Client Data, or any copy thereof, without Client's express written consent and shall follow Client's written instructions regarding retention and erasure of Client Data so long as it does not interfere with the performance of Consultant's Services and performance under this Agreement. Client possesses and retains all right, title, and interest in and to Client Data, and Consultant's use and possession thereof is solely in furtherance of Consultant's Services and on Client's behalf. Consultant shall comply with all applicable laws and regulations governing the handling of Client Data and shall not engage in any activity that would place Client in violation of any applicable law, regulation, or government request, or judicial process.

P. **Waiver of Jury Trial -** EACH PARTY HERETO HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN MATERIALLY INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

James David Wegener

Q. **Ministerial Services –** In furtherance of Client's obligations under Section 2, Consultant may offer Client guidance and referrals to third-party vendors. Additionally, Consultant may, in its discretion, and at no additional fee to Client, offer Client assistance in fulfilment of the obligations in Section 2 ("Ministerial Act"). Before Consultant commences any Ministerial Act, Consultant shall obtain Client's written consent. Client agrees to reimburse Consultant for expenses incurred in carrying out a Ministerial Act. In the event Consultant offers to engage in a Ministerial Act, Client hereby agrees to indemnify, defend and save and hold harmless Consultant from any cost, claim, damage or liability (including attorneys' fees and court costs) related to the Ministerial Act. Client also waives any claims against Consultant that may be related to the Ministerial Act. Client accepts that this indemnification and waiver of all liability related to the Ministerial Act is a material inducement for Consultant to make any offer to Client for such Ministerial Act, and without such indemnification and waiver from Client, Consultant would not make any such offer of assistance to Client to engage in the Ministerial Act. The foregoing indemnity of Client shall survive expiration of the Term of this Agreement or its earlier termination.


James David Wegener

**Attachment CC**               **PX20**                         **001484**

14. **DEFINITIONS –**

Words or phrases which are initially capitalized or are within quotation marks shall have the meanings as provided in Exhibit A of this Agreement, which is fully incorporated by reference and is a material part of this Agreement.

# EXHIBIT A

1.  "Cash Back" means any revenue derived from cash back programs like BeFrugal.

2.  "Client Data" refers to any and all information processed or stored on computers or other electronic media by Consultant, by Client, or on Client's behalf, or provided to Consultant by Client to perform the Services contemplated under this Agreement; including: information on paper or other non-electronic media, information provided to Consultant by Client, and personally identifiable information from Client, Client affiliated third-parties, and other users.

3.  The term "proprietary business information" means Consultant's valuable trade secrets and confidential business information regarding its brand, vendors, sources, suppliers, techniques, processes, products, services, including, but not limited to, information regarding e-commerce transactions, Walmart transactions, training materials, marketing and advertising materials, trade or industrial practices, customer and client correspondence, internal memoranda, project files, marketing plans, distribution channels, and relationships with, and identities of, customers, investors, clients, buyers, sellers, brokers, agents, representatives, distributors, manufacturers, and managers, as well as financial information, business, marketing and operating information, geographic sales information, social media analytics, price comparison information, sales data, sales programs, sales volumes, sales conversion rates, sales methods and processes, sales proposals, products, services, training manuals, sales scripts, income information, profit information, operating procedures, pricing policies, strategic plans, intellectual property, information about Consultant's clients, employees and contractors, and other confidential or proprietary information related to Consultant.

4.  The term "Stores" means the Client's wholly owned e-commerce location on the third-party Walmart.com where products may be sold to third parties (there is no affiliation, endorsement, or sponsorship between Consultant and Walmart).

5.  "Net Profit" means the revenue, income, and sums owed to Client through the operation of Client's Store after deduction of (i) the cost of any goods sold in connection with Client's Store, and (ii) any Walmart fees related to Client's store.


James David Wegener

6. "Prohibited Action" means any affirmative action taken by Consultant which constitutes: (1) willful copyright infringement as defined under the U.S. Copyright Act or (2) late shipping of product, i.e., greater than five (5) days from the date of expected delivery of the goods, solely due to the fault of Consultant, and as to which the actions under (1) and (2) above have resulted in the Suspension of Client's Store

7. "Net Profit" means the revenue, income, and sums owed to Client through the operation of Client's Store after deduction of (i) the cost of any goods sold in connection with Client's Store, and (ii) any Walmart fees related to Client's store.

8. "Prohibited Action" means any affirmative action taken by Consultant which constitutes: (1) willful copyright infringement as defined under the U.S. Copyright Act or (2) late shipping of product, i.e., greater than five (5) days from the date of expected delivery of the goods, solely due to the fault of Consultant, and as to which the actions under (1) and (2) above have resulted in the Suspension of Client's Store

9. "Pause" means the Store is considered in "Vacation Mode" due to a variety of reasons, including, but not limited to, insufficient credit available by Client to permit Consultant to render its services to Client as provided herein.

10. "Suspension" means an action or actions by Walmart which inactivates or freeze Client's Stores, and which thereby results in an inability for Client to access Client's Stores which results in no access or sales activity through the Stores, other than where due to the occurrence of a Prohibited Action.

11. "Vacation Mode" means any action other than a breach of this Agreement by Client which results in a condition of Client's Stores where all sales activity in the Stores have been temporarily halted.

12. The term "Store" means the Client's wholly owned e-commerce location on the third-party Walmart.com where products may be sold to third parties (there is no affiliation, endorsement, or sponsorship between Consultant and Walmart).

# Signature Page

IN WITNESS WHEREOF, this Agreement is deemed executed as of the of the last execution date below.

**CLIENT:**

By: James David Wegener authorized representative and agent for service of process Date: Not yet accepted

Principal of Client acknowledges and agrees to be bound by all of the provisions of this Agreement applicable to Client, as if expressly a party hereto. Accepted and Agreed to by Principal of Client:


James David Wegener

James David Wegener

**CONSULTANT:**

By: PASSIVE SCALING INC. STEVEN BRATISLAV ROZENFELD, CEO, authorized representative and agent for service of process.

Date:  Not yet accepted


Steven Bratislav Rozenfeld

Steven Bratislav
Rozenfeld

**IN THE CIRCUIT COURT**
**FOR PINELLAS COUNTY, FLORIDA**

JAMES DAVID WEGENER
Vs.
PASSIVE SCALING INC

REF  NO. 23-008716-CI
Section 19

**NOTICE OF INTENT TO DISMISS**
**FOR FAILURE TO OBTAIN SERVICE**

TO:    PASSIVE SCALING INC

IN ACCORDANCE WITH Florida Rule of Civil Procedure 1.070 (J), you are hereby notified that the Court, on its own motion, in the above styled case will dismiss the defendant named above, without prejudice and without further notice, for failure to show good cause why service was not obtained on above named defendant(s).

To avoid dismissal of this defendant, a statement of good cause must be filed in writing with the presiding Judge for SECTION 19 at least 5 days prior to **June 25, 2024.** No hearing will be held by the Court unless specifically requested and scheduled on the Courts calendar no later than the deadline to file a statement of good cause.

DATED AND MAILED to the address shown below by U. S. Mail this 24th day of May, 2024.

**KEN BURKE**
**CLERK OF THE CIRCUIT COURT**

315 Court Street, Room 170
Clearwater, FL  33756

PASSIVE SCALING INC
223 VETERANS BLVD
CARLSTADT, NJ 07020

**Attachment CC**                    **PX20**                    **001488**

SALDUTTI LAW GROUP
Robert L. Saldutti, Esquire - 006871992
1040 N. Kings Highway, Ste 100
Cherry Hill, New Jersey 08034
(856) 779-0300
ATTORNEYS FOR PLAINTIFF/47881

| | |
|---|---|
| MATHEW GENES,<br><br>    Plaintiff,<br><br>v.<br><br>PASSIVE SCALING INC<br><br>    Defendant(s). | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>CAMDEN COUNTY<br><br>DOCKET NO. L-465-24; J-054193-24<br><br>    Civil Action<br><br>**WRIT OF EXECUTION** |

## THE STATE OF NEW JERSEY
## TO THE SHERIFF OF THE COUNTY OF CAMDEN

**WHEREAS**, on **05/14/2024**, judgment was recovered by the Plaintiff, in an action in the Superior Court of New Jersey, Law Division, Camden County, against **PASSIVE SCALING INC**, for **$200,939.66** in damages, interest and taxed cost of suits; and

**WHEREAS**, on **05/20/2024** the judgment was entered as Judgment Number **J-054193-24** and there remains due thereon **$200,939.66** in damages plus costs, together with post-judgment interest.

**THEREFORE, WE COMMAND YOU** that you satisfy the said judgment out of the personal property of the said Judgment debtor(s) within your County; and if sufficient personal property cannot be found then, subsequent to your levy and only after receipt of an order of the court pursuant to *R*.4:59-1 (d), out of the real property in your County belonging to the judgment debtor(s) at the time when the judgment was entered or docketed in the office of the Clerk of this Court, or at any time thereafter, in whosesoever hands the same may be.  Any levy pursuant to this writ shall exclude (1) all funds in an account of the debtor with a bank or other financial institution, if all deposits into the account during the 90 days immediately prior to service of the writ were electronic deposits, made on a recurring basis, of funds identifiable by the bank or other financial institution as exempt from execution, levy or attachment under New Jersey or federal law, and (2) all funds deposited electronically in an account of the debtor with a bank or other financial institution during the  two months immediately prior to the account review undertaken by the bank or other financial institution in response to the writ that are identifiable by the bank or other financial institution as exempt from execution, levy or attachment under New Jersey or federal law.  You shall pay said monies realized by you from such property to Robert L. Saldutti, Esq., attorney in this action.

**Attachment CC**                              **PX20**                              **001489**

Within twenty-four months after the date of its issuance you shall return this execution and your proceedings thereon to the Clerk of the Superior Court of New Jersey at Trenton.

**WE FURTHER COMMAND YOU**, that in case of a sale, you make your return of this Writ with your proceedings thereon before this Court and you pay to the Clerk thereof any surplus in your hands within thirty days after the sale.

**Witness, Hon. ROBERT LOUGY, A.J.S.C., Judge of the Superior Court,**
**This 24th day of May 2024**

/s/ Michelle M. Smith, Esq.
Clerk of the Superior Court

**Entered in the Records of Executions**
**Issued in the Superior Court Clerk's Office**

## ENDORSEMENT

| | |
|---|---|
| Judgment Date: | **05/14/2024** |
| Judgment Amount*: | $200,939.66 |
| Additional Costs: | $0.00 |
| Credits: | $0.00 |
| Interest thereon: | $0.00 |
| Sheriff Fees: | $TBD |
| Sheriff's Commission: | $TBD |
| **TOTAL DUE THIS DATE:** | $200,939.66 |

\* "Judgment Amount" includes amount of verdict or settlement, plus pre-judgment court cost, plus any applicable statutory attorney's fees.

Post-judgment Interest applied pursuant to *R.* 4:42-11 has been calculated as **simple interest**. As required by *R.* 4:59-1, attached is the method by which interest has been calculated, taking into account all partial payments made by the defendant.

SALDUTTI LAW GROUP

/s/ Robert L. Saldutti
ROBERT L. SALDUTTI, ESQUIRE

Dated: May 21, 2024























Video on pg 8

FBA Machine                                                                    4/30/2024

---

**3**

```
         OFFICIAL TRANSCRIPT PROCEEDING

         FEDERAL TRADE COMMISSION


    MATTER NO.      2423018

    TITLE           FBA MACHINE

    DATE            RECORDED:    DATE UNKNOWN
                    TRANSCRIBED:  APRIL 15, 2024
    PAGES           1 THROUGH 8


              VIDEO ON PG 8
```

```
 1               FEDERAL TRADE COMMISSION
 2
 3    In the Matter of:            )
 4    FBA Machine                  )  Matter No. 2423018
 5                                 )
 6    -----------------------------)
 7                            Date Unknown
 8
 9
10
11        The following transcript was produced from a
12    digital file provided to For The Record, Inc. on April
13    2, 2024.
14
15
16
17
18
19
20
21
22
23
24
25
```

---

**2**

```
 1              FEDERAL TRADE COMMISSION
 2                  I N D E X
 3
 4    RECORDING:                       PAGE:
 5    Video on pg 8
                                    4
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**4**

```
 1              P R O C E E D I N G S
 2                -   -   -   -   -
 3                 VIDEO ON PG 8
 4          UNIDENTIFIED MALE:  The last seven days,
 5    there's been 4,500 orders here.  Obviously, that kind
 6    of thing picks up over time.
 7          (Pause)
 8          UNIDENTIFIED MALE:  So in this video, we're
 9    going to go through a healthy aged Amazon account
10    under our program.  You can see in the last seven
11    days, there's about 4,500 orders here.  Obviously,
12    that kind of thing picks up over time.  But I just
13    wanted to kind of show what products are through this
14    store and, you know, just for validation purposes.  A
15    lot of people ask questions about what kind of
16    products you're selling and, you know, obviously it's
17    comforting to see a variety of products.  There's
18    hundreds and hundreds of products on this store.
19          But the most important thing is this
20    business reports tab.  When you have a store, this is
21    the dashboard that you'll be able to see.  It's called
22    Amazon Seller Central.  This is where you'll be able
23    to track, monitor the progress of your store over time
24    as it grows.
25          In the Business Reports Section, as we go
```

---

1 (Pages 1 to 4)

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

**Attachment DD**          **PX20**          **001502**

Video on pg 8

**FBA Machine**                                                                                    4/30/2024

---

5

1  here, this is where you'll actually be able to see
2  your sales.  You can see times, business.  You can see
3  total order items and all these kinds of things from
4  this tab and change the date.
5      So you see today is April 26th, 2021.  It
6  looks like there's been just over $10,000 in sales
7  today total on Marketplace.  And so let's go in and
8  just see maybe this month.  So you can see kind of
9  where we're at, $370,000 this month.  It obviously
10  fluctuates a little bit month-to-month depending on,
11  you know, demand, time of year, et cetera, products
12  rotating through.
13      So if we go to year-to-date, it's about
14  2 million so far this year and it looks like we're on
15  track for maybe even, you know, close to 6 million
16  this year.  Obviously, as we continue to scale, we'll
17  increase that.  That does not include the holiday
18  sales yet as well.  So this -- it looks like the store
19  may hit, you know, 7, 8 million this year, which is
20  fantastic.
21      So, you know, the product profit is going to
22  range on each store.  This store is doing about 20
23  percent on average and so that's quite a bit of cash
24  flow coming through this account.
25      So this store has been around for about a

---

7

1  you're coming up, and, you know, whereas in the first
2  quarter, I guess, of this store, that was during a
3  holiday season, so you will see increased sales there.
4  But this is about -- if you go back to today, that is
5  about what we're doing per month now.  And so -- or,
6  sorry, this month.  So it's about what we're doing per
7  month.
8      So this was just kind of a general overview
9  of the sales of an aged account.  Again, this is what
10  you'll see from your Amazon Seller Central as your
11  store scales.  I hope you've appreciated this video.
12  Thank you.
13      (End of recording.)
14
15
16
17
18
19
20
21
22
23
24
25

---

6

1  year and a half.  So we're actually going to go back,
2  and if you look at the lifetime of the store, this
3  store started in September of 2019.  So we're going to
4  go back to September of 2019, and we're going to look
5  at the lifetime of this store.
6      So let's see.  September 2019.  So here we
7  have the lifetime of the store.  It's about 5.3
8  million.  So as you can see, you know, this year it's
9  growing.  We've had more consistent sales as the store
10  has gone on, which is standard as the store gets more
11  credibility on the Amazon Marketplace and becomes a
12  more reliable seller.  You can see that over time it
13  really is kind of just a steady ramp.  Obviously, you
14  know, during specific holiday seasons and sale times,
15  you'll have spikes.  But it's a pretty consistent
16  graph as far as the growth of the store over time.
17      If you look back to the actual beginning --
18  inception of the store, if you look at the first three
19  months, that's a big thing for people.  Like when will
20  I start seeing profits?  How soon will that happen?
21  What can I expect?
22      If you go to the first three months here,
23  you'll see that actually profits start coming in
24  pretty much immediately as far as revenue.  You know,
25  from the very beginning, you start getting sales,

---

8

1              CERTIFICATE OF TRANSCRIPTIONIST
2
3
4      I, Elizabeth M. Farrell, do hereby certify
5  that the foregoing proceedings and/or conversations
6  were transcribed by me via CD, videotape, audiotape or
7  digital recording, and reduced to typewriting under my
8  supervision; that I had no role in the recording of
9  this material; and that it has been transcribed to the
10  best of my ability given the quality and clarity of
11  the recording media.
12      I further certify that I am neither counsel
13  for, related to, nor employed by any of the parties to
14  the action in which these proceedings were
15  transcribed; and further, that I am not a relative or
16  employee of any attorney or counsel employed by the
17  parties hereto, nor financially or otherwise
18  interested in the outcome of the action.
19
20
21  DATE: 4/15/2024      s/Elizabeth M. Farrell
22                       ELIZABETH M. FARRELL, CERT
23
24
25

---

2 (Pages 5 to 8)

**Attachment DD**                    **PX20**                    **001503**