Frances L. Kern
Colleen Robbins
Federal Trade Commission
600 Pennsylvania Ave, NW, CC-8543
Washington, DC 20580
(202) 326-2391; fkern@ftc.gov (Kern)
(202) 326-2548; crobbins@ftc.gov (Robbins)
(202) 326-3395 (Fax)

*Attorneys for Plaintiff Federal Trade Commission*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> THEFBAMACHINE INC. et al., <br><br> Defendants. | CIVIL ACTION NO. 24-6635 (JXN) (LDW) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS APPLICATION FOR PRELIMINARY INJUNCTION WITH OTHER EQUITABLE RELIEF AS TO AMANDA ROZENFELD**

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................... 1

II. STATEMENT OF FACTS ..................................................................................... 2

    A. Daily Distro and FBA.Support LLC .................................................................. 3

    B. Passive Scaling .................................................................................................. 4

III. THE COURT SHOULD ISSUE A PRELIMINARY INJUNCTION AGAINST PEREMEN. ............................................................................................................. 5

    A. The Court Has the Authority to Issue the Preliminary Injunction. ..................... 5

    B. The FTC Is Likely to Succeed on the Merits of Its Claims Against Peremen and the Equities Weigh in Favor of Granting a PI Against Her. ......................... 7

        1. The Court Has Found the FTC Is Likely to Succeed on the Merits of Its Claim and the Equities Weighed in Favor of Granting a TRO Against Individual Defendants. ....................................................................................... 7

        2. Individual Defendant Peremen Is Personally Liable for the Actions of the Corporate Defendants Defendants. .................................................................... 8

IV. A PRELIMINARY INJUNCTION WITH ADDITIONAL EQUITABLE RELIEF IS NECESSARY TO PRESERVE EFFECTIVE FINAL RELIEF AND PREVENT CONTINUING CONSUMER HARM. ................................................. 9

    A. The Court Should Stop Defendants' Ongoing Scam. ...................................... 10

    B. The Court Should Preliminarily Freeze Peremen's Assets to Preserve the Possibility of Providing Refunds to Defendants' Victims. .............................. 10

    C. The Court Should Grant Limited Expedited Discovery. ................................. 12

V. CONCLUSION ..................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*AMG Capital Management v. FTC*, 593 U.S. 67 (2021) .................................................................. 6

*CFTC v. Am. Metals Exch. Corp.*, 991 F.2d 71 (3d Cir. 1993) ........................................................11

*FTC v. Automators LLC*, No. 23-cv-01444 (C.D. Cal. Sept. 8, 2023).............................................. 6

*FTC v. BCO Consulting Servs. Inc.*, No. 23-cv-00699 (C.D. Cal. May 22, 2023).......................... 6

*FTC v. Car Checkers of Am., Inc.*, No. 93-623 (D.N.J. Feb. 26, 1993)............................................ 6

*FTC v. Chinery*, No. 05-3460, 2007 WL 1959270 (D.N.J. July 5, 2007)....................................... 8

*FTC v. Click4Support, LLC*, No. 15-cv-05777 (E.D. Pa. Nov. 10, 2015)....................................... 6

*FTC v. Dutchman Enters.*, LLC, No. 09-141 (D.N.J. June 8, 2009) ............................................... 6

*FTC v. First Consumers LLC*, No. 14-cv-01608 (E.D. Pa. Mar. 27, 2014) .................................... 6

*FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192 (10th Cir. 2005)................................................. 5

*FTC v. Graham*, No. 22-cv-00655 (M.D. Fla. June 21, 2022) ................................................... 6–7

*FTC v. Millennium Telecard*, No. 11-2479, 2011 WL 2745963 (D.N.J. July 12, 2011) ............. 8, 9

*FTC v. Nat'l Invention Servs., Inc.*, No. 97-3459 (D.N.J. Sept. 3, 1997) ....................................... 6

*FTC v. NHS Sys., Inc.*, No. 08-cv-02215 (E.D. Pa. Jan. 30, 2009) .................................................. 6

*FTC v. Noland*, No. cv-20-00047, 2021 WL 4318466 (D. Ariz. Sept. 23, 2021) ..........................11

*FTC v. Pantron I Corp.*, 33 F.3d 1088 (9th Cir. 1994)..................................................................... 5

*FTC v. Penn State Hershey Med. Ctr.*, 914 F.3d 193 (3d Cir. 2019)............................................... 7

*FTC v. Shire Viropharma, Inc.*, 917 F.3d 147 (3d Cir. 2019).......................................................... 8

*FTC v. SL Fin. LLC*, No 23-cv-00698 (C.D. Cal. May 22, 2023) ................................................... 6

*FTC v. Smith*, No. 23-cv-04848 (E.D. Pa. Jan. 31, 2024) ............................................................... 6

*FTC v. Sparta Chem, Inc.*, No. 96-cv-3228 (D.N.J. July 16, 1996)................................................. 6

*FTC v. Stout*, No. 99-5705 (D.N.J. Dec. 22, 1999).......................................................................... 6

*FTC v. United Credit Adjusters, Inc.*, No. 09-798 (D.N.J. Mar. 23, 2009) .................................... 6

*FTC v. Vision Online, Inc.*, No. 23-cv-01041 (M.D. Fla. Aug. 1, 2023)......................................... 6

*FTC v. World Patent Mktg.*, No. 17-cv-20848, 2017 WL 3508639 (S.D. Fla. Aug. 16, 2017)...11, 12

*FTC v. World Wide Factors, Ltd.*, 882 F.2d 344 (9th Cir. 1989)....................................................... 7

*In re Nat'l Credit Mgmt. Grp.*, 21 F. Supp. 2d 424 (D.N.J. 1998)......................................5, 6, 7, 11

*In re Sanctuary Belize Litig.*, 409 F. Supp. 3d 380 (D. Md. 2019) ..................................................11

*Int'l Controls Corp. v. Vesco*, 490 F.2d 1334 (2d Cir. 1974) ...........................................................11

*SEC v. Infinity Grp. Co.*, 212 F.3d 180 (3d Cir. 2000)......................................................................11

*SEC v. Manor Nursing Ctr., Inc.*, 458 F.2d (2d Cir. 1972)................................................................11

*SEC v. Mgmt. Dynamics, Inc.*, 515 F. 2d 801 (2d Cir. 1975) .......................................................... 10

*Sempier v. Johnson & Higgins*, 45 F.3d 724 (3d Cir. 1995) ........................................................... 12

*United States v. Odessa Union Warehouse Coop.*, 833 F.2d 172, 176 (9th Cir. 1987) ................... 7

**Statutes**

15 U.S.C. § 45................................................................................................................................... 1

15 U.S.C. § 45b................................................................................................................................. 1

15 U.S.C. § 53(b) .............................................................................................................................. 5

15 U.S.C. 57b(b)................................................................................................................................ 5

**Rules**

Fed. R. Civ. P. 1.............................................................................................................................. 12

Fed. R. Civ. P. 15(a)(1)(A).............................................................................................................. 2

Fed. R. Civ. P. 26(d)....................................................................................................................... 12

Fed. R. Civ. P. 34(b)....................................................................................................................... 12

**Regulations**

16 C.F.R. Pt. 437............................................................................................................................... 1

## TABLE OF EXHIBITS

| Exhibit | Description | Bates Range |
|---|---|---|
| PX 1 | Declaration of Kirk Bausch | 1–75 |
| PX 2 | Declaration of Eueal Berta | 76–124 |
| PX 3 | Declaration of Michael Hickenlooper | 125–53 |
| PX 4 | Declaration of Giordano Lanuto | 154–77 |
| PX 5 | Declaration of Carlos Angeles, III | 178–22 |
| PX 6 | Declaration of Acacia Chidi | 223–58 |
| PX 7 | Declaration of Alvaro Lizaraso | 259–324 |
| PX 8 | Declaration of Kayleigh Severn | 325–410 |
| PX 9 | Declaration of Pankil Shah | 411–513 |
| PX 10 | Declaration of Shona Killoughery | 514–73 |
| PX 11 | Declaration of Alpesh Patel | 574–630 |
| PX 12 | Declaration of Nichelle Washington | 631–63 |
| PX 13 | Declaration of Lynn Rojas | 664–762 |
| PX 14 | Declaration of Kenny Craig | 763–876 |
| PX 15 | Declaration of Ross Laughter | 877–911 |
| PX 16 | Declaration of Ernest Balenzuela | 912–81 |
| PX 17 | Declaration of Andrew Easton | 982–1073 |
| PX 18 | Declaration of Tyler Broome | 1074–1100 |
| PX 19 | Declaration of Elizabeth Anne Miles | 1101–28 |
| PX 20 | Declaration of Reeve Tyndall | 1129–1503 |
| PX 21 | Declaration of Alison Briginshaw | 1504–31 |
| PX 22 | Declaration of Manny Bayo | 1532–33 |
| PX 23 | Second Declaration of Reeve Tyndall | 1534–57 |

I.   **INTRODUCTION**

On June 3, 2024, Plaintiff, Federal Trade Commission ("Plaintiff" or "FTC"), filed this action and contemporaneously sought an *ex parte* temporary restraining order ("TRO") to halt the operation of an e-commerce automation business opportunity scheme that has cost consumers at least $11.1 million. The complaint alleges that the defendants have deceptively marketed bogus e-commerce business opportunities, luring consumers into investing in a "100% automated" e-commerce store with promises that it will generate passive income and become a "profit generating engine." In truth, most consumers *lost* money after purchasing the business opportunity.

The FTC's complaint (Docket No. 1) alleges that defendants TheFBAMachine Inc. ("FBA Machine"); Passive Scaling Inc. ("Passive Scaling"); Sales.Support New Jersey Inc. ("Sales Support"); 1HR Deliveries Inc. ("1HR"); Hourly Relief Inc. ("Hourly Relief"); 3PL Logistic Automation Inc. ("3PL"); FBA Support NJ Corp. ("FBA Support NJ"); Closter Green Corp. dba Wraith & Co. ("Wraith"); Daily Distro LLC ("Daily Distro"); and Bratislav Rozenfeld, also known as Steven Rozenfeld and Steven Rozen, ("Rozenfeld") (collectively, "Initial Defendants") violated the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45; the FTC's Trade Regulation Rule entitled "Disclosure Requirements and Prohibitions Concerning Business Opportunities" ("Business Opportunity Rule"), 16 C.F.R. Part 437, as amended; and the Consumer Review Fairness Act ("CRFA"), 15 U.S.C. § 45b.

On June 3, the Court issued the TRO (Docket No. 5), which, among other things, (1) froze Initial Defendants' assets, (2) appointed Anthony Sodono, III as temporary receiver ("Receiver") over the corporate defendants, and (3) granted the Receiver and Plaintiff immediate access to Initial Defendants' business premises and business records. As a result of the TRO, Plaintiff found evidence of the current involvement of defendant Amanda Rozenfeld, also known as Amanda Peremen and Amanada Peremen ("Peremen," and collectively with Initial Defendants, "Defendants"), in Defendants' scheme. Rozenfeld and Peremen are married with three children.

Plaintiff served Peremen with the TRO along with a notification to preserve documents and refrain from dissipating assets, in accordance with the TRO, on June 6, 2024. Plaintiff then filed an amended complaint (Docket No. 27) pursuant to Federal Rule of Civil Procedure 15(a)(1)(A), adding Peremen as a defendant and alleging that she violated the FTC Act, the Business Opportunity Rule, and the CRFA.

As discussed below, Peremen has knowledge of and participates in Defendants' unlawful scheme, has taken actions to conceal her identity and involvement in the scheme, and has attempted to obstruct legal process. Her violations of the Business Opportunity Rule and CRFA subject her to liability for consumer redress. Because the information currently available to Plaintiff and the Receiver indicates that the consumer harm Defendants have caused far outstrips Defendants' assets,[1] it is crucial to freeze Peremen's assets to ensure effective final relief for the people Peremen, Rozenfeld, and their companies have defrauded.

**II.      STATEMENT OF FACTS**

As described in greater detail in Plaintiff's Memorandum of Law in Support of Its Emergent *Ex Parte* Application for Temporary Restraining Order, Preliminary Injunction, and Other Equitable Relief (Docket No. 1-17) ("TRO Memo"), Defendants have engaged in deceptive business practices through a number of corporate entities. The FTC has alleged—and provided ample evidentiary support for its claims—that Defendants (1) use false and unsubstantiated earnings claims to persuade consumers to spend thousands, tens of thousands, or even hundreds of thousands of dollars to purchase the Passive Scaling and FBA Machine business opportunities,[2] (2) fail to comply with the Business Opportunity Rule,[3] (3) use form contracts containing non-disparagement clauses that violate the CRFA and further engage in

---

[1] PX 23 ¶ 8.
[2] TRO Memo at 26–28.
[3] *Id.* at 31–34.

2

unfair acts or practices to suppress negative consumer complaints about their business,[4] and (4) led by Rozenfeld, act as a common enterprise in the furtherance of their deceptive scheme.[5]

Peremen has been involved every step of the way.

### A.  Daily Distro and FBA.Support LLC

Peremen's involvement in Defendants' scheme dates back to at least 2019, when Peremen interfaced with a payment processor on behalf of Daily Distro and FBA.Support LLC ("FBA Support").

Peremen was listed as the company principal for Sales Support's Stripe accounts[6] and the company representative for the FBA Support and Daily Distro accounts.[7] The companies described their products as specializing in Amazon sellers and helping "[A]mazon sellers grow their sales."[8] Stripe addressed correspondence to Peremen regarding (1) high chargebacks and consumer disputes with the FBA Support and Daily Distro accounts,[9] (2) insufficient funds in the FBA Support Stripe account,[10] (3) Stripe's need to extend FBA Support reserves because of elevated dispute risk,[11] and termination of the FBA Support and Daily Distro accounts with Stripe.[12] Through these notifications, Peremen has knowledge that Stripe terminated the FBA Support and Daily Distro accounts for high chargebacks and complaints.

In addition to her role in financing for Daily Distro and FBA Support, Peremen has also joined in disguising the ownership of multiple web domains owned by Defendants by using a privacy protection service to hide ownership from the public. Peremen is the registrant and

---

[4] *Id.* at 29–31, 36.

[5] Id. at 37–39.

[6] PX 20, Att. BB, p. 1314 (second row).

[7] PX 20 ¶ 37.

[8] PX 23 ¶ 9.

[9] PX 20, Att. BB, p. 1313 (fourth and fifth rows), p. 1314 (sixth row).

[10] PX 20, Att. BB, p. 1313 (sixth and eighth rows).

[11] PX 20, Att. BB, p. 1313 (seventh row).

[12] PX 20, Att. BB, p. 1314 (first row), p. 1315 (first row).

3

technical, administrative, and billing contact for the "fbasupport" account.[13] This account was used to create the domains passivescaling.com, 3plautomation.com, 1hrdelivery.com, hourlyrelief.com, and the fbamachine.co.[14] Peremen is also listed as the billing point of contact for passivescaling.com, hourlyrelief.com, 3plautomation.com, and 1hrdelivery.com.[15] A credit card belonging to Amanda Rozenfeld was used to purchase domain registrations for websites belonging to Passive Scaling, 3PL, 1HR, and Hourly Relief.[16]

### B. Passive Scaling

Peremen participated in the Passive Scaling iteration of Defendants' scheme. Numerous Passive Scaling contracts list "Amanada Peremen," an alias of Peremen, as Passive Scaling's "Operations Manager, authorized representative and agent for service of process,"[17] and Peremen signed many of those contracts.[18] (Despite Peremen's designation on Passive Scaling contracts as its agent for service of process, Peremen has misidentified herself when faced with service of process and has reluctantly accepted service on behalf of Passive Scaling only after Rozenfeld told her to do so.[19]) Additionally, Peremen sent wire instructions to consumers to pay the initial Passive Scaling fee.[20] Peremen has access to at least two Passive Scaling email addresses:

---

[13] PX 23 ¶ 2.

[14] PX 23 ¶ 2.

[15] PX 23 ¶ 2.

[16] PX 20 ¶ 36.

[17] PX 1 ¶ 8; PX 2 ¶ 7; PX 7 ¶ 7; PX 8 ¶ 4; PX 9 ¶ 5; PX 13 ¶ 9; PX 14 ¶ 8; PX 20 Att. CC, p. 1429.

[18] PX 1 ¶ 8; PX 2 ¶ 7; PX 7 ¶ 7; PX 8 ¶ 4; PX 9 ¶ 5; PX 13 ¶ 9; PX 20 Att. CC, p. 1429.

[19] PX 23, Att. C, p. 1541 (serving papers at the address Passive Scaling lists on its certificate of incorporation as its registered office on Peremen but noting "[w]hen [the process server] arrived, she [Peremen] called Mr. Rosenfeld (*sic*) on the phone and over the speaker phone he stated that she was authorized to accept"); PX 22 ¶¶ 2, 7–8 (attempting to serve, on March 23, 2024, papers at the same address on a woman who denies knowing where Rozenfeld is and gives her name as "Samantha"); PX 23 ¶¶ 7 (providing screenshots of March 23, 2024 service video and Peremen's social media account).

[20] PX 8 ¶ 7 & Att. B, p. 355; PX 13 ¶ 9 & Att. E, p. 711.

amanada@passivescaling.com and sales@passivescaling.com.[21] When seeking refunds from the company, consumers understandably reached out to Peremen.[22]

As the signatory for Passive Scaling on consumer contracts, Peremen knew that she was signing contracts on behalf of a company engaged in the same conduct—helping Amazon sellers by managing their stores and growing their sales—that led to Stripe's termination of the FBA Support and Daily Distro accounts, and she received consumer complaints against Passive Scaling demanding refunds for breach of contract.

Peremen currently earns a salary of $50,000 per year as an employee of Daily Distro, a named corporate defendant that facilitates the current iteration of this scheme, FBA Machine.[23]

### III. THE COURT SHOULD ISSUE A PRELIMINARY INJUNCTION AGAINST PEREMEN.

#### A. The Court Has the Authority to Issue the Preliminary Injunction.

Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers the Court to enjoin violations of "any provision of law enforced by" the FTC. "Section 13(b) provides a Federal court with broad power to fashion appropriate remedies for violations of the FTCA," which "includes the ability 'to grant any ancillary relief necessary to accomplish complete justice.'" *In re Nat'l Credit Mgmt. Grp.*, 21 F. Supp. 2d 424, 462 (D.N.J. 1998) (quoting *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1102 (9th Cir. 1994)). Such ancillary relief includes TROs, preliminary injunctions, and asset freezes. *See FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1203 n.6 (10th Cir. 2005) ("[Section] 13(b)'s grant of authority to provide injunctive relief carries with it the full range of equitable remedies."); *see also infra* nn.25–27 (citing examples). Although asset freezes premised solely on Section 13(b) liability are no longer available in FTC enforcement actions

---

[21] PX 20 ¶ 45.

[22] *See, e.g.*, PX 13 ¶ 22 & Att. L, p. 732 (addressing refund demand to Peremen and sending via certified mail); PX 23 Att. B, p. 1537 (addressing refund request to "Passive Scaling Inc./Amanda (*sic*) Peremen").

[23] PX 23 Att. A.

following *AMG Capital Management v. FTC*, 593 U.S. 67 (2021),[24] this action is brought under both Sections 13(b) and 19 of the FTC Act. The latter section authorizes relief that includes "recission or reformation of contracts, the refund of money or return or property, [and] the payment of damages," 15 U.S.C. 57b(b), for violations of FTC trade regulation rules—here, the Business Opportunity Rule and the CRFA.

This Court,[25] other courts in the Third Circuit,[26] and courts throughout the nation have granted temporary restraining orders and preliminary injunctions like the relief sought here, including in enforcement actions brought after *AMG*.[27]

---

[24] In *AMG*, the Supreme Court held that the FTC does not have authority to obtain equitable monetary relief when proceeding solely under Section 13(b) but noted that "[n]othing we say today . . . prohibits the Commission from using its authority under § 5 and § 19 to obtain restitution on behalf of consumers." 593 U.S. at 75, 82.

[25] *See, e.g.*, *FTC v. United Credit Adjusters, Inc.*, No. 09-798 (D.N.J. Mar. 23, 2009) (granting preliminary injunction with asset freeze and conduct prohibitions); *FTC v. Dutchman Enters., LLC*, No. 09-141 (D.N.J. June 8, 2009) (granting stipulated preliminary injunction with conduct prohibitions and asset freeze); *FTC v. Sparta Chem, Inc.*, No. 96-cv-3228 (D.N.J. July 16, 1996) (granting stipulated preliminary injunction with asset freeze and receiver); *FTC v. Stout*, No. 99-5705 (D.N.J. Dec. 22, 1999) (granting stipulated preliminary injunction); *Nat'l Credit Mgmt. Grp.*, 21 F. Supp. 2d at 461–63 (granting preliminary injunction with asset freeze and appointment of receiver); *FTC v. Nat'l Invention Servs., Inc.*, No. 97-3459 (D.N.J. Sept. 3, 1997) (granting preliminary injunction with asset freeze and expedited asset discovery); *FTC v. Car Checkers of Am., Inc.*, No. 93-623 (D.N.J. Feb. 26, 1993) (granting stipulated order for preliminary injunction).

[26] *See, e.g.*, *FTC v. Smith*, No. 23-cv-04848 (E.D. Pa. Jan. 31, 2024) (granting preliminary injunction with conduct prohibitions, asset freeze, financial disclosures, and expedited discovery); *FTC v. Click4Support, LLC*, No. 15-cv-05777 (E.D. Pa. Nov. 10, 2015) (granting preliminary injunction with conduct prohibitions, asset freeze, appointment of receiver, and immediate access); *FTC v. First Consumers LLC*, No. 14-cv-01608 (E.D. Pa. Mar. 27, 2014) (granting preliminary injunction with conduct prohibitions, asset freeze, access to business records, and expedited discovery); *FTC v. NHS Sys., Inc.*, No. 08-cv-02215 (E.D. Pa. Jan. 30, 2009) (granting stipulated preliminary injunction with conduct prohibitions, asset freeze, and expedited discovery).

[27] *See, e.g.*, *FTC v. Automators LLC*, No. 23-cv-01444 (C.D. Cal. Sept. 8, 2023) (granting, post *AMG*, stipulated preliminary injunction with conduct prohibitions, asset freeze, and appointment of receiver in action seeking Section 19 relief); *FTC v. Vision Online, Inc.*, No. 23-cv-01041 (M.D. Fla. Aug. 1, 2023) (granting, post *AMG*, stipulated preliminary injunction with conduct prohibitions, asset freeze, appointment of receiver, and expedited discovery in action seeking Section 19 relief); *FTC v. BCO Consulting Servs. Inc.*, No. 23-cv-00699 (C.D. Cal. May 22, 2023) (granting, post *AMG*, preliminary injunction with conduct prohibitions, asset freeze, appointment of receiver, and expedited discovery in action seeking Section 19 relief); *FTC v. SL Fin. LLC*, No 23-cv-00698 (C.D. Cal. May 22, 2023) (granting, post *AMG*, stipulated preliminary injunction with conduct prohibitions, asset freeze, appointment of receiver, and expedited discovery); *FTC v. Graham*, No. 22-cv-00655 (M.D. Fla. June 21, 2022) (granting,

(*continued*)

In determining whether to grant preliminary injunctive relief, the FTC must demonstrate that it is likely to succeed on the merits of its claims and that a balancing of the equities weighs in favor of granting the requested relief. *See FTC v. Penn State Hershey Med. Ctr.*, 914 F.3d 193, 197 (3d Cir. 2019). In statutory enforcement actions like the one here, "[h]arm to the public interest is presumed," *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 346 (9th Cir. 1989), because "[t]he passage of the FTC [Act] . . . results in an implied finding that violations of this statutory enactment will harm the public and should be restrained if necessary," *Nat'l Credit Mgmt.*, 21 F. Supp. 2d at 439. Accordingly, the Court "'need only to find some chance of probable success on the merits'" to grant the requested relief. *World Wide Factors*, 882 F.2d at 347 (quoting *United States v. Odessa Union Warehouse Coop.*, 833 F.2d 172, 176 (9th Cir. 1987)). Furthermore, when a court balances the equities, "the public interest should receive greater weight" against a private interest. *Id.* Effective relief for the FTC is a public interest. *Id.*

### B. The FTC Is Likely to Succeed on the Merits of Its Claims Against Peremen and the Equities Weigh in Favor of Granting a PI Against Her.

#### 1. The Court Has Found the FTC Is Likely to Succeed on the Merits of Its Claims and the Equities Weighed in Favor of Granting a TRO Against Initial Defendants.

The FTC fully briefed its initial *ex parte* application for a temporary restraining order against Rozenfeld and the nine companies he controls and operates. (*See* Docket No. 1-17 and its accompanying 21 exhibits (Docket Nos. 1-21–1-47).) Based on this evidence, the court found good cause to believe that the FTC is likely to succeed on the merits of its claims and the equities weigh in favor of granting the requested TRO to enjoin Defendants' scheme and preserve effective relief for consumers. (*See* Docket No. 5 at 2–4.) This Court found that, in numerous instances, Defendants, in the marketing and selling of business opportunities and coaching services, have violated the FTC Act and rules governing their conduct. It found Defendants have (1) made false or unsubstantiated earnings claims, (2) violated multiple trade regulation rule provisions in the selling of Defendants' Products, and (3) used threats and non-disparagement

---

post *AMG*, stipulated preliminary injunction with conduct prohibitions, asset freeze, and appointment of receiver).

7

clauses to discourage purchasers from publishing truthful reviews about Defendants and their products or services. (*Id.* at 2.)

In addition, after weighing the equities and considering the likelihood of ultimate success on the merits, the Court found that there was good cause for, *inter alia*, appointing a temporary receiver, freezing Defendants' assets, and permitting Plaintiff and the Receiver to take expedited discovery. (*Id.* 3–4.)

### 2. Individual Defendant Peremen Is Personally Liable for the Actions of the Corporate Defendants.[28]

To establish individual liability for corporate violations and to obtain an injunction, the FTC must show that the individual defendant participated directly in the deceptive acts or practices or had the authority to control them. *FTC v. Millennium Telecard*, No. 11-2479, 2011 WL 2745963, at *9 (D.N.J. July 12, 2011). To obtain monetary relief from an individual, the FTC must show that the individual had some knowledge of the corporation's unlawful acts or practices. *Id.* Here, the evidence establishes that Peremen should be held liable for injunctive and monetary relief for Defendants' violations.

Authority to control can be evidenced by active involvement in business affairs, the making of corporate policy, or assumption of duties of a corporate officer. *FTC v. Chinery*, No. 05-3460, 2007 WL 1959270, at *6 (D.N.J. July 5, 2007). As noted above, Peremen was the point of contact for the merchant accounts for Daily Distro and FBA Support. Peremen also was Operations Manager of Passive Scaling, signed consumer contracts on behalf of Passive Scaling, and paid for some of the corporate defendants' domains. As such, she directly participated in the business affairs of the corporate defendants, which were riddled with deception and overwhelmed with consumer complaints to the point that a new iteration, FBA Machine, was

---

[28] Although Plaintiff had evidence of Peremen's involvement with Daily Distro and Passive Scaling prior to filing, Plaintiff was unable to find evidence linking her to the latest iteration of the scheme, FBA Machine. Plaintiff did not initially include her in this lawsuit lest she had entirely ceased her involvement with the schemes. *See, e.g., FTC v. Shire Viropharma, Inc.*, 917 F.3d 147, 156 (3d Cir. 2019) (holding that Section 13(b) of the FTC Act "prohibits existing or impending conduct"). After filing, Rozenfeld admitted that Peremen is currently employed by Daily Distro, a named corporate defendant that facilitates the FBA Machine's scheme. (*See* PX 23 Att. B.)

required to avoid financial ruin. Her direct participation continued after FBA Machine was created.

The knowledge element required for monetary relief need not involve proof of a subjective intent to defraud; it may be satisfied by a showing of actual knowledge of material misrepresentations, reckless indifference to the truth or falsity of such misrepresentations, or an awareness of a high probability of fraud along with an intentional avoidance of the truth. *Millennium Telecard*, 2011 WL 2745963, at *9. Peremen should be aware that the purported success Defendants boast about in their advertising does not represent what a typical consumer can achieve, and that Defendants lack substantiation for the income claims they make.[29] As point of contact on Daily Distro and FBA Support's merchant accounts, Peremen received notice of high chargebacks, "an unusually high level of disputes from customers,"[30] and account terminations. As Operations Manager at Passive Scaling, Peremen signed the contracts that contained a non-disparagement clause, and she received complaints and requests for refunds. She also knows that Passive Scaling has been sued because at least twice she was served with legal papers, despite attempting to thwart service. Thus, Peremen has the requisite knowledge of the unlawful conduct.

### IV. A PRELIMINARY INJUNCTION WITH ADDITIONAL EQUITABLE RELIEF IS NECESSARY TO PRESERVE EFFECTIVE FINAL RELIEF AND PREVENT CONTINUING CONSUMER HARM.

In addition to an injunction stopping Defendants' illegal conduct, the FTC seeks refunds pursuant to Section 19 of the FTC Act for consumer victims of Defendants' fraudulent scheme. To preserve the possibility of such relief, a preliminary injunction is crucial to prevent Defendants from dissipating assets and destroying evidence. The FTC respectfully requests a preliminary injunction to immediately freeze Peremen's assets and permit the FTC limited

---

[29] PX 19 ¶¶ 6, 11–13, 17. In an arbitration proceeding, Passive Scaling admitted the profit calculator used to induce consumers to purchase the business opportunity was false, and the arbitrator found the "respondent engaged in these unlawful actions knowingly and willfully." PX 20, Att. CC, pp. 1408, 1410.

[30] PX 20, Att. BB, pp. 1313 (fourth and fifth rows), 1314 (sixth row).

expedited discovery. As discussed in Section III.A above, many courts have granted such relief in similar cases.

### A. The Court Should Stop Defendants' Ongoing Scam.

Because Peremen is still an employee of Daily Distro, conduct relief enjoining her deceptive practices is essential. To prevent ongoing consumer injury, Section I of the proposed preliminary injunction would prohibit Peremen from making false or unsubstantiated earnings claims, engaging in unfair complaint-suppression tactics, and violating the Business Opportunity Rule and the CRFA. These measures simply would require Peremen to comply with the law and fit squarely within the Court's injunctive authority under Section 13(b) of the FTC Act.

"[T]he commission of past illegal conduct is highly suggestive of the likelihood of future violations." *SEC v. Mgmt. Dynamics, Inc.*, 515 F. 2d 801, 807 (2d Cir. 1975). That is certainly true here, as Defendants have continued their unlawful business practices unabated when challenged with evidence of their fraudulent activity. They are uniquely situated to know that virtually none of their clients has made the earnings they promised to consumers.[31] Further, specific notice that their practices are deceptive from their own customers, along with seven lawsuits and multiple arbitration proceedings, has left them unmoved. Under these circumstances, immediate injunctive relief is necessary to protect additional consumers from being harmed by Defendants' ongoing unlawful practices.

### B. The Court Should Preliminarily Freeze Peremen's Assets to Preserve the Possibility of Providing Refunds to Defendants' Victims.

Through this action, the FTC seeks refunds for consumers harmed by Defendants' scheme. To preserve the possibility of such relief, the FTC respectfully requests that the Court freeze Peremen's assets and order an immediate accounting to prevent concealment or dissipation of assets pending a final resolution. (*See* Proposed Preliminary Injunction Sections III–VII.)

---

[31] Defendants were added as secondary users on their clients' Amazon accounts. PX 19 ¶ 6. Clients also told Defendants that their stores were not generating the represented income. *See, e.g.*, PX 1 ¶ 32; PX 6 ¶ 19; PX 15 ¶¶ 12–16.

An asset freeze is appropriate once the Court determines that the FTC is likely to prevail on the merits of a Section 19 claim and the refund of money would be an appropriate final remedy. *See FTC v. Noland*, No. cv-20-00047, 2021 WL 4318466, at *5 (D. Ariz. Sept. 23, 2021). "A freeze of assets is designed to preserve the status quo by preventing the dissipation and diversion of assets." *SEC v. Infinity Grp. Co.*, 212 F.3d 180, 197 (3d Cir. 2000) (citing *CFTC v. Am. Metals Exch. Corp.*, 991 F.2d 71, 79 (3d Cir. 1993)). Where "the law presumes irreparable harm, as in an FTC enforcement action, the FTC need only establish 'a possibility of dissipation of assets'" to obtain an asset freeze. *In re Sanctuary Belize Litig.*, 409 F. Supp. 3d 380, 419 (D. Md. 2019). Moreover, "[d]issipation does not necessarily mean that assets will be spirited away in secret; rather, it means that less money will be available for consumer redress." *FTC v. World Patent Mktg.*, No. 17-cv-20848, 2017 WL 3508639, at *17 (S.D. Fla. Aug. 16, 2017). "When . . . business operations are permeated by misrepresentations and fraud, the likelihood that assets may be dissipated during the pendency of the legal proceedings is strong." *Nat'l Credit Mgmt. Grp.*, 21 F. Supp. 2d at 462; *see also Int'l Controls Corp. v. Vesco*, 490 F.2d 1334, 1347 (2d Cir. 1974) (affirming asset freeze to assure compensation for victims of securities fraud); *SEC v. Manor Nursing Ctr., Inc.*, 458 F.2d 1082, 1106 (2d Cir. 1972) (affirming asset freeze based on the fraudulent nature of appellants' conduct and uncertainty about the extent of assets).

An asset freeze is necessary here to preserve the status quo, ensure that funds do not disappear during the course of the action, and preserve assets for consumer redress. As described above, Defendants' business model is permeated with deceptive and unfair practices, and has taken in at least $11.1 million from consumers. Where a company's business operations are permeated by fraud, as they are here, courts have found a strong likelihood that assets may be dissipated during the pendency of the case. *Manor Nursing Ctr.*, 458 F.2d at 1106 ("Because of the fraudulent nature of appellants' violations, the court could not be assured that appellants would not waste their assets prior to refunding public investors' money"). Some courts also

consider whether the amount of frozen assets will be sufficient to compensate consumers.[32] Here, the frozen funds pale in comparison to the amount of consumer harm.[33]

Rozenfeld has used some of the spoils of this scheme to purchase a $1.275 million home he shares with Peremen. Without an asset freeze, Defendants are likely to dissipate assets, rendering effective relief impossible.

### C. The Court Should Grant Limited Expedited Discovery.

To unravel the tangle of corporations involved in this matter, ensure the preservation of relevant documents, and locate assets wrongfully obtained from consumers, Sections V and XXI of the proposed preliminary injunction require Peremen to produce certain financial information and permit the FTC to conduct expedited discovery to ascertain the existence and whereabouts of relevant assets and evidence.

District courts are authorized to depart from normal discovery procedure and fashion a discovery schedule that meets the needs of a particular case. *See* Fed. R. Civ. P. 1, 26(d), 34(b); *see also Sempier v. Johnson & Higgins*, 45 F.3d 724, 734 (3d Cir. 1995) ("[D]istrict courts have broad discretion to manage discovery."). Here, limited expedited discovery is essential to ensure that the FTC and the Court are fully informed of the location, nature, and extent of the Initial Defendants' and Peremen's assets and compliance with the order.

Peremen has apparently lied when accepting service of a Passive Scaling lawsuit and has demonstrated that she has no qualms obstructing justice. The proposed preliminary injunction provisions will assist in implementing the asset freeze, preventing the dissipation of assets, and preserving relevant documents. Numerous courts in this district and throughout the country have entered preliminary injunctions with such provisions in appropriate FTC matters in the past.[34]

---

[32] *See, e.g.*, *World Patent Mktg.*, 2017 WL 3508639, at *17 ("Dissipation does not necessarily mean that assets will be spirited away in secret; rather, it means that less money will be available for consumer redress.").

[33] PX 18 ¶ 82; PX 23 ¶ 8 (stating that, as of June 26, 2024, a total of approximately $195,500 in cash and marketable securities was frozen, of which approximately $56,300 is held by Rozenfeld individually or jointly with Peremen).

[34] *See, e.g.*, *supra* nn.25–27.

Any hardship to Peremen from the relief sought would be temporary and is dwarfed by the public's interest in preserving evidence and securing assets obtained through Defendants' unlawful conduct.

## V.      CONCLUSION

Defendants have bilked consumers of at least $11.1 million through their use of false earnings claims, illegal contract provisions, and unfair complaint-suppression tactics. Amanda Peremen stood on the front lines of the scam, actively advanced it, and knowingly harmed innocent consumers. It is past time to bring an end to Defendants' pernicious scheme. To ensure that Defendants cease their unlawful conduct during the pendency of this matter and to preserve effective final relief, the FTC respectfully requests that the Court grant its motion for a preliminary injunction, with ancillary equitable relief to include Peremen.

Respectfully submitted,

Dated:  June 28, 2024

   s/ Frances L. Kern
Frances L. Kern (Minnesota Bar No. 0395233)
Colleen Robbins (New Jersey Bar No. 027091997)
Federal Trade Commission
600 Pennsylvania Avenue, NW, CC-8543
Washington, DC 20580
(202) 326-2391; fkern@ftc.gov (Kern)
(202) 326-2548; crobbins@ftc.gov (Robbins)
(202) 326-3395 (fax)

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION