Mark M. Makhail
Ryan M. Magee
**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 622-4444

*Attorneys for Defendant*
*Amanda Rozenfeld*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Civil Action No. 2:24-cv-6635 |
| Plaintiff, | |
| | **Hon. Julien Xavier Neals, U.S.D.J.** |
| v. | **Hon. Leda Dunn Wettre, U.S.M.J.** |
| THEFBAMACHINE INC. et al., | |
| Defendants. | |

**DEFENDANT AMANDA ROZENFELD'S MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...............................................................................1

BACKGROUND ......................................................................................................2

LEGAL ARGUMENT ..............................................................................................3

    I.     Preliminary Injunction Standard ...........................................................3

    II.    FTC Fails to Meet the Standard for a Preliminary Injunction ..............4

          A.     FTC Fails to Show that it Will Succeed on the Merits Against Amanda Rozenfeld ...........................................................4

          B.     FTC Fails to Show that it Will Face Irreparable Harm Absent Injunctive Relief .............................................................9

          C.     Amanda Rozenfeld Faces Substantial Harm from an Asset Freeze for Actions She Had No Knowledge Of .............11

          D.     The Public Interest Weighs Against a Preliminary Injunction and Asset Freeze.......................................................12

    III.   Expedited Discovery is Unnecessary Because FTC is Not Entitled To a Freeze of Amanda Rozenfeld's Assets ........................13

CONCLUSION .......................................................................................................13

ME1 49330363v.2

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Apollo Techs. Corp. v. Centrosphere Indus. Corp.*,
  805 F. Supp. 1157 (D.N.J. 1992) ...............................................................................5

*Drosos & Assocs., PC v. TD Bank NA*,
  2023 WL 41455619 (D.N.J. June 23, 2023) ............................................................4, 8

*F.T.C. v. Chinery*,
  2007 WL 1959270 (D.N.J. July 5, 2007) ...................................................................7

*Ferring Pharms. Inc. v. Watson Pharms.*,
  2013 WL 1405226 (D.N.J. Apr. 4, 2013) ..................................................................4

*Ferring Pharms., Inc. v. Watson Pharms., Inc.*,
  765 F.3d 205 (3d Cir. 2014) .....................................................................................11

*FTC v. Penn State Hershey Med. Ctr.*,
  914 F.3d 193 (3d Cir. 2019) .........................................................................4, 11, 12

*Golden Fortune Import & Export Co. v. Mei-Xin Ltd.*,
  2022 WL 3536494 (3d Cir. Aug. 5, 2022) ............................................................9, 10

*Guille v. Johnson*,
  2020 WL 409743 (D.N.J. Jan. 24, 2020) ...................................................................5

*Juul Labs, Inc. v. 4x PODS.*,
  439 F. Supp. 3d 341 (D.N.J. 2020) ...........................................................................12

*Lane v. New Jersey*,
  725 F. App'x 185 (3d Cir. 2018) ................................................................................3

*Ride the Ducks of Phila., LLC v. Duck Boat Tours, Inc.*,
  138 F. App'x 431 (3d Cir. 2005) ..............................................................................13

**Statutes**

Federal Trade Commission Act Section 5, 15 U.S.C. §§ 41–58 .......................2, 6, 8

ME1 49330363v.2

## **PRELIMINARY STATEMENT**

Defendant Amanda Rozenfeld ("A. Rozenfeld") respectfully submits this brief in opposition to Plaintiff Federal Trade Commission ("FTC")'s application to extend the preliminary injunction in this case to include equitable relief against her. Through its application, FTC is essentially seeking to use A. Rozenfeld's assets as an additional source of potential recovery for violations of the Federal Trade Commission Act ("FTCA") committed by others. The essence of FTC's argument is that because A. Rozenfeld's name appears on a handful of documents and emails for the Corporate Defendants, and because she received a salary from Daily Distro, LLC, she is equally liable for any of the Corporate Defendants' actions.

The fleeting circumstantial evidence that FTC provided against A. Rozenfeld is directly contradicted by her affidavit, submitted herewith, which demonstrates that A. Rozenfeld: 1) had no knowledge of any of the Corporate Defendants' or Bratislav Rozenfeld's business practices or operations; 2) was never a representative of any of the Corporate Defendants; 3) did not act as a representative of any of the Corporate Defendants for any payment processor and did not know she was listed as such; 4) did not serve as the Operations Manager of Passive Scaling; 5) did not have access to any email accounts in her name for Passive Scaling; 6) did not sign any contracts for Passive Scaling; and 7) did not perform any services for Daily Distro LLC. In short, A. Rozenfeld had no knowledge of or involvement with any of the

Corporate Defendants. Accordingly, FTC has not established a likelihood of success on the merits against her, making a preliminary injunction and asset freeze against her wholly inappropriate.

## BACKGROUND

On June 3, 2024, FTC filed this action against Defendants 1 HR Deliveries, Inc., 3PL Logistic Automation, Inc., Closter Green Corp., Daily Distro LLC, FBA Support NJ Corp., Hourly Relief Inc., Passive Scaling Inc., Sales Support New Jersey, Inc., the FBA Machine Inc. (collectively, the "Corporate Defendants") and Bratislav Rozenfeld a/k/a Steven Rozenfeld ("S. Rozenfeld"), alleging violations of Section 5 of the Federal Trade Commission Act, 15 U.S.C. §§ 41–58 (the "FTCA"). (*See* FTC's Complaint, ECF No. 1).

After obtaining an *ex parte* temporary restraining order ("TRO") and the installation of a receiver against the Corporate Defendants and S. Rozenfeld, (ECF No. 5), on June 14, 2024, FTC filed an Amended Complaint, adding A. Rozenfeld as a defendant. (*See* FTC's Amended Complaint, ECF No. 27 ("Am. Compl.")). FTC claims that because email accounts created and listed in A. Rozenfeld's name interacted with payment processors and customers, that A. Rozenfeld's name appeared on some contracts for Passive Scaling, and because she received a salary from Daily Distro LLC, A. Rozenfeld somehow knew of, and participated in, the Corporate Defendants' purported scheme. (*See* Am. Compl. ¶¶ 20, 23, 27, 48, 50,

2

52). Contrary to the FTC's allegations, A. Rozenfeld only learned of the operations, business practices, and industry of the Corporate Defendants after reading FTC's Amended Complaint. (Affidavit of Amanda Rozenfeld Submitted Herewith ("A. Rozenfeld Aff.") ¶ 5). A. Rozenfeld has never represented herself to be a representative of FBA.Support LLC or Daily Distro LLC. (*Id.* ¶¶ 7–8). She has never been the Operations Manager of Passive Scaling, never signed any contracts on its behalf, and did not have access to any email accounts associated with the passivescaling.com domain, including email accounts seemingly bearing her name. (*Id.* ¶¶ 9–11). While A. Rozenfeld did receive $50,000 per year from Daily Distro LLC, those payments were described to her as spending money for her and her family. (*Id.* ¶ 12). She did not perform any services for Daily Distro LLC in exchange for that money. (*Id.*). In short, A. Rozenfeld has had no involvement with any of the Corporate Defendants and had no knowledge of their or S. Rozenfeld's business practices. (*Id.* ¶¶ 3–5).

## LEGAL ARGUMENT

**I.     Preliminary Injunction Standard**

A preliminary injunction is "an extraordinary remedy and should be granted only in limited circumstances." *Lane v. New Jersey*, 725 F. App'x 185, 187 (3d Cir. 2018) (quoting *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004)). In determining whether that extraordinary remedy should be granted, courts must

consider: "(1) the likelihood of success on the merits; (2) the threat of irreparable harm in the absence of an injunction; (3) the possibility of substantial harm to other interested parties; and (4) the public interest." *FTC v. Penn State Hershey Med. Ctr.*, 914 F.3d 193, 197 (3d Cir. 2019).

## II. FTC Fails to Meet the Standard for a Preliminary Injunction

### A. FTC Fails to Show that it is Likely to Succeed on the Merits Against Amanda Rozenfeld

The Court should deny FTC's application because relying upon circumstantial, speculative accusations without concrete proof, as FTC does in its claims against A. Rozenfeld, cannot be used to demonstrate a likelihood of success on the merits. Indeed, the likelihood of success on the merits standard requires the plaintiff to demonstrate "a reasonable probability of eventual success in the litigation." *Ferring Pharms. Inc. v. Watson Pharms.*, 2013 WL 1405226, at *5 (D.N.J. Apr. 4, 2013) (quoting *Assisted Living Assoc. of Moorestown, LLC v. Moorestown Twp.*, 996 F. Supp. 409, 433 (D.N.J. 1998)). A plaintiff must demonstrate that "its chances of establishing *each* of the elements of the claim are significantly better than negligible." *Drosos & Assocs., PC v. TD Bank NA*, 2023 WL 41455619, at *4 (D.N.J. June 23, 2023) (emphasis added) (quoting *Mallet & Co. v. Lacayo*, 16 F.4th 364, 380 (3d Cir. 2021)).

To establish a likelihood of success on the merits against A. Rozenfeld, FTC must show that A. Rozenfeld had knowledge of the alleged wrongdoing. *FTC v.*

4

*Millennium Telecard, Inc.*, 2011 WL 2745963, at *9 (D.N.J. July 11, 2011). FTC rests its case on circumstantial evidence to try to establish that A. Rozenfeld knew of the FTCA violations allegedly committed by S. Rozenfeld and the Corporate Defendants. That circumstantial evidence, however, is directly contradicted and refuted by A. Rozenfeld's affidavit submitted with this opposition. (*See* A. Rozenfeld Aff. ¶¶ 2–14). At the very least, the facts of FTC's application are no longer undisputed, and the chances of proving the requisite elements of a cause of action against A. Rozenfeld are now negligible. FTC cannot escape this reality. Attempting to call the veracity of A. Rozenfeld's affidavit, which FTC will presumptively attempt to do in reply, creates a credibility question, which inevitably means that that FTC cannot carry its burden of showing a likelihood of success on the merits for preliminary injunction purposes. *See Guille v. Johnson*, 2020 WL 409743, at *1 (D.N.J. Jan. 24, 2020) (denying the plaintiff's application for a preliminary injunction because of credibility questions and fact disputes); *see also Apollo Techs. Corp. v. Centrosphere Indus. Corp.*, 805 F. Supp. 1157, 1191 (D.N.J. 1992) ("a preliminary injunction cannot be issued when there are disputes issues of fact.").

Additionally, FTC emphasizes that this Court found FTC is likely to succeed on the merits of its claims against S. Rozenfeld and the Corporate Defendants on its *ex parte* application for a temporary restraining against those Defendants. (*See*

5

FTC's Mem. of Law, ECF No. 34-1 ("Moving Br.") at 7–8). That fact is completely irrelevant to A. Rozenfeld because that application was made *ex parte*, meaning no party could refute the allegations, before A. Rozenfeld was even a party to the case, and reflects the weakness of FTC's case. What's more, S. Rozenfeld's conduct is irrelevant to the likelihood of success on the merits *against A. Rozenfeld*.

In this regard, a different standard applies to individual defendants accused of violating Section 5 of the FTCA. An individual is only liable for a corporation's violations of the FTCA if FTC establishes "(1) [s]he participated directly in the deceptive acts or had the authority to control them and (2) [s]he had knowledge of the misrepresentations, was recklessly indifferent to the truth or falsity of the misrepresentation, or was aware of a high probability of fraud along with an intentional avoidance of the truth." *Millennium Telecard, Inc.*, 2011 WL 2745963, at *9 (quoting *FTC v. Stefanchik*, 559 F.3d 924, 931 (9th Cir. 2009)).

As outlined below, FTC fails to demonstrate it can ever succeed on a claim under Section 5 of the FTCA against A. Rozenfeld, let alone that such success is likely solely based on the allegations asserted.

    1.    <u>Amanda Rozenfeld Did Not Participate in or Have Any Control Over the Corporate Defendants' Acts</u>

FTC offers no direct evidence of any kind that A. Rozenfeld was aware of *any* of the Defendant Corporations' activities, let alone any alleged violations of the FTCA. Likewise, FTC fails to establish how she participated in or had the authority

6

to control them. This is because it cannot provide any evidence establishing participation or control. To demonstrate that A. Rozenfeld had direct control over the actions of the Corporate Defendants, FTC must show that she had "active involvement in business affairs and the making of corporate policy, including assuming the duties of a corporate officer." *FTC v. Chinery*, 2007 WL 1959270, at *6 (D.N.J. July 5, 2007) (quoting *FTC v. Amy Travel Servs., Inc.*, 875 F.2d 564, 573 (7th Cir. 1989)).

FTC cannot show that A. Rozenfeld had any direct participation in the affairs of the Corporate Defendants. Rather, FTC's entire theory of liability is purely speculative based on the following circumstantial "evidence": (a) email accounts in A. Rozenfeld's name interacted with payment processors and customers, (b) her name appeared on some contracts for Passive Scaling, and (c) she received a salary from Daily Distro. (*See* Am. Compl. ¶¶ 20, 23, 27, 48, 50, 52). Indeed, A. Rozenfeld, in a sworn affidavit, denies the substance of those claims and refutes any knowledge of or involvement with the Corporate Defendants. (*See* A. Rozenfeld Aff. ¶¶ 7–13). FTC's speculation falls woefully short of demonstrating that A. Rozenfeld either participated in, or had the authority to control, the Corporate Defendants' allegedly deceptive practices or even that she had knowledge of any misrepresentations made by them, a threshold element of FTC's claims. *See Millennium Telecard*, 2011 WL 2745963, at *9.

Accordingly, FTC fails to establish an essential element of a violation of Section 5 of the FTCA, making a preliminary injunction inappropriate against A. Rozenfeld. *Drosos & Assocs.*, 2023 WL 41455619, at *4.

### 2. Amanda Rozenfeld Had No Knowledge of Any Misrepresentations Made by the Corporate Defendants or Steven Rozenfeld

Additionally, FTC fails to establish how or if A. Rozenfeld knew about any misrepresentations made by the Corporate Defendants or S. Rozenfeld. To establish this element of a Section 5 claim, FTC must demonstrate the "individual had 'actual knowledge of material misrepresentations, [was] recklessly indifferent to the truth or falsity of a misrepresentation, or had an awareness of a high probability of fraud along with an intentional avoidance of the truth.'" *Millennium Telecard, Inc.*, 2011 WL 2745963, at *9 (quoting *FTC v. Publ'g Clearance House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997)).

FTC alleges that A. Rozenfeld should have known that the earnings claims made by the other Defendants were overblown based on notice she allegedly received of high chargebacks from payment processors and request refunds from consumers. (Moving Br. at 9). Yet, the reality is that A. Rozenfeld had no communications with any payment processors or customers on behalf of or in connection with the Corporate Defendants. (A. Rozenfeld Aff. ¶ 13). She lacked knowledge of any of the business operations or practices of the Corporate

8

Defendants, and certainly lacked knowledge of any representations made by them to customers and the public at large. (*Id.* ¶¶ 4–5).

As a result of FTC's failure to establish two threshold elements of an FTCA claim against A. Rozenfeld, it cannot show a likelihood of success on the merits. Accordingly, the Court should deny its application.

### B. *FTC Fails to Show that it Will Face Irreparable Harm Absent Injunctive Relief*

An asset freeze is not appropriate against A. Rozenfeld because, to the extent FTC is ultimately successful (which is extraordinarily unlikely), money damages will provide a sufficient remedy. In order to satisfy the "irreparable harm" requirement for a preliminary injunction, the plaintiff must show "the alleged harm 'must be of a peculiar nature, so that compensation in money cannot atone for it.'" *Golden Fortune Import & Export Co. v. Mei-Xin Ltd.*, 2022 WL 3536494, at *6 (3d Cir. Aug. 5, 2022) (quoting *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994)). FTC fails to demonstrate that money damages would not be an adequate remedy should it succeed on its claims against A. Rozenfeld.

FTC contends that a preliminary injunction and an asset freeze is nevertheless necessary against A. Rozenfeld in order to maximize potential recovery. FTC raises two arguments in support of that conclusion: 1) the Corporate Defendants' actions make it likely that A. Rozenfeld will dissipate her assets, and 2) an asset freeze is

9

the default remedy where FTC establishes that it is likely to succeed in an enforcement action. (Moving Br. at 10–12). Neither of these arguments is plausible.

The first argument is thematic of FTC's approach to its claims against A. Rozenfeld: extend all of the Corporate Defendants' actions to her, despite providing no direct evidence that she knew of or participated in *any* of the Corporate Defendants' actions, let alone any actions that violate the FTCA. FTC speculates that A. Rozenfeld is likely to dissipate her assets prior to effective relief because the Corporate Defendants' operations are "permeated with fraud" and because S. Rozenfeld purchased a home with money he earned from his allegedly fraudulent activity. (*Id.* at 11–12). Notably, however, FTC does not allege any facts whatsoever which would show that A. Rozenfeld is likely to dissipate *her* assets—a requisite element for the relief sought in the current application. Instead, FTC seeks to use A. Rozenfeld as a secondary means of collecting a judgment for violations of the FTCA which she had absolutely nothing to do with.

Because it cannot show irreparable harm in the absence of an injunction against A. Rozenfeld, FTC also argues that an asset freeze is an appropriate remedy where FTC has demonstrated that it is likely to succeed on the merits of its underlying claim, irrespective of irreparable harm. (*See id.* at 11). That argument is belied by *FTC v. Millennium Telecard*, a case FTC itself cites in its brief. (*See id.* at 8, 9). There, the court explained that "[a] party seeking an asset freeze must show

10

a *likelihood of dissipation of the claimed assets*, or other inability to recover monetary damages, if relief is not granted." *Millennium Telecard*, 2011 WL 2745963, at *11 (emphasis added) (quoting *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009)). FTC does not even begin to attempt to explain how A. Rozenfeld is likely to dissipate the claimed assets; instead, FTC simply states that an asset freeze is appropriate where it has shown a likelihood of success on the merits. (Moving Br. at 10–12). That argument fails not only because it is directly contradicted by the caselaw FTC itself relies on, but also because FTC has fallen woefully short of establishing that it is likely to succeed on the merits. To the extent the Court finds FTC likely to succeed on the merits, an asset freeze is inappropriate because monetary damages will be an appropriate remedy for the alleged violations.

    C.    *Amanda Rozenfeld Faces Substantial Harm from an Asset Freeze for Actions She Had No Knowledge Of*

A preliminary injunction would impose a substantial harm on A. Rozenfeld because an asset freeze is an extraordinary remedy that would place an undue burden on her in light of the fact that she had no knowledge of the other Defendants' wrongful conduct. In determining whether to issue a preliminary injunction, a court must consider "the possibility of substantial harm to other interested parties." *Penn State Hershey*, 914 F.3d at 197. In other words, to secure a preliminary injunction, a plaintiff must show that the "balance of the equities" tips in her favor. *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014). Imposing

11

a preliminary injunction and asset freeze on A. Rozenfeld would place an incredibly weighty burden on her despite having no involvement whatsoever in the other Defendants' violations of law.

In considering whether an asset freeze will impose a substantial hardship on a party, a court should consider the extent of the defendant's wrongdoing. *See Juul Labs, Inc. v. 4x PODS.*, 439 F. Supp. 3d 341, 359–60 (D.N.J. 2020). The balance of equities only tips in the plaintiff's favor if the assets the plaintiff targets are commensurate with any ill-gotten gains. *See id.* Here, the assets plaintiff targets are wildly disproportionate to any wrongdoing in light of the fact that A. Rozenfeld had no knowledge of or participation in any alleged wrongdoing by the other Defendants. The balance of the equities therefore weighs heavily against the issuance of an injunction.

### D. *The Public Interest Weighs Against a Preliminary Injunction and Asset Freeze*

The public has a strong interest in protecting property rights and preventing government agencies from collecting judgments from persons who were completely unrelated to any wrongdoing. The fourth factor that a court must consider when determining whether to issue a preliminary injunction is the public interest. *Penn State Hershey*, 914 F.3d at 197. While a government agency can serve the public's interest by seeking redress for wrongdoing, that interest is in no way furthered by seeking relief against A. Rozenfeld, who had no knowledge of or involvement in any

12

violations of law. Conversely, the public has a strong interest in seeing that property rights are protected from government overreach. *Ride the Ducks of Phila., LLC v. Duck Boat Tours, Inc.*, 138 F. App'x 431, 434–35 (3d Cir. 2005) ("[t]he public has a strong interest in seeing that contract and property rights are respected . . . [t]hose rights, of course, may include the right to exclusive possession, which after all, is at the very core of the concept of ownership."). The public interest is best served by protecting A. Rozenfeld's property rights and denying FTC's application for a preliminary injunction.

### III. Expedited Discovery is Unnecessary Because FTC is Not Entitled To a Freeze of Amanda Rozenfeld's Assets

FTC has also requested expedited discovery as to A. Rozenfeld's assets. FTC claims that such discovery is necessary to "unravel the tangle of corporations in this matter, ensure the preservation of relevant documents, and locate assets wrongfully obtained from consumers." (Moving Br. at 12). That discovery is inappropriate for the same reasons outline above: A. Rozenfeld had no knowledge of or involvement with the Corporate Defendants. Expedited discovery would place an unreasonable burden on A. Rozenfeld given her complete lack of involvement with the Corporate Defendants. FTC's request should therefore be denied.

### CONCLUSION

FTC is seeking to use A. Rozenfeld as an additional source from which to collect a potential judgment, despite the serious lack of evidence that she participated

in, or even had knowledge of, any of the allegedly deceptive actions of the Corporate Defendants or Steven Rozenfeld. To avoid the shortcomings in its case, FTC has simply boostrapped the actions of the Corporate Defendants and S. Rozenfeld in asserting that A. Rozenfeld is equally liable for them on the basis of her name appearing on a handful of documents and emails. As her sworn affidavit clearly demonstrates, A. Rozenfeld was in no way involved with the Corporate Defendants. Accordingly, the extraordinary relief of an asset freeze is inappropriate against her. She therefore respectfully requests that the Court deny FTC's application for a preliminary injunction against her.

| | |
|---|---|
| Dated: August 12, 2024 | */s/ Mark M. Makhail* |
| | Mark M. Makhail |
| | Ryan M. Magee |
| | **McCarter & English, LLP** |
| | Four Gateway Center |
| | 100 Mulberry Street |
| | Newark, NJ 07102 |
| | T: (973) 622-4444 |

14