Frances L. Kern
Colleen Robbins
Federal Trade Commission
600 Pennsylvania Ave, NW, CC-8543
Washington, DC 20580
(202) 326-2391; fkern@ftc.gov (Kern)
(202) 326-2548; crobbins@ftc.gov (Robbins)
(202) 326-3395 (Fax)

*Attorneys for Plaintiff Federal Trade Commission*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| FEDERAL TRADE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> THEFBAMACHINE INC. et al., <br><br> Defendants. | CIVIL ACTION NO. 24-CV-6635 (JXN) (LDW) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS EMERGENCY APPLICATION FOR AN ORDER TO SHOW CAUSE WHY DEFENDANT BRATISLAV ROZENFELD AND ALL CORPORATE DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT OF COURT**

# **TABLE OF CONTENTS**

I.   Background ........................................................................................................... 1

II.  Rozenfeld's Pattern of Contumacious Conduct ................................................... 2

III. Argument .............................................................................................................. 5

IV.  Conclusion ........................................................................................................... 7

# TABLE OF AUTHORITIES

**Cases**

*FTC v. Lane Labs-USA, Inc.*, 624 F.3d 575 (3d Cir. 2010) ............................................................. 5, 6

*Gunn v. Univ. Comm. to End the War In Viet Nam*, 399 U.S. 383 (1970) ....................................... 5

*John T. ex rel. Paul v. Del. Cty Intermediate Unit*, 318 F.3d 545 (3d Cir. 2003) ............................ 5

*NLRB v. Cheng*, No. 21-cv-19694, 2023 WL 4558961 (D.N.J. Jul. 17, 2023) ................................ 5

*Robin Woods Inc. v. Woods*, 28 F.3d 396 (3d Cir. 1994) ................................................................. 6

*Roe v. Operation Rescue*, 919 F.2d 857 (3d Cir. 1990) ................................................................... 5

*Sec'y of Labor v. Altor Inc.*, 783 Fed. Appx. 168 (3rd Cir. 2019) .................................................... 6

*Sec'y of Labor v. Koresko*, 726 Fed. Appx. 127 (3d Cir. 2018) ...................................................... 5

*Shillitani v. United States*, 384 U.S. 364 (1966) ............................................................................. 5

*W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum, & Plastic Workers of Am.*, 461 U.S. 757 (1983) .......................................................................................... 5

**TABLE OF EXHIBITS**

| Exhibit | Description | Bates Range |
|---|---|---|
| PX 1 | Declaration of Kirk Bausch | 1–75 |
| PX 2 | Declaration of Eueal Berta | 76–124 |
| PX 3 | Declaration of Michael Hickenlooper | 125–53 |
| PX 4 | Declaration of Giordano Lanuto | 154–77 |
| PX 5 | Declaration of Carlos Angeles, III | 178–222 |
| PX 6 | Declaration of Acacia Chidi | 223–58 |
| PX 7 | Declaration of Alvaro Lizaraso | 259–324 |
| PX 8 | Declaration of Kayleigh Severn | 325–410 |
| PX 9 | Declaration of Pankil Shah | 411–513 |
| PX 10 | Declaration of Shona Killoughery | 514–73 |
| PX 11 | Declaration of Alpesh Patel | 574–630 |
| PX 12 | Declaration of Nichelle Washington | 631–63 |
| PX 13 | Declaration of Lynn Rojas | 664–762 |
| PX 14 | Declaration of Kenny Craig | 763–876 |
| PX 15 | Declaration of Ross Laughter | 877–911 |
| PX 16 | Declaration of Ernest Balenzuela | 912–81 |
| PX 17 | Declaration of Andrew Easton | 982–1073 |
| PX 18 | Declaration of Tyler Broome | 1074–1100 |
| PX 19 | Declaration of Elizabeth Anne Miles | 1101–28 |
| PX 20 | Declaration of Reeve Tyndall | 1129–1503 |
| PX 21 | Declaration of Alison Briginshaw | 1504–31 |
| PX 22 | Declaration of Manny Bayo | 1532–33 |
| PX 23 | Second Declaration of Reeve Tyndall | 1534–57 |
| PX 24 | Declaration of Matthew Genes | 1558–1761 |
| PX 25 | Declaration of Terry Cooke | 1762–64 |
| PX 26 | Declaration of Karen Denny | 1765–67 |
| PX 27 | Declaration of James Deren | 1768–78 |
| PX 28 | Declaration of Mark Ramirez | 1779–82 |
| PX 29 | Declaration of Ian Plocher | 1783–1818 |
| PX 30 | Declaration of Luke Rotta | 1819–1903 |
| PX 31 | Declaration of Benjamin Vafai | 1904–05 |
| PX 32 | Declaration of Jatinder Vij | 1906–07 |
| PX 33 | Declaration of Bryce Wilbanks | 1908–10 |
| PX 34 | Declaration of Richard Kaplan | 1911–2379 |

| Exhibit | Description | Bates Range |
|---|---|---|
| PX 34 | Declaration of Richard Kaplan | 1911–2379 |
| PX 35 | Second Declaration of Tyler Broome | 2380–82 |
| PX 36 | Third Declaration of Reeve Tyndall | 2383–2697 |
| PX 37 | Third Declaration of Tyler Broome | 2698–3351 |
| PX 38 | Declaration of Colleen Robbins | 3352–78 |

Plaintiff, Federal Trade Commission ("FTC"), hereby submits its memorandum of law in support of its emergency application for an order to show cause why defendants Bratislav Rozenfeld ("Rozenfeld"), TheFBAMachine Inc., Passive Scaling Inc. ("Passive Scaling"), Sales.Support New Jersey Inc. ("Sales Support"), 1HR Deliveries Inc., Hourly Relief Inc., 3PL Logistic Automation Inc., FBA Support NJ Corp., Daily Distro LLC ("Daily Distro"), and Closter Green Corp., dba Wraith & Co. ("Wraith") (collectively, "Defendants") should not be held in contempt of court.[1]

## I. Background

Since at least 2021, Rozenfeld has helmed a hugely profitable business opportunity that has defrauded consumers of more than $15.9 million by using false earnings claims. To bring a halt to this unlawful conduct, the FTC filed an *ex parte* application for a temporary restraining order ("TRO") on June 3, 2024 (Docket No. 1), together with thousands of pages of evidence establishing that Rozenfeld and his nine corporate entities violated Section 5 of the FTC Act, the Business Opportunity Rule, and the Consumer Review Fairness Act.

After holding a hearing and reviewing the evidence, this court found that the FTC was likely to prevail on the merits of its claims and entered a TRO on June 3 (Docket No. 5). Among other provisions, the TRO: (1) ordered an immediate freeze on Defendants' assets (Section III); (2) required Defendants to fill out financial statements and an IRS form (Attachments A, B, and C) within five days after service (Section V); (3) required an accounting of foreign assets and, if Defendants have any foreign assets, required them to fill out a consent to repatriation form (Attachment D) within five days after service (Section VI); and (4) required Defendants to transfer to the Receiver all electronic devices used to conduct business of the receivership entities upon notice of the order (Section XIII). (*Id.*)

Defendants were all properly served with the TRO, summons, and complaint in this matter on June 6.[2] (Docket Nos. 7–16.) In addition, Rozenfeld and the nine corporate Defendants

---
[1] This motion does not include individual defendant Amanda Rozenfeld.
[2] Defendants' Answers were due June 28, but they have all failed to file an answer.

1

stipulated to a Preliminary Injunction ("PI") that was entered by this Court on August 8.[3] (Docket No. 54.) Despite these orders, neither Rozenfeld nor the nine corporate entities have complied with the above-referenced provisions of the TRO and PI. Instead, Rozenfeld has adopted a course of obstruction disguised as delayed compliance. This conduct, which has been his modus operandi in other litigations,[4] includes feigned compliance, delays, and outright refusals to comply with the mandates of the TRO and PI, as well as refusing to honor his obligation as the only officer of the nine corporate defendants to bring them into compliance with the TRO and PI. As a result of Rozenfeld's stonewalling, the FTC's and Receiver's efforts to secure funds to refund the consumer injury caused by Defendants have been significantly impeded.[5] To date, the FTC has been able to freeze only about $195,000.

## II.     Rozenfeld's Pattern of Contumacious Conduct

Despite Rozenfeld's outward gestures toward compliance with the TRO and subsequent PI, Rozenfeld has failed time and again to comply with the orders. Given the gravity of a civil contempt citation and Rozenfeld's promises to comply if given more time, the FTC elected to give him more time to comply with the Court's orders before seeking a contempt citation.

---

[3] The Court previously extended the TRO pursuant to the consent of the parties until the Court had ruled on Plaintiff's PI request. (*See* Docket Nos. 22, 47.)

[4] In one instance, described at PX 13 ¶¶ 23–28, a Passive Scaling consumer sued Passive Scaling for $30,000 after unsuccessfully trying to obtain a settlement agreement informally. Passive Scaling then told the consumer she had to dismiss the lawsuit to receive a settlement. She declined, and the case went to mediation. At mediation, Rozenfeld agreed in writing to pay $18,000. He made two payments totaling $5,000 and defaulted on the rest. The judge entered a default judgment in the amount of $13,000, which has never been paid. Another Passive Scaling consumer commenced an arbitration proceeding after Rozenfeld promised a refund and then stopped communicating. (PX 24 ¶¶ 83–86). Rozenfeld participated in the arbitration proceeding initially, but then failed to comply with discovery and failed to submit evidence for the final hearing. PX 20, Att. CC, pp. 1403–04. The arbitrator ruled in favor of the consumer and awarded him $200,899.66. *Id*. at p. 1412. This amount was never paid, and the consumer ultimately was awarded a final judgment by default in New Jersey state court. *Id*. at 1414.

[5] *See* Receiver Report, pp. 23-26 (Docket No. 44) ("at this point, the Temporary Receiver is unable to make a determination regarding the Defendants' true financial condition, including where potentially millions of dollars obtained by the Defendants went (offshore or otherwise), or if the funds were carelessly spent on a lavish lifestyle Rozenfeld did not have the ability to fund on his own…").

2

Unfortunately, this approach has proved fruitless. As of the date of this filing, Rozenfeld and his nine corporate entities remain out of compliance.

On approximately June 17 and 18, 2024, Rozenfeld submitted seven of the nine corporate financial statements, but they were woefully deficient.[6] For example, he left many items blank, failed to attach most of the required documents, and oftentimes responded that the information was in Quickbooks, but that was simply untrue.[7] He also failed to submit any financial statement and accompanying documents for Passive Scaling and Wraith.[8] On June 24, the Receiver demanded that Rozenfeld turn over projected revenues and operating expenses, including supporting documentation, balance sheets, profit and loss statements, tax returns and general ledgers for the corporate entities—all items requested in the financial disclosure forms.[9] Between June 24 and August 16, the Receiver and FTC requested this information at least eight times, including in a letter from the FTC laying out specific deficiencies in the financial disclosure forms.[10] Defendant's counsel either did not respond promptly or responded by stating his client was "working on it" and understood the information was due.[11] In fact, Defendant's counsel said on at least **four** different occasions between June 26 and August 16 that his client was working on the financial information, and he would provide it "shortly."[12]

Rozenfeld even had several additional bites at the apple. First, the stipulated PI (Docket No. 54) signed by all Defendants except Amanda Rozenfeld (and signed by the Court on August 8) allowed for an additional five days for any statements not already submitted.[13] Second, the

---

[6] Receiver Report, pp. 19, 25 (Docket No. 44).
[7] PX 38, Att. A, p. 3356.
[8] *Id.*; *see* Receiver Report, p. 26 (Docket No. 44).
[9] Receiver Report, p. 25 (Docket No. 44).
[10] PX 38, Att. A, pp. 3355-3359; Att. B, pp. 3364–76.
[11] PX 38, Att. A, p. 3359; Att. B, pp. 3366–76.
[12] PX 38, Att. A, p. 3359; Att. B, pp. 3366–67, 337–73, 3376.
[13] Docket No. 54, p. 11.

Receiver again requested all the missing documents by August 21.[14] Both deadlines came and went.[15]

In addition, as of this date, Rozenfeld has not returned signed Attachments C or D and refuses to turn over his cell phone.[16] On June 6, the Receiver asked for the cell phone because it became clear during the immediate access that the cell phone was used for business purposes. Rozenfeld denied this and refused to turn it over. Throughout the course of the Receiver's investigation, it became evident from multiple sources that the cell phone was used for business purposes, despite Rozenfeld's protestations to the contrary.[17] On July 18, the Receiver demanded Rozenfeld turn over his cell phone for imaging. Since July 18, the Receiver has requested Rozenfeld overnight his cell phone for imaging two additional times, but Rozenfeld, through his attorney, refuses to do so.[18]

Then, on August 8, the Receiver received a credit card statement for a corporate card for corporate defendant Daily Distro that included personal charges made by Rozenfeld in July 2024, following the imposition of the asset freeze which specifically prohibits such charges.[19] Rozenfeld's counsel admitted Rozenfeld incurred those charges.[20] They include payments to a brewery in the Bahamas, a flight school in Florida (for $927), various restaurants, an animal grooming company, and a gas station.[21]

---

[14] PX 38, Att. B, p. 3376.
[15] *See* PX 38, Att. B, p. 3362, 3376.
[16] Receiver Report, pp. 23-24 (Docket No. 44); PX 38, Att. B, pp. 3362, 3372.
[17] Receiver Report, pp. 12-13; PX 38, Att. B, p. 3371.
[18] *See* Receiver Report, p. 23 (Docket No. 44); PX 38, Att. B, pp. 3362, 3371-72, 3375-77.
[19] PX 38, Att. B, p. 3377; PX 37, Att. A, p. 3301; Docket No. 5, p. 9.
[20] PX 38, Att. B, p. 3376.
[21] PX 37, Att. A, p. 3301. The Receiver and the FTC also confronted Rozenfeld with contacting and soliciting corporate defendants' clients in direct violation of the TRO. *See* Receiver Report, p. 25 (Docket No. 44); PX 38, Att. A, pp. 3360-61. In addition, the FTC is investigating newly discovered evidence that suggests Defendants are currently violating the PI.

When Rozenfeld has been confronted with violations of the orders, he claims ignorance and promises that he will soon come into compliance.[22] Despite these protestations, Rozenfeld has effectively ignored the mandates of the TRO and PI time and time again.

### III. Argument

Because "it is beyond question that obedience to judicial orders is an important public policy," a court order must be obeyed until it is vacated or withdrawn. *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum, & Plastic Workers of Am.*, 461 U.S. 757, 766 (1983). District courts have inherent power to enforce compliance with their lawful orders through civil contempt. *Gunn v. Univ. Comm. to End the War In Viet Nam*, 399 U.S. 383, 389 (1970); *Shillitani v. United States*, 384 U.S. 364, 370 (1966); *Sec'y of Labor v. Koresko*, 726 Fed. Appx. 127, 132 (3d Cir. 2018); *NLRB v. Cheng*, No. 21-cv-19694, 2023 WL 4558961, *2 (D.N.J. Jul. 17, 2023). Proof of contempt requires a movant to demonstrate "(1) that a valid order of the court existed; (2) that the defendants had knowledge of the order; and (3) that the defendants disobeyed the order." *FTC v. Lane Labs-USA, Inc.*, 624 F.3d 575, 582 (3d Cir. 2010) (quoting *Roe v. Operation Rescue*, 919 F.2d 857, 871 (3d Cir. 1990)); *see also Koresko*, 726 Fed. Appx. at 132 (same). These three elements "must be proven by clear and convincing evidence, and ambiguities must be resolved in favor of the party charged with contempt." *See Lane Labs-USA, Inc.*, 624 F.3d at 582 (quoting *John T. ex rel. Paul v. Del. Cty Intermediate Unit*, 318 F.3d 545, 552 (3d Cir. 2003)).

None of the elements required for a showing of civil contempt is in serious dispute in this case. The TRO and stipulated PI entered by this Court are unquestionably valid decrees. Rozenfeld was properly served with the TRO on June 6 as an individual defendant and as a corporate officer for each of the nine corporate defendants.[23] The TRO was subsequently

---

[22] PX 38, Att. A, p. 3358-59, Att. B, p. 3376. Rozenfeld has a history of making promises and failing to follow through, including regarding refunds to his customers (PX 6 ¶¶ 22–23; PX 7 ¶¶ 25–28; PX 9 ¶¶ 18–26; PX 11 ¶ 12; PX 12 ¶¶ 12, 15; PX 13 ¶ 28, 30), in litigation or arbitration (*see supra* n. 4), and even with respect to settlement discussions with the FTC.
[23] Docket Nos. 7–16.

5

replaced by the stipulated PI that was signed by FTC attorneys and Defendants, who were represented by counsel.[24] Thus, no doubt exists that Rozenfeld has actual knowledge of the requirements of both orders as an individual defendant and as an officer of the corporate defendants. Accordingly, the first two elements of civil contempt are satisfied.

The evidence easily demonstrates the last element. Rozenfeld has willfully disregarded the PI entered by this Court. As of the date of this application and as described above, Rozenfeld has failed to comply with Sections III (incurring charges on any credit card in the name of a corporate defendant under the asset freeze provision), V (requiring financial statements and Attachment C), VI (requiring an accounting of foreign assets and Attachment D), and XIII (transfer of electronic devices used to conduct business of the receivership entities).[25]

Rozenfeld also has a duty to ensure that his corporate entities, the nine corporate defendants in this action, comply with the above-referenced sections of the PI, which they have failed to do. As the corporate officer of all the corporate defendants, Rozenfeld is responsible for their compliance with the PI and is subject to a contempt citation for failing to effect their compliance. *Sec'y of Labor v. Altor Inc.*, 783 Fed. Appx. 168, 174 (3rd Cir. 2019) ("It is well established that when a corporate officer fails to act on behalf of the corporation to comply with a court order, the officer too may be held in contempt.").

Despite Rozenfeld's repeated claims that he is working on the requests or that he wants to comply, he has not complied after months of delay. And, although courts should hesitate to hold a defendant in contempt when "there is ground to doubt the wrongfulness of the conduct, an alleged contemnor's behavior need not be willful in order to contravene the applicable decree." *Lane Labs-USA, Inc.*, 624 F.3d at 582 (citations and quotations omitted). In other words, "good faith is not a defense to civil contempt." *Id.* (quoting *Robin Woods Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir. 1994)).

---

[24] Docket No. 54.
[25] *See* Receiver Report, pp. 23-26 (Docket No. 44); PX 37, Att. A, pp. 3300-01.

## IV.     Conclusion

Defendants have willfully ignored two lawful orders of this Court, flouting the Court's authority and impeding the work of the FTC and the Receiver. As a result, the FTC respectfully requests that this Court enter an emergency order compelling Defendants to show cause why they should not be held in civil contempt.[26]

Respectfully submitted,

Dated:  August 29, 2024                     /s/ Colleen Robbins
                                            Frances L. Kern (Minnesota Bar No. 0395233)
                                            Colleen Robbins (New Jersey Bar No. 027091997)
                                            Federal Trade Commission
                                            600 Pennsylvania Avenue, NW, CC-8543
                                            Washington, DC 20580
                                            (202) 326-2391; fkern@ftc.gov (Kern)
                                            (202) 326-2548; crobbins@ftc.gov (Robbins)
                                            (202) 326-3395 (fax)

                                            Attorneys for Plaintiff
                                            FEDERAL TRADE COMMISSION

---

[26] The FTC respectfully suggests that, in the interests of judicial economy, if the Court deems a hearing necessary, the Court could combine it with the hearing for a PI over Amanda Rozenfeld on September 18, 2024.