UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____X   Docket No: 24-6635 (JXN) (LDW)
FEDERAL TRADE COMMISSION

                Plaintiffs,                            **AFFIDAVIT OF STEVEN ROZENFELD**

   vs.

THE FBA MACHINE INC., a corporation;
PASSIVE SCALING INC., a corporation;
SALES.SUPPORT NEW JERSEY INC., a corporation;
1 HR DELIVERIES INC., a corporation;
HOURLY RELIEF INC., a corporation;
3PL LOGISTIC AUTOMATION INC, a corporation;
FBA SUPPORT NJ CORP. a corporation;
DAILY DISTRO LLC, a limited liability company;
CLOSTER GREEN CORP., doing business as
WRAITH & CO., a corporation; and
BRATISLAV ROZENFELD, also known
As Steven Rozenfeld and Steven Rozen,
Individually and as an officer or owner of
THE FBA MACHINE INC., PASSIVE SCALING INC.,
SALES.SUPPORT NEW JERSEY INC.;
1 HR DELIVERIES INC.,
HOURLY RELIEF INC.,
3PL LOGISTIC AUTOMATION INC,
FBA SUPPORT NJ CORP.
DAILY DISTRO LLC,
CLOSTER GREEN CORP., doing business as
WRAITH & CO., a corporation

                Defendants
_____X

1. Defendant Steven Rozenfeld, being duly sworn, states:

2. I am a Defendant in this action and am an authorized representative of the Corporate Defendants, and I am fully familiar with all the facts and circumstances herein set forth.

3. I first opened an Amazon store in 2015 under the company Closter Green Corp. with two other partners.

4. Prior to e-commerce, I worked in the taxi sphere, and had a fleet of cabs and medallions.

5. With the emergence of Uber, we moved into this area of business.

6. I later had a fall out with those partners, and in late 2018 I started offering services on my own.

7. In October 2019, I was solicited by Valiant Consultants. They were looking for someone to manage stores for them.

8. Pursuant to the agreement, I was supposed to work with 20 accounts per month, and my understanding was that I was the only person who could increase that number. I handled these accounts through FBA Support. I was supposed to receive 20 clients each month and I would manage their Amazon stores. Instead I received 80 accounts per month.

9. This of course did not work out. It was impossible to keep up with and made it extremely difficult to handle customers who would then be upset with myself.

10. In 2021, Valiant tried to sue me over these issues and I filed counterclaims. Having decided that I did not want to end up in a situation in which I had to manage other people's stores while being subject to promises being made by a third party, I opened a new company, Passive Scaling.

11. When I opened the company, I was contacted by Optimyze Digital.

12. Optimyze Digital stated that they were looking for companies to work with to handle prospective stores for other customers.

13. When Optimyze would sign a client up for Passive Scaling, the client would pay $50,000.00 to start; half of that would go to Optimyze.

14. Clearly, Passive Scaling did not work out and requests for full refunds were difficult to manage when half of the starting fee was paid to another company.

15. I opened The FBA Machine to set up a different program; without other servicing companies and at a lower price point, starting with consulting services to help people open Amazon stores.

16. Furthermore, with Passive Scaling, Optimyze used their own marketing and sales team. With The FBA Machine, I used my own team. The contract for the FBA Machine starts people off with a $6,900.00 fee and a goal of obtaining $10,000.00 in revenue.

17. When the FTC filed this matter, I was disheartened. I agreed to stipulate to their requested preliminary injunction as I would prefer to simply settle the matter.

18. The FTC is requesting several items that are based on information stored in the cloud system used for the companies. I used Google suite services for the corporate entities, not only to store data but also for communicating with employees.

19. While I disagree with the notion that my phone was being used for business, I have provided it to the FTC to resolve the issue. (All communications were done through Google Chat or Whatsapp, both of which the FTC and Receiver already have access to.

20. The FTC is further requesting information in regards to the financial status of the company that I do not have.

21. I have not filed taxes for the companies and I have not filed taxes personally since 2020.

22. I do not have financial statements and the information that would be needed to prepare them are in Quickbooks and on the cloud services we used.

23. The receiver provided the raw data from Quickbooks on August 16, 2024.

24. I have been working with my accountant to put together the information. My old bookkeeper is no longer working for me and as such it took some time to find a new one.

25. My new bookkeeper recently noted that the raw data only included information from one company (FBA Support). While my old bookkeeper is no longer working with me on this matter, he looked at the data as well and found the same thing.

26. I need all of the information to be able to give them accurate financial information.

27. The FTC has all of the information available to them.

28. I gave the receiver access to all of the cloud services used by the Corporations and no longer have access to it myself. The data provided by the receiver was inaccurate and not what was requested.

29. I did not stipulate to the preliminary injunction with intent to withhold information.

30. I believe the FTC has access to all of my records. I need to be able to reconcile the financial information to be able to give the FTC a proper accounting.

31. I am working on preparing the records requested by the Court Order including financial statements and taxes, but I do not have them right now. I do not have any foreign assets. The Companies likewise do not have foreign assets.

32. I should not be held in contempt for something I do not have.

33. The Corporate Defendants all have their records stored on cloud services and I need access to more information.

34. Furthermore, with all of my bank accounts frozen, the FTC informed me that I should use credit cards or take out loans to support myself.

35. I used a card with my own personal name on it. I understand now that the Card is also connected to a corporate defendant and will not use it again.

36. It is my understanding that it is my responsibility to pay the card, seeing as it has my personal name on it.

37. To the best of my knowledge, information, and belief, the presentation of these papers or the contentions therein are not frivolous.

38. I certify that the foregoing statements made by me are true, and I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

*Bratislav Rozenfeld*

STEVEN ROZENFELD   Bratislav Rozenfeld

Subscribed and sworn to before me

on this 17th day of September , 2024.



Notarized remotely online using communication technology via Proof.