January 23, 2025

**VIA CM/ECF**

The Honorable Julien Xavier Neals
United States District Judge
District of New Jersey
MLK Jr. Federal Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07102

Re:   *Federal Trade Commission v. TheFBAMachine Inc. et al.*,
      Civ. No. 24-06635 (JXN) (LDW)

Dear Judge Neals,

In accordance with the Court's December 13, 2024 order (ECF No. 100), the parties hereby submit this joint status letter to advise the Court regarding Defendants' compliance with the Temporary Restraining Order ("TRO") (ECF No. 5) and Stipulated Preliminary Injunction ("PI") (ECF No. 54) issued by this Court.

### **Plaintiff's Position**

As discussed in the FTC's interim status letter filed with the Court on December 12, 2024 (ECF No. 98), between June 5 and June 20, Defendant Rozenfeld made 12 separate withdrawals from a Capital One account in the name of Defendant FBA Support NJ Corp, each of which was in direct violation of the asset freeze provision. Without seeking leave of the court to withdraw money for attorney's fees or living expenses, Defendant Rozenfeld made two payments totaling $10,000 to Usher Law from the account and made six ATM withdrawals totaling $11,000. In addition, Defendant Rozenfeld made credit card payments to American Express and Capital One totaling $48,041.85. By June 20, the balance in the account was $203.94, and it has since dwindled to a negative balance. *See* attached PX 41 (Fourth Declaration of Tyler Broome).

Since the FTC filed its interim status letter, it received Defendant Rozenfeld's personal bank and credit card account statements from Wells Fargo and personal credit card statements from American Express. Statements from Defendant Rozenfeld's Wells Fargo credit card account reveal that he made payments on that credit card after the TRO went into effect totaling $18,112.47. Similarly, Defendant Rozenfeld made 320 individual payments to two American Express credit cards between June and December 2024 totaling approximately $245,322.[1] Of all

---

[1] Although Defendant Rozenfeld claims that he has struggled to provide for his family due to the asset freeze (ECF No. 101), he incurred over $320,000 in credit card charges between June and December 2024. The credit card statements reveal payments for, among other things, customer leads; flights and hotels for travel to Paris, the Poconos, and the Bahamas; and for yoga studios, nail salons, and private schools. PX 41. The credit card bills are paid off in full or nearly in full each month, resulting in the accrual of very little interest.

these payments, only one can be traced to its source from the credit card and bank statements; that payment was made from the FBA Support NJ Corp. Capital One account (in violation of the asset freeze). PX 41. There is otherwise no indication where the money came from to make these credit card payments, and the FTC does not know whether these payments came from a third party, after-acquired assets (not subject to the asset freeze), or assets that are supposed to be frozen.[2] The FTC sent Defendants' counsel a letter on January 3, 2025, and emails on January 7 and 8[3] requesting an explanation. Defendants' counsel did not respond until today in their position below.

      Section X of the TRO and PI requires Defendants to provide the FTC and the Receiver – **prior to** creating, operating, or exercising control over any partnership, limited partnership, joint venture, sole proprietorship, or corporation – with a written statement disclosing the name, address and telephone number of any new business entity as well as a detailed description of the intended activities and officers and employees. The credit card statements show over $77,000 in charges since the TRO for advertising and lead generation companies. Neither the FTC nor the Receiver have received any written statement containing the required information for Defendant Rozenfeld's apparent business activities, nor did defense counsel respond to the FTC's request for information about Defendant Rozenfeld's current work and sources of income until today in their position below.

      In addition, the American Express credit card statements indicate that Defendant Rozenfeld may be living in an apartment in Hallandale Beach, Florida. Multiple public websites list this property for rent at a monthly rate of $10,500.[4] This address was not listed on his financial disclosure form. The FTC asked Defendants' counsel to explain, but they did not provide a response until their position below.

      The FTC received Defendants' position below at 4:15pm today. As such, the FTC has not had the opportunity to verify the information provided. However, the FTC will attempt to address the vague, unsupported, unsworn, and incomplete information provided at the hearing next week.

---

[2] Defendant Rozenfeld stated on his sworn revised financial disclosure form submitted October 25 that he makes $3200 per month (source unknown) but he then claimed to the Court that he has not had income since the imposition of the asset freeze (ECF No. 101). Either way it is unknown from the information Defendant Rozenfeld has provided whether the payments came from legitimate after-acquired assets.

[3] *See* attached PX 42.

[4] The FTC received Defendant Rozenfeld's mortgage records pursuant to a subpoena and discovered that the property he lists on his financial disclosure forms as his residence, which was purchased using Passive Scaling corporate account funds, was purchased as an investment property. It also appears Defendant Rozenfeld lied on the mortgage application he completed on December 2, 2021, by falsely claiming he was not involved in a lawsuit that could result in a financial liability. PX 41.

The FTC objects to any release from the asset freeze. This letter is not the appropriate vehicle to request such a release. If Defendants would like relief from the asset freeze, they need to file an appropriate motion.

Given Defendant's continued callous, indifferent, and contumacious conduct, the FTC respectfully requests this Court hold Defendant Rozenfeld in contempt of court and order him to:[5]

   a. Return the money that he drained from the Capital One account in the name of Corporate Defendant FBA Support NJ Corp. within three (3) days;
   b. Provide an accounting of all the payments made to his credit cards from the date of the TRO to the present, including means and source of payment (including name of the person who initiated each payment, the bank name and account number from which each payment came, and whether Defendant Rozenfeld or any Corporate Defendant holds an interest in such source), within three (3) days;
   c. Pay the Receiver's fees and costs resulting from the contempt motion; and
   d. Appear for a deposition regarding assets and compliance with the Court's orders, to be taken in person at FTC headquarters in Washington, DC on a date agreed upon and ordered by the Court.

If Defendant Rozenfeld fails to satisfy any of these, the FTC respectfully requests that the Court impose a $1,000 one-time fine as well as $50 per day until he complies. *See Cheng*, 2023 WL 4558961 at *3 (imposing a $1000 one-time coercive fine and $50 for each day Defendant fails to purge himself of contempt).

**Defendants' Position**

With the asset freeze in this matter, Mr. Rozenfeld lost access to his saved funds and the companies that were the source of his income. The FTC suggested that Mr. Rozenfeld rely on credit cards or loans. Mr. Rozenfeld relied on his American Express Card. With no way to pay the card on his own, he reached an agreement with Nico Health and Life Insurance (A health insurance broker). This is a newly formed corporation that Mr. Rozenfeld does not have any ownership or interest in it at this time. The brokerage corporation uses his credit card; the purchases for advertising are related to health insurance leads and are paid for by the company. Mr. Rozenfeld did not previously bring this up as he does not have ownership in the company; he was performing administrative work for the company to set up marketing and advertising. He was receiving around $5,000.00 to $7,000.00 in loans from the corporation for personal expenses per month. The business related charges are not his and he is working on putting together records to show as such. The company was spending approximately $20,000.00 - $30,000.00 in advertising to generate health insurance leads. This is not connected to the offering of business opportunities or Amazon stores.

---

[5] When a court orders civil contempt, the court has discretion to impose sanctions, including fines, reimbursement of costs to the complainant or incarceration. *NLRB v. Cheng*, No. 2:21-cv-19694, 2023 WL 4558961, *3 (D.N.J. July 17, 2023).

      Mr. Rozenfeld does not dispute that money from the Capital One account at the onset of this lawsuit. Mr. Rozenfeld thought that these funds were not subject to any freeze as the account was still accessible. After these funds dried up he turned to loans like the arrangement referenced above. Mr. Rozenfeld wants his children to be able to live normally.

      The Hallandale Beach address referenced by the FTC is a rental that Mr. Rozenfeld began leasing in September 2024. The rent is $7,500.00 per month and Mr. Rozenfeld has family members residing there. They assist him with the payments and lending him money to help him get through this situation.

      Mr. Rozenfeld was seeking to work with Nico Health to obtain an ownership interest. Through his involvement with Nico Health, he became acquainted with a health care carrier that is willing to employ him. He would like to request that the Court release the freeze on his Wells Fargo Account ending in 6668 or 6334. Mr. Rozenfeld would like to use the account to get paid through. Any funds in the account, which Mr. Rozenfeld informed us that about $500.00 in one and 903 in the other could be transferred to another account. With a bank account, Mr. Rozenfeld would also be able to more easily accept loans from friends, family members and businesses instead of going the more roundabout way taken with his American Express. As a result of the subpoena by the FTC to American Express, the card has since been closed, making it more difficult for him to manage his finances.

      Mr. Rozenfeld does not object to producing financial records to show the sources used to pay his American Express. He likewise is not objecting to a deposition, which is standard in civil lawsuits, however he would request for any such deposition to take place virtually as he does not have the financial resources necessary to pay for travel expenses and wants to focus his expenses on the care of his children.

      Mr. Rozenfeld is working on preparing records to provide to the FTC and Court in relation to these issues. Mr. Rozenfeld objects to him paying the fees and costs of the receiver in the filing of this contempt action and he would not have the ability to pay such expenses.

Sincerely,

| | |
|---|---|
| /s/ Colleen Robbins | /s/ Mikhail Usher |
| Frances Kern | Mikhail Usher |
| Colleen Robbins | Alexander Susi |
| Counsel for Plaintiff | Counsel for Defendants |